ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
CLERK

2016 FEB 25  PM 4: 00

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

_____

PATRICK RICHARD

_____

**COMPLAINT**

_____

NAME OF PLAINTIFF(S)

v.

_____

New York City Department of Education

_____

**JURY TRIAL DEMANDED**

# CV 16 - 957

# BRODIE, J.

_____

NAME OF DEFENDANT(S)

# POLLAK, M.J.

This action is brought for discrimination in employment pursuant to (check only those that apply):

_____✓_____     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
**NOTE:** *In order to bring a suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

_____     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 92-592 , the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** *In order to bring a suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

_____     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117 (amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325 and the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

1

Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York law.

1.    Plaintiff resides at: 231-04 128th Road

---

Street Address

Laurelton,    NY , 11413                    (718) 978-4773
County         State              Zip Code      Telephone Number

2.    Defendant(s) resides at, or its business is located at: 52 Chambers Street, Room 308

---

Street Address

, New York _____ , NY _____ , 10007
County         City              State              Zip Code

3.    The address at which I sought employment or was employed by the defendant(s) is:

Street Address

65 Court Street    Brooklyn, NY 11201

---

County    ,    City    ,    State    ,    Zip Code

4. The discriminatory conduct of which I complain in this action includes *(check only those that apply).*

|   | |
|---|---|
| _____ | Failure to hire. |
| _____ | Termination of my employment. |
| __X__ | Failure to promote. |
| _____ | Failure to accommodate my disability. |
| __X__ | Unequal terms and conditions of my employment. |
| _____ | Retaliation |
| __X__ | Other acts *(specify)*: <u>Started constructive discipline</u> |

NOTE: *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

5. It is my best recollection that the alleged discriminatory acts occurred on:

Date(s)

6. I believe that the defendant(s) *(check one)*

__X__ is still committing these acts against me.

_____ is <u>not</u> still committing these acts against me.

7. Defendant(s) discriminated against me based on my:
*(check only those that apply and state the basis for discrimination, for example, what is your religion, if religious discrimination is alleged)*

[X]  race _____  [X]  color

[ ]  gender/sex _____  [ ]  religion

[X]  national origin

[ ]  disability

[ ]  age. If age is checked, answer the following:

I was born in _____ . At the time(s) defendant(s) discriminated against me,
            Year
I was [ ] <u>more</u> [ ] <u>less</u> than 40 years old. *(check one).*

3

NOTE:        *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

         8.     The facts of my case are as follows:

Two sets of pages are attached.

(1) Please find __*18*__ pages of charges detailing:

**Summary of Charges**

- **Premise, Treatment Received for Being Black and of Foreign Origin;**

- **Retaliation/Supervisor Harassment Suited for, and Resulting in Tangible Employment Action;**

- **Hostile and Abusive Work Environment;**

- **The NYC DOE/DIIT Black Engineer's Suggested Way to Happiness – Camouflaged Demotion Appearing Benign, or Accept the Pigeonhole?**

- 

- **Of Redress and the Way Forward**

(2) Also, please find __*19*__ pages comprising of a copy of the charge filed with the Equal Employment Opportunity Commission.

*(Attach additional sheets as necessary)*

NOTE:        *As additional support for your claim, you may attach to this complaint a copy of the charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights, or the New York City Commission on Human Rights.*

9.     It is my best recollection that I filed a charge with the New York State Division of Human Rights or the New York City Commission on Human Rights regarding defendant's alleged discriminatory conduct on: _____ .

                                                         Date

10.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct on: 1/13/2015 _____ .

                                                              Date

4

**Only litigants alleging age discrimination must answer Question #11.**

11.    Since filing my charge of age discrimination with the Equal Employment Opportunity

Commission regarding defendant's alleged discriminatory conduct *(check one)*:

60 days or more have elapsed.

less than 60 days have elapsed.

12.    The Equal Employment Opportunity Commission *(check one)*: <u>has not</u>

issued a Right to Sue letter.

✓        <u>has</u> issued a Right to Sue letter, which I
**received** on 12/16/2015                    .
Date

**NOTE:**    Attach a copy of the Right to Sue Letter from the Equal Employment Opportunity
Commission to this complaint.

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate,
including injunctive orders, damages, pre-judgment interest, costs, and attorney's fees.

PLAINTIFF'S SIGNATURE

Dated: 2/23/2016

231-04 128 Road
Address
Laurelton, NY 11413
Phone Number (718) 978-4773

ComplaintUnderTitleVII,ADAorADEAEDNY.rev.4/23/13

## SUMMARY OF CHARGES

### Premise
### Treatment Received for Being Black and of Foreign Origin

(1)     Having crafted the way forward for operational efficiency in the New York City Department of Education (NYC DOE), Office of Telecommunications Services (OTS) promising a technical fix for the education problem of our city and children – some 1.2 million of them, Mr. Richard is being compelled to come here to ask a jury of this Court for redress. A cadre of employees in the NYC DOE Division of Instructional and Information Technology (DIIT) including Human Resources (HR) personnel, hereafter referred to as Defendant DOE views Mr. Richard as unworthy of fair treatment, and inferior – an inferior man, perhaps; three-fifths of a man, maybe; less than a man, for sure. However, who knows? Let them say.

(2)     For being repeatedly harassed with negative "Black male" stereotyping, for constantly having to explain his "heavy accent," and his never to be good enough verbal and writing skills, it is no longer questionable as to which country/countries produce the people Respondent DOE likes or would rather promote. For repeatedly choosing lesser-qualified White males over Mr. Richard the answer is clear. And the vendors whose work Mr. Richard were sure to follow suit with their acts of disrespect vis-à-vis Mr. Richard. How does one explain a vendor getting so cozy as to tell the office director that "I will not submit proposals to bids solicited by Patrick Richard?"

### Continuing Harassment. Retaliation,
### Supervisor Harassment Suited for, and Resulting in Tangible Employment Actions

(3)     In a recent Defendant DOE-created incident, as late as April 16, 2015, high ranking Officer, Mr. Tom Kambouras (the CTO-Chief Technology Officer), having misrepresented the facts, labeled Mr. Richard as a "visibly angry" man whose "behavior was unprofessional and offensive." He then promulgated this narrative to all his deputies - three layers down in the hierarchy of the

Charges 1

6

Division, setting up the perfect stage for the CIO (Chief Information Officer), his supervisor to address. In the spirit of applying his supervisor's credo of "Escalate Early and Often," one would suppose that he did escalate. Will the Court be pleased of CIO's response? *See Exhibit FCA* **(6 pages) - Emails Pertaining to the April 16, 2015 Incident.**

(4)    Again in or around February 1, 2015, Mr. Mark Spencer (Sr. Director of the Office of Telecommunications Services (OTS)) failed to invite Mr. Richard to the group's staff meeting. Upon information and belief this is one of the methods used to facilitate Mr. Richard being brought into disrepute – a practice that dates back to the 1990s.

(5)    In the March 19, 2014 incident that sent Mr. Richard knocking on the EEOC doors, HR started termination action against Mr. Richard knowing full well that Mr. Jerry Campanella (Mr. Richard's supervisor) was at fault for the actions committed by the latter. Despite having exonerated Mr. Richard in the presence of his Union Representative Mr. Dana Tilghman (who said "I passed" when Mr. Richard asked him for his support), it is completely incomprehensible that Ms. Jeanine Anaya (HR Director) corroborated in sending the April 29, 2014 letter to Mr. Richard that put him on probation. The Court deserves an explanation for this kind of Black man justice.

(6)    Because Mr. Richard is of Black Race, Dark Skin Color, an African-American of Haitian National Origin, Respondent DOE has been and is continuing to discriminate against Mr. Richard in violation of Title VII of the Civil Right Act of 1964, the New York State Human Rights Law, and the New York City Administrative Code with respect to his National Origin – Haiti, his Race – Black/African American, his Color – Black-Dark Skin. Defendant DOE also retaliated against Mr. Richard for complaining about the aforementioned attributes. Mr. Richard has been mistreated and targeted as one who had never been and/or will never be promoted or

Charges 2                                                                                    7

given a merit raise in his twenty five plus-year career with Respondent DOE despite the uncontroversial fact that Mr. Richard has had more than the necessary education and experience that qualify him for advancement and promotions. Respondent DOE chose to promote lesser qualified White coworkers whom he has seniority over, and sought White candidates from outside the organization to supervise him. Mr. Richard has also been subjected to unwelcome conduct that affects his engineering career and personal life.

**Hostile and Abusive Work Environment Harassment**

(7)   Believing, having admitted, acted out, and benefiting from the notion that Respondent DOE has no need, want or desire to treat Mr. Richard fairly, Defendant DOE staged and allowed an environment conducive to make Mr. Richard a perpetual victim. Despite warnings of questionable legality, objections, appeals, and vows Respondent DOE remains indifferent as they deem that Mr. Richard has no place at the DOE. "One of us has to leave," said Mr. Rick Scott, "and it's not going to be me. So. I can help you get a job in another division, if you want." For choosing to differ the consequences are such that Mr. Richard pays the price. Repeated acts of disrespect, exclusion from staff meetings and social events, being ridiculed have been issues that Mr. Richard has had to deal with.

**Lost Civil Service Title**
**The DIIT Black Engineer's Suggested Way to Happiness**
**Camouflaged Demotion Appearing Benign or Accept the Pigeonhole?**

(8)   In a murky, HR-initiated, yet-to-be settled process in 2012, Mr. Richard is slated to lose the Telecommunications Specialist civil service title he earned, scorned to be appointed under. Mr. Richard has recently learned that his current civil service title is Telecommunications Associate – Level ??

(9)   In many workplaces the capability to juggle reporting responsibilities ranging from having to

report to a Bureau Director originally, and then to a Division Administrator, then to the Bureau Deputy Director, and so on while interfacing to some hundreds of offices does not summon the creation of more layers in the hierarchy, but suggests that the person doing this does have a pleasant personality.

(10)    Instead, Respondent DOE leveraged Mr. Richard's capabilities against his interest and demoted him time and time again in a way that is not so obvious to the casual observer. Unless one knows the history and Mr. Richard's place in context it appears as though respondent DOE has done the type of reorganization companies normally do to better compete or best align resources. Respondent DOE ensures that Mr. Richard remains at the bottom where he started, on par with the project manager brought aboard last year, last week or the one to come tomorrow.

(11)    When speaking in human terms, it is a well-known fact that caring (or empathy) demands that we take one another out of duress as quickly as possible. Can one conjure that respondent DOE had been oblivious to the side effects of its practice when they learned of my family's tumults in 2000?  For letting an injury dwell for nearly a quarter century Respondent DOE has to know that pain and distress must have been hard at foot. But since it is a Black man at the short end of the stick, then suffering is not an issue to give due attention. And when he is fed up enough, he himself will end his suffering by moving on (to another job), not necessarily to another office, or another division (outside DIIT), but outside the DOE altogether, for we (the DOE) had blackballed him.

(12)    Mr. Richard's recent applications for eleven (11) positions that were all denied can serve as proof that he needs to remain where he is or leave the DOE altogether.

**Of Redress and the Road Ahead**

(13)    Yet, Mr. Richard remains in his job; career aspirations are of no relevance here, Respondent

Charges 4                                                                                                     9

DOE can argue. While Defendant DOE would like to have one think that Mr. Richard should be happy for having a job, Defendant DOE has caused damage to Mr. Richard in an amount in excess of the jurisdiction of the Court. Fairness requires that Mr. Richard is made whole, while he seeks an opportunity to resume, unconstrained, the project of delivering for the nation's largest school system kids – our children.

(14)    So help us God.

Charges 5                                                                                       10

## MORE SPECIFICALLY, THE CHARGES

A statement of the basis of the charges follows:

1. Complainant seeks redress to damages and injuries Complainant has suffered as a result of being **Discriminated against, Retaliated against, Disparately Treated** by his employer due to his **Race (Black), Color (Black-Dark Skin), and National Origin (Haitian).**

## PARTIES

2. That at all times relevant hereto, Complainant Patrick Richard ("Richard") is a resident of the State of New York and Queens County.

3. That at all times relevant hereto, Respondent New York City Department of Education ("DOE" or "Respondent") is a municipality with its principal offices located at 65 Court Street, Brooklyn, New York 11201.

4. That at all times relevant hereto, Complainant Richard is an employee of Respondent DOE.

## MATERIAL FACTS

5. At all times Mr. Richard is a Black man who was born in Haiti.

6. Mr. Richard obtained a Bachelor of Engineering degree in Electrical Engineering in 1985.

7. In or around December of 1991, Mr. Richard was hired by the DOE as a project manager with civil service title of Telecommunications Associate - Level II, earning approximately $44,000.00 per year, reporting to the Bureau of Telecommunications (BOT) Director, Ms. Miriam Delaney.

8. At all times Mr. Richard has been an exemplary employee. He has not received any discipline or negative reviews until the facts which are discussed herein.

9. Throughout his employment Mr. Richard, despite his exemplary work product, has never received a merit raise and has only received raises due to his longevity in employment with the City.

Charges 6

//

9A.    Throughout is employment Mr. Richard made use of his engineering skills in various capacities, serving as a catalyst in the evolution of the DOE/Office of Telecommunications Services. Mr. Richard's electrical/electronic systems insights continue to be instrumental in ensuring his projects are successful. In managing projects involving the School Construction Authority (SCA), Mr. Richard's recommendations very often result in the SCA Senior Administration issuing change orders.

9B.    In or around 1992, Mr. Richard was asked to revise and overhaul the PBX bids  specifications for technical accuracy so as to prevent a repeat of the then current lawsuit. This is a task reserved for Engineers, highly experienced Telecommunications Specialists, and Systems Architects. Mr. Richard was then asked to carry out a pilot for one school which was highly successful. This pilot bid has been the litmus test, serving as template for all PBX systems acquired by BOT throughout the years. No other Project Manager has been asked to do this.

9C.    In or around 1992, Mr. Richard was asked to produce a new Headquarters Telephone Directory for the DOE from scratch – no precedent, no database system in existence, no data. Due to the heightened visibility and sensitivity of this project Mr. Richard had to report to the Division Administrator, Richard Messinger.  Mr. Richard was assisted with data entry and proofing personnel. Effective engagement of every DOE office while guaranteeing the accuracy of everyone's information and leaving no one behind dictated the caliber of the Project Manager who was also the Database Designer and Administrator. Mr. Richard had been so confident that he voluntarily published his name as the Editor.

9D.    In or around 1992, all the White project managers where given merit raises while Mr. Richard did not get any increase in salary although he was doing work (Database Design and Administration) that the other project managers could not do. This work resulted in updating the

Charges 7                                                                                      12

NYC DOE Headquarters Telephone Directory, 1992 Edition (from 1989). He also served as the office Local Area Network Administrator, supporting all users.

9E.   In or around 1993, Mr. Richard was again passed over when the DOE brought in Gerard Drazba a White man, from the outside to be a supervisor. Upon information and belief, these positions were never posted and Mr. Richard was not permitted the opportunity to apply. Mr. Drazba was significantly less qualified than Mr. Richard for that position.

10.   In fact, Mr. Richard demonstrated that he had significant insights into the future for information technology in education. In 1994, via a report entitled BOT-VISION 2000, Mr. Richard advocated that the DOE provides a telecommunication network integrating all schools within New York City. His ideas were put aside by the White managers who showed no value to Mr. Richard's input. Currently, some of Mr. Richard's ideas are being made manifest incorporating Mr. Richard's concepts, tools, and templates administered by White supervisors who have not given Mr. Richard due credits for his input.

11.   Throughout his employment, Mr. Richard has been passed over for advancement and paid a disparate salary compared to White coworkers performing the same or substantially the same work. While Mr. Richard's coworkers had been only project managers, besides being a project manager Mr. Richard also worked as a Local Area Network (LAN) Administrator, PBX Systems Installation Tracking Database Designer, NYC-DOE Headquarters Telephone Directory Producer, Editor, and Cover Designer.

12.   In or around 1994, the Bureau of Telecommunications (BOT) where Mr. Richard worked was under the Division of Business and Administration. That year a change was implemented which moved the Bureau of Telecommunications into the Division of Instructional and Information Technology (DIIT).

Charges 8                                                                      13

13. At that time the BOT (now OTS (Office of Telecommunications Services)) was comprised mostly of Black employees.

14. DIIT had many similar titles and positions which performed substantially similar work. DIIT was comprised mostly of White employees.

15. When the BOT was moved into the DIIT, DIIT employees were compensated as a significantly higher rate than BOT employees.

16. Upon information and belief, the salary of White employees within the DIIT with similar titles or positions as those Black employees who worked for the BOT was and is significantly higher than salaries for Black employees.

17. Mr. Richard and other BOT employees were never informed of this discrepancy and were not provided salary increases to prove the same or similar compensation to the employees working in the DIIT.

18. Upon information and belief, this policy has resulted in disparate pay for Black employees such as Mr. Richard working within DIIT. This has continued to this day.

18A. Moreover, in demonstrating who is who in BOT during the transition process, BOT management misrepresented Mr. Richard's position in the organizational chart submitted to DIIT (with his name spelled incorrectly), depicting him reporting to an aide. This served to deny him due recognition that has kept him out of all issues/matters of importance. This continues to affect Mr. Richard's career to this day.

18B. In or around 1995, while waiting to be called from the four civil service lists that Mr. Richard was on, DIIT HR announced that BOT wanted to take him from the Telecommunications Associate list when he could have just as well been pulled to serve as a Telecommunications Specialist just like all the White coworkers. The Director, Ms. Delaney, was upset towards Mr.

Charges 9

*14*

Richard when he approached her with this concern. She seems to have never forgiven him for daring to ask. Mr. Richard got the title, but no pay. By virtue of his education and experience – an Electrical Engineer then with over ten years of experience, Mr. Richard was unequivocally better qualified to serve as a Specialist than all of the White coworkers in the office, most of whom have no degrees but high school certificates, perhaps. It was a serious travesty of justice – a mean way of dealing, indeed.

18C.   Vendors associates whose work Mr. Richard supervises are too often given preferential treatment over him. While those associates have readily been able to read into BOT management position standing with them, in one instance Mr. Richard's supervisor, Mr. Rick Scott cursed him in front of a vendor's two associates and one coworker in the office, and within earshot of people in the vicinity of the conference room. Mr. Scott found it necessary to apologize, but only via a letter to Mr. Richard copying the office Director (so it says in the letter). Mr. Richard has no idea as to whether or not the Director received the letter, and certainly the witnesses were not notified. Still, the apology letter depicted some shortcoming on the part of Mr. Richard. So Mr. Richard would best keep the letter secret, private and close to his heart.

18D.   On September 5, 1997, Deputy Director, Mr. Rick Scott told Mr. Richard that he and the Director, Ms. Delaney don't have to treat him fairly, and "this idea of fairness is your own opinion" concerning matters in discussions the civil service list concern. They then referred Mr. Richard to their supervisors – Mr. Marvin Weinbaum primarily, and then Mr. Sam LaSalla after Mr. Weinbaum left. Upon asking them to submit a fair evaluation of Mr. Richard's work BOT conspired with the then Director of HR, Mr. Robert Satriano to undermine every aspect of the process. The status quo prevailed until Mr. Richard"s Union Representatives requested a Labor Management meeting. Determined to mask the truth Master HR Strategist, Mr. Robert Satriano,

played everyone. He then issued a summary decision memorandum that condoned his officers' conduct. While they served as witness to each other Mr. Robert Satriano, the then director of HR put Mr. Richard to ridicule when he learned that his officers couldn't care less about fairness towards a Black man.

19. In or around 1998, Mr. Richard was passed over for promotion when Mark Spencer, a White coworker with a significantly lesser educational and technical background, was promoted to the title of "Senior Project Manager" and made Mr. Richard's supervisor.

20. Indeed, many other White employees who started working after Mr. Richard were promoted into managerial positions while Black employees were not promoted.

21. Many times the managerial positions were not posted or offered to Mr. Richard while they were offered or given to White coworkers.

21A. In or around 1999, the OTS Director was forced to resign, creating opportunities for advancement. Secret maneuvers favoring the current management team, including Mr. Spencer, elected them into their positions. No memoranda announcing the changes was issued.

21B. DIIT has gone through so many reorganizational changes that would amaze anyone looking at the paper charts in terms of roles transformation. Yet, the process for participation remains a secret.

22. In or around 2000, Mr. Richard obtained a Master's Degree in Educational Technology.

22A. Upon acknowledgement and receipt of this degree Respondent gave no compensation to Mr. Richard for this achievement.

23. In or around 2003, Mr. Richard was again passed over when the DOE brought in Jerry Campanella, a White man, from the outside to take Mr. Spencer's position after Mr. Spencer was again promoted to Director. Upon information and belief, these positions were never posted and Mr. Richard was not permitted the opportunity to apply. Mr. Campanella is significantly less

Charges 11

16

qualified than Mr. Richard for that position.

23A.   In or around 2007, Mr. Richard was again passed over when the position of Director of Maintenance and Support within Mr. Richard's unit was staffed by an employee who joined the unit in or around 2001. Upon information and belief, this position was never posted and Mr. Richard was not permitted the opportunity to apply.

24.   In or around 2011, Mr. Richard obtained certification in A+ computer repair.

24A.   Upon acknowledgement and receipt of this certificate Respondent gave no compensation to Mr. Richard for this achievement.

25.   In or around May of 2013, Mr. Richard met with the Director of Human Resources, Jeanine Anaya, to ask what it would take to get a promotion or raise. Ms. Anaya told Mr. Richard she would look into it and get back to him once she can arrange a meeting with the stakeholders.

26.   In or around July of 2013, Mr. Richard met with Ms. Anaya, Mr. Spencer and Mr. Campanella, Mr. Richard's White supervisor. During that meeting Mr. Richard provided evidence that he had been passed over for positions which he should have been given since as early as 1994 when he applied for a database administrator position. That job had been given to a White man, newly hired from the outside. He went on to demonstrate that he was being compensated at a rate that was far below what someone with his level of education should be paid.

27.   At the close of that meeting Ms. Anaya told Mr. Richard that they would "see what could be done."

28.   Minutes later Ms. Anaya informed Mr. Richard that they would not meet with him again relating to his requests for promotion or advancement.

28A.   Mr. Spencer e-mailed saying that he could not do anything about an injustice that happened in 1994.

*17*

Charges 12

29. Beginning in September of 2013, Mr. Richard began applying to every open position which offered the opportunity for advancement. Each time he was passed over or blatantly ignored.

30. On or about September 27, 2013 Mr. Richard applied for the position of Business Consultant. Ms. Anaya told Mr. Richard he should not apply for the position although it represented a significant increase in salary.

31. On or about November 21, 2013, Mr. Richard applied for the position of IPDVS Technical Project Manager. This position represented a significant increase in salary and would provide an excellent opportunity for advancement. While initially Ms. Anaya told Mr. Richard that the position was available, she later retracted and told Mr. Richard that the position was no longer open. When Mr. Richard sought clarification as to what had occurred Ms. Anaya ignored Mr. Richard's email.

32. On or about January 9, 2014, Mr. Richard applied for the position of Senior Director of IT Procurement. Mr. Richard never received a response to his application.

33. On or about January 14, 2014, Mr. Richard applied for the position of Director of IT Procurement. Mr. Richard never received a response to his application.

34. On or about March 18, 2014, Mr. Richard was denied entrance to a school where he was supervising a job. When Mr. Richard contacted the vendor representative assigned to the job he was very rude and hostile for no reason.

35. Mr. Richard reported this event to Mr. Campanella on or about March 20, 2014. During that meeting Mr. Richard explained that the vendors do not respect him because of how the office as a whole treats him and because he has not been promoted despite his excellent work. There was a clear implication that Mr. Richard was referencing his Race and National Origin when he brought up these issues.

Charges 13

/8

36. Mr. Campanella reacted by asking if Mr. Richard wanted his job. Mr. Richard responded by telling him that Mr. Campanella was not there long enough to completely understand the situation. Mr. Richard then stated that he had been blacklisted and treated disparately within the office. Mr. Campanella then told Mr. Richard that he would not speak with him anymore and left the room, entering the common area and began shouting at Mr. Richard that he was not going to talk to him anymore while wagging his fingers in Mr. Richard's face.

37. This situation was witnessed by numerous coworkers and this was very embarrassing to Mr. Richard.

38. On or about March 25, 2014, Mr. Richard met with Ms. Anaya regarding the conversation with Mr. Campanella. During that conversation Ms. Anaya refused to discuss issues relating to Mr. Richard's continued attempts to be treated fairly.

39. Mr. Richard was given a counseling letter on April 22, 2014 to retaliate against him for these complaints which included a fabricated allegation that Mr. Richard had become angry and that Mr. Campanella was frightened for his safety. Upon information and belief, this type of accusation directly relates to Mr. Richard's Race as Ms. Anaya chose to use the stereotype of an angry and violent Black man to avoid facing Mr. Richard's valid concerns about being treated disparately in the workplace.

40. On or about May 2, 2014, Mr. Campanella removed two computers which Mr. Richard had stored under his desk. There was no reason to have done this other than to harass Mr. Richard.

41. On or about May 22, 2014, Mr. Richard applied for the position of Sr. Project Manager. Mr. Richard received a response stating that Mr. Richard's background was "more technical" and that the position was not suited for him. This statement, upon information and belief, was entirely fabricated as the position was essentially the same as what Mr. Richard was already performing.

Charges 14                                                                                    19

The position provided a significantly higher salary than Mr. Richard's current position.

42.    On or about September 10, 2014, Mr. Richard applied for the position of Senior Business Systems Analyst. Mr. Richard was given a telephone interview for this position but was never seriously considered for the position.

43.    On or about September 22, 2014, Mr. Richard applied for the position of Borough Director, Space Planning. Mr. Richard never received a response to this application.

44.    In or around October of 2014, Mr. Campanella asked a coworker "why this Black guy" was making so much money, in reference to another Black employee within the DOE. The clear implication from this comment was that the employee's Race was a factor in forming Mr. Campanella's opinion.

45.    On or about October 15, 2014 Mr. Richard applied for the position of Business IT Specialist. This position explicitly requested a degree in Educational Technology. Mr. Richard never received a response and the position was advertised a second time without ever calling Mr. Richard for an interview. Despite Mr. Richard having already applied for the position and never receiving a response, and in an effort to harass Mr. Richard, Human Resources sent out an email with a link to this position to every employee in DIIT, encouraging them to apply.

46.    On or about October 15, 2014, Mr. Richard applied for the position of Senior Program Manager, PMO. Mr. Richard was interviewed for this position. Ms. Anaya wrote Mr. Richard to tell him that he was not selected for the position. This position was re-advertised later.

47.    On or about November 20, 2014, Mr. Richard met with Ms. Vazquez, the Executive Director of Systems and Improvement; Ms. Anaya; Mr. Spencer and Mr. Dana Tilghman, Mr. Richard's union representative. During the meeting when Mr. Tilghman raised the issues relating to the unfair treatment Mr. Richard has suffered through. Ms. Vazquez stopped him and stated that this

Charges 15                                                                          20

language was "divisive" and should stop. Mr. Richard interjected that the situation has caused him pain and that the meeting was supposed to relate to diversity and inclusion which should include his situation.

48.    Ms. Anaya ostensibly complained about Mr. Richard having sent too many emails during this meeting. The meeting ended without having a discussion about Mr. Richard's complaint and without Mr. Richard having the opportunity to voice his concerns. It was clear that Respondent wanted to limit the amount of time Mr. Richard had to complain and was not interested in his complaints.

49.    On or about December 21, 2014, Mr. Richard applied for the position of Deputy Chief Technology Officer. Mr. Richard never heard from anyone about this application.

50.    On or about December 21, 2014, Mr. Richard applied for the position of Chief Technology Officer. Mr. Richard never heard from anyone about this application.

51.    Mr. Richard was qualified for each and every position for which he applied. Each position offered an opportunity for advancement and a significant increase in pay. Mr. Richard was passed over each time, upon information and belief, due to his Race and National Origin.

52.    On or about January 17, 2015, Mr. Richard emailed Ms. Anaya to ask why he was not given the Senior Program Manager, PMO position. Ms. Anaya did not respond to this email. Frustrated by this situation and the failure of the DOE to respond to his numerous applications, on or about January 19, 2015, Martin Luther King Day, Mr. Richard sent an email to Ms. Vazquez. In that email Mr. Richard made it clear that his Race and National Origin were the underlying reasons for his not being considered for these many positions and the disparate treatment he has been subjected.

53.    Based on Respondents' discriminatory and disparate treatment of Complainant Richard **it is**

Charges 16                                                                                          21

**clear that Respondent DOE discriminated against Complainant Richard due to his Race, National Origin and complaints of discrimination.**

54.    Respondent discriminated against Complainant Richard on account of his Race (Black) and National Origin (Haitian), leading to the denial of numerous applications for advancement and the disparate pay rates which many Black employees endure within the DIIT.

55.    Complainant Richard feels offended, debased, disturbed, and humiliated by the blatantly unlawful and discrimination.

56.    Complainant Richard has been unlawfully discriminated against, retaliated against, humiliated, victimized, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

57.    **Respondent's actions and conduct were intentional and intended to harm Complainant Richard.**

58.    The above are just some of the acts of discrimination and disparate treatment that Complainant Richard experienced on a regular basis.

59.    As a result of the Respondent's discriminatory treatment of Complainant Richard, he has suffered emotional distress and physical ailments.

60.    As a result of the acts and conduct complained of herein, Complainant Richard has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Complainant Richard has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Complainant Richard further experienced severe emotional and physical distress.

61.    Complainant Richard's career and professional reputation has suffered due to Respondent's

Charges 17

22

discriminatory treatment.

62. Respondent's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

63. Complainant Richard is seeking compensatory damages (including back pay) to redress the injuries he has suffered as a result of being **Discriminated against**, **Retaliated against**, and **Disparately Treated** by Respondent DOE due to his **Race (Black/African American)**, **Color (Black – Dark Skin)**, **and National Origin (Haitian)**.


By:     __Patrick Richard__
             Complainant

Charges 18

23

# EXHIBIT FCA

**(6 pages, not including this page)**

Exhibit CFA

*24*

-----Original Message-----
From: Richard Patrick
Sent: Friday, May 22, 2015 3:14 PM
To: Kambouras Tom <TKambouras@schools.nyc.gov>
Cc: Vazquez Yamaris <YVazquez@schools.nyc.gov>; Anaya Jeanine <JAnaya@schools.nyc.gov>; 'lmorris@dc37.net' <lmorris@dc37.net>; Carlo Michael <MCarlo@schools.nyc.gov>; Spencer Mark <MSpence@schools.nyc.gov>; Campanella Jerry <JCampanella3@schools.nyc.gov>
Subject: Meeting Invitation Response

Mr. Kambouras:

By your broadcast, Human Resources personnel and four layers in the hierarchy of the NYC DOE/DIIT got my career history wrong: In judging my feelings/timing your email introduced me to people in the organization I've never met while hurting my career once again. As you may recall, the short conversation we had in the hallway directly outside your office on April 23rd afforded me the opportunity to introduce myself to you for the first time. I have not formally met you until then, and neither have I ever met Mr. Carlo. As one who believes in the importance of making a good first impression in setting the tone of any relationship, I gave due consideration to your email with regards to exposing me the way you did,  your view of the manner in which I handled my misfortune during the meeting, and your recommendations for the future.

First, Your Recommendations:  For the value I place in professionalism in the workplace, and especially at the NYC Dept. of Education – an educational organization, I would like to put your mind at ease by telling you that the DOE can always expect the highest level of professionalism and decorum from me in thoughts, analyses, and actions, even when we disagree. I also want to apprise you that I live and function by moral codes of conduct and by the ethical standards of my profession which I've espoused some thirty plus years ago. The adversities I've overcome are by virtue of this discipline.

Second, Handling Misfortunes: Two decades plus, and one more incident of someone being left behind reveal  (in my view) a little more than a mere oversight. The victim is likely to feel anxious, hurt, and robbed of her/his humanity which became a disease. However, this disease has not made me so presumptuous as to interrupt people's meetings.  I question for understanding when the time is reasonably right in situations that affect me, just like when I am defending the interests of the DOE. I agree that there is room for disagreement here; I have a long history of defending the DOE's interests, valuing the in millions of dollars. My career had been taxed for that too, as odd as this may sound. Food for thought and further discussions.

Having appeared some forty minutes after your meeting stated on April 16th, I sat down and listened for some twenty five minutes until you opened up a Q&A session.  After three or four questions from the audience, I raised my hand to signal that I had a question. Once acknowledged I asked: "What is this meeting about?" in order to rid myself of the prevailing ignorance. And after hearing your and Ms. Vazquez's responses, I offered that "I wasn't invited." At that point, I released my cell phone/blackberry from my hand about two inches above the table from which my arm had been resting.

In essence:  1) I did not disrupt you or your meeting; I asked a question during Q&A at a time appropriate for my own elucidation. I emphasize that I asked only one question.

Exhibit CFA 1

25

2) My question was followed by a comment; I did not ask: "How come I wasn't invited" as you put it. And

3) I take full responsibility for the little noise produced by the phone being dropped. In that situation where unbeknown to me someone took offense, I apologize; "throwing the cell phone" as you put it is a stretch of what I did. I don't remember having to reach for it.

All in all, I do not see a breach of a professional code here, although one may argue that I didn't keep a secret. However, let's not lose sight of the theme of these Roadshows: Diversity and Inclusion – implying communication, trust, transparency.

Mr. Kambouras, with all due respect, I suspect that we disagree on the timing of my question/comment, but I think you had time to think I could have had a basis or two for asking the question at the time that I did, which would obviate the need for you to send this email. I imagine that you bought into the bias that personnel had been piling against me for more than two decades. As someone so high in the hierarchy an opportunity is being exploited to finish me off, and possibly helping Mr. Campanella in the claim (DIIT lawyers helped him make) that an angry black man was about to hurt him. And for this, it is ok for him to publicly humiliate me with impunity. As far as I know, no email was sent to Mr. Campanella, for he is a white male, a friend, a good man in management. Mr. Kambouras: This is not to be allowed in a professional setting, while Mr. Spencer does not even care to hear my side of what actually happened. Let it be known that these seemingly benign character assassinations have hurt me beyond measure, to the point that my career has been damaged beyond repair.

Am I not a man?

Why am I being punished for writing a vision report predating E-rate, predicting an Internet-like network, an infrastructure feasible for seamless voice and data traffic linking all schools only to see today that we can't live without them?

What about the dignity associated with an Engineer's work?

Why am I being paid so poorly as an Engineer, and in comparison to other engineers in the organization?

Why am I working alongside engineers, architects, and designers contributing my engineering skills, knowledge, and experience in bringing to fruition new systems for use by mankind without the pay equivalent to all others, or commensurate with the 30+ years of experience that I have?

Why was Ross Lanham (the consultant that robbed the DOE of more than $3.7 million) favored over me?

Why is the DOE discriminating against me while using federal and capital funds?

As an Engineer with the DOE for over 24 years, do you know that I have seniority over Jerry Campanella, Mark Spencer, Joan Fraser-King, Christopher Borovsky, most (if not all) of the folks in the Office of Solutions Design and Engineering, to name a few? Why is DIIT personnel, having a Talent (Selection) Group, appear so blind to the education and experience of its workforce?

Why am I being put to ridicule every time I try to exercise some rights I believe the human experience and those the laws of the United Stated of America guarantee me?

Exhibit CFA 2

*26*

Why is this stance of such meanness towards that despite having done exemplary work, and having performed above and beyond my duty, I have never received a raise and promotion while contributing in the fastest growing fields of the economy as an Engineer?

Why has my design and engineering work reduced to templates for everyone to use without due credit, and once "out there" teams and anyone can modify them and then send them to me for comment, and/or apprising me that these are the new standards?

Having been aware of my career dilemma as you've acknowledged during the short hallway conversation I had with you on April 23rd, I would have hoped that you would offer a way towards diversity and inclusion consistent with the theme of your Roadshows. Rather, you seem to have teamed up with the group intent on maintaining the status quo, and perhaps to do more harm to my career.

I view your email as a continuing practice of whimsically discredit/badgering me for the shortcomings of others. In this situation where someone fails to include me (suffice it to say here that I have reasons to believe that I was purposely not invited), I get reprimanded – my character and career/professionalism vilified. Be mindful that this is a career built on hard work and engineering know-how, supported by a Master's Degree; I am not the favorite designee of the man/woman above that seems to be the makeup of DIIT. Or perhaps, this is why I'm having such a hard time. Your email appends the thick file that DIIT has on me, which reflects the gross injustices that racism fosters to substantiate the systematic denial of rights due to me. The contents of this file are DIIT personnel's evidence to malign me. They permeate their racist roots as they are based on falsehoods and fallacies.

And Third, On Being Introduced: I want to be introduced for the pioneering work that I've done in engineering the voice/data networks infrastructure prevalent in the schools today, and for applying my skills every working day to ensure that the systems I projectmanage work. In an environment void established quality assurance/quality control protocols, I see this engineering/technical vigilance as the approach to take to avoid blunders normally associated with technology integration. Rather than being recognize for this and other visionary works, I have being misled into looking to the Division of School Facilities for opportunities as : "I can't think of a particular area within DIIT, but DSF project liaisons all seem to have engineering background" quoting Mr. Spencer. Meanwhile, DIIT/Solutions Design and Engineering had been alive and well, just to name one. Upon applying for a position in this office which matched my qualifications perfectly (almost word for word), I didn't even get an acknowledgement that they received my application. So I ask: Is this what I am to expect for this and the other seven odd positions I recently applied for? So I conclude: therein lies the double-standard – a whole new approach to dealing with the dark skin, Haitian black male.

I declare that there is nothing I can do to change DIIT manager's perception of black males like me as visibly angry men seeking transparency; and they will not succeed in destroying my confidence. It seems that despite the Dream, although crystallized by laws, remains to be a nightmare and a struggle for an Engineer at (guess where?) the New York City Department of Education. The consequences have made up for my family being de-stabilized. So I ask more questions: What are young black boys and girls, their parents, guardians, and advocates to do in light of such a glaring example? What's to sustain their hopes and aspirations? The answers lie in how the DOE brings relief and redress in this situation, and the mechanisms placed as checks and balances to enforce the laws written to protect the vulnerable.

Exhibit CFA 3

In fact, "All human beings are born free and equal in dignity and rights. They are endowed with reason and conscience and should act towards one another in a spirit of brotherhood." –Article 1 of the Universal Declaration of Human Rights. By contrast, "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights that among these are life, liberty, and the pursuit of happiness." – The opening of the United States Declaration of Independence.

Mr. Kambouras, can we agree that the "we" includes me, and I will no longer be left behind by oversight, design, or otherwise?

Sincerely,

Patrick Richard
Sr. Project Manager
NYC DOE/DIIT/OTS
(917) 880-7083

---

From: Kambouras Tom
Sent: Monday, April 20, 2015 4:11 PM
To: Richard Patrick
Cc: Carlo Michael; Spencer Mark; Campanella Jerry
Subject: RE: Meeting Invitation

Mr. Richard,

I am aware of the oversight that occurred with your invite to my Road Show.   It is unfortunate that you were unable to attend the entire session last week.   However, as Yamaris indicated below, you are welcome to attend one of the future sessions being conducted.

I want to take this opportunity to express to you my dissatisfaction with the manner in which you conducted yourself at the Roadshow.  I am aware that you may have felt upset at the oversight, but the manner in which you chose to address it was unacceptable.   Rather than wait  until the meeting was over to speak to me or Yamaris,  you chose to disrupt the meeting while in process.   You entered 45 minutes after the meeting started and rudely interrupted me by asking 'What is this meeting about ?' and 'How come I wasn't invited'.   Yamaris responded that she would look into the reasons why you did not receive an invite.  However, you continued to be disruptive,you made a loud noise by throwing your blackberry/cellphone down on the table and you were visibly angry.  Your behavior was unprofessional and offensive.   I expect in the future that for any meetings you attend, including my Roadshow, you exhibit the utmost professionalism and decorum.


Tom Kambouras
Chief Technology Officer – DIIT


From: Vazquez Yamaris
Sent: Friday, April 17, 2015 5:11 PM

*28*

Exhibit CFA 4

**From:** Richard Patrick
**Sent:** Tuesday, April 21, 2015 9:02 PM
**To:** Vazquez Yamaris <YVazquez@schools.nyc.gov>
**Cc:** Kambouras Tom <TKambouras@schools.nyc.gov>; Anaya Jeanine <JAnaya@schools.nyc.gov>; Spencer Mark <MSpence@schools.nyc.gov>; Campanella Jerry <JCampanella3@schools.nyc.gov>; Carlo Michael <MCarlo@schools.nyc.gov>
**Subject:** Re: Meeting Invitation

Dear Ms. Vazquez,

I felt the need to raise this issue during Q&A, not only so I would have a basis for informed participation, but also because everyone saw me walking in late into the meeting. I didn't suppose it was an oversight that I wasn't invited.

I appreciate your consideration, and thank you for your response. No need to apologize, although I accept your offer.

Sincerely,

Patrick Richard
Sr. Project Manager
NYC DOE/DIIT/OTS
(917)880-7083
--------------------------
Sent from my BlackBerry Wireless Handheld


To: Richard Patrick
Cc: Kambouras Tom; Anaya Jeanine
Subject: Meeting Invitation

Dear Mr. Richard,

I reviewed the meeting invitation that was sent out by Stephanie Cheong on my team and confirmed that she mistakenly left your name off of the invite. My apologies for that oversight. An invitation will be sent to you to attend another Roadshow meeting with Tom.

Best,
Yamaris

Yamaris G. Vazquez
Executive Director, Systems and Process Improvement Division of Instructional and Information Technology (DIIT) Partners in the Future of Education
http://schools.nyc.gov/Offices/EnterpriseOperations/DIIT/default.htm
--------------------------
Sent from my BlackBerry Wireless Handheld

*29*

Exhibit CFA 5

**From:** Kambouras Tom
**Sent:** Monday, April 20, 2015 4:11 PM
**To:** Richard Patrick
**Cc:** Carlo Michael; Spencer Mark; Campanella Jerry
**Subject:** RE: Meeting Invitation

Mr. Richard,

I am aware of the oversight that occurred with your invite to my Road Show.   It is unfortunate that you were unable to attend the entire session last week.   However, as Yamaris indicated below, you are welcome to attend one of the future sessions being conducted.

I want to take this opportunity to express to you my dissatisfaction with the manner in which you conducted yourself at the Roadshow.  I am aware that you may have felt upset at the oversight, but the manner in which you chose to address it was unacceptable.   Rather than wait  until the meeting was over to speak to me or Yamaris,  you chose to disrupt the meeting while in process.  You entered 45 minutes after the meeting started and rudely interrupted me by asking 'What is this meeting about ?' and 'How come I wasn't invited'.  Yamaris responded that she would look into the reasons why you did not receive an invite.  However, you continued to be disruptive, you made a loud noise by throwing your blackberry/cellphone down on the table and you were visibly angry.  Your behavior was unprofessional and offensive.  I expect in the future that for any meetings you attend, including my Roadshow, you exhibit the utmost professionalism and decorum.

Tom Kambouras
Chief Technology Officer – DIIT

**From:** Vazquez Yamaris
**Sent:** Friday, April 17, 2015 5:11 PM
**To:** Richard Patrick
**Cc:** Kambouras Tom; Anaya Jeanine
**Subject:** Meeting Invitation

Dear Mr. Richard,

I reviewed the meeting invitation that was sent out by Stephanie Cheong on my team and confirmed that she mistakenly left your name off of the invite. My apologies for that oversight.  An invitation will be sent to you to attend another Roadshow meeting with Tom.

Best,
Yamaris

Yamaris G. Vazquez
Executive Director, Systems and Process Improvement
Division of Instructional and Information Technology (DIIT)
**Partners in the Future of Education**
http://schools.nyc.gov/Offices/EnterpriseOperations/DIIT/default.htm

*30*

Exhibit CFA 6

# Copy of Charge Filed with the Equal Employment Opportunity Commission

**(19 pages, not including this page)**

| AMENDED CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBERS |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy act statement before completing this form. _____and EEOC  State or local Agency, if any | [ ] FEPA  [x] EEOC | 846-2015-11291  520-2015-01199 |

| NAME (Indicate Mr.. Ms., Mrs.) Mr. Patrick Richard | | HOME TELEPHONE (Include Area Code) (718) 978-4773 |
|---|---|---|
| STREET ADDRESS 231-04 128th Road | CITY. STATE AND ZIP CODE Laurelton, New York 11413 | DATE OF BIRTH 8/17/1960 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below).

| NAME New York City Department of Education | NUMBER OF EMPLOYEES, MEMBERS +1000 | TELEPHONE (Include Area Code): (718)935-2000 |
|---|---|---|
| STREET ADDRESS 65 Court Street | CITY. STATE AND ZIP CODE Brooklyn, New York 11201 | COUNTY Queens |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box (es))

[X] RACE  [X] COLOR  [ ] SEX  [ ] RELIGION  [X] NATIONAL ORIGIN

[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER Pregnancy Act

DATE DISCRIMINATION TOOK PLACE EARLIEST (ADEAJEPA)  LATEST (ALL) 1994  [X] CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed. al/ach extra sheet(s)

"Please see attached statement of facts"

[] I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone Number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 2/16/15  Charging Party: [signature]

State of New York County of Queens to wit:

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

/x/ [signature]  SIGNATURE OF COMPLAINANT  2/16/15 DATE

Sworn to and subscribed to before the undersigned notary public in and for said jurisdiction this 16th day of February, 2015.

My commission expires: 6/6/17

[signature] Notary Public

EEOC Form 5 modified

JESSE CURTIS ROSE NOTARY PUBLIC NO. 02RO6204994 QUALIFIED IN QUEENS COUNTY COMM. EXP. 6/6/17 STATE OF NEW YORK

32

# The Rose Law Group, PLLC

**Jesse C. Rose, Esq.**

31-09 Newtown Avenue, Suite 309, Astoria, New York 11102
Direct: (718) 989-1864  Fax: (917) 831-4595
www.TheRoseLawGroup.com

February 16, 2015

Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, NY 10004

## AMENDED CHARGES

| Re: | **Our Client** | : | **Patrick Richard** |
|---|---|---|---|
| | **Nature of complaint** | : | **Discrimination and Retaliation** |

-against-

### New York City Department of Education

Dear Madam or Sir:

The following is an amended charge of Discrimination and Retaliation against the New York City Department of Education that this office is filing on behalf of our client.

The exact number of employees at the above entity is unknown, but upon information and belief, there are well more than the statutory minimum.

A statement of the basis of these claims follows:

1. Complainant and seeks damages to redress the injuries Complainant has suffered as a result of being **Discriminated against**, **Retaliated against**, and **Disparately Treated** by his employer due to his **Race, Color (Black) and National Origin (Haitian)**.

### PARTIES

2. That at all times relevant hereto, Complainant Patrick Richard ("Richard") is a resident of the State of New York and Queens County.

3. That at all times relevant hereto, Respondent New York City Department of Education ("DOE" or "Respondent") is a municipality with its principal offices located at 65 Court Street, Brooklyn, New York 11201.

4. That at all times relevant hereto, Complainant Richard is an employee of Respondent

*33*

DOE.

## MATERIAL FACTS

5.  At all times Mr. Richard is a Black man who was born in Haiti.

6.  Mr. Richard obtained a Bachelor of Engineering degree in Electrical Engineering in 1985.

7.  In or around December of 1991, Mr. Richard was hired by the DOE as a project manager earning approximately $44,000.00 per year.

8.  At all times Mr. Richard has been an exemplary employee. He has not received any discipline or negative reviews until the facts which are discussed herein.

9.  Throughout his employment Mr. Richard, despite his exemplary work product, has never received a merit raise and has only received raises due to his longevity in employment.

10. In fact, Mr. Richard demonstrated that he had a significant insight into the future for information technology. In 1994 Mr. Richard advocated that the DOE provide a telecommunication network for all schools within New York City. This idea was put aside by White supervisors who did not value Mr. Richard's input.

11. Throughout his employment, Mr. Richard has been passed over for advancement and paid a disparate salary compared to White coworkers performing the same or substantially the same work.

12. In or around 1997, the Bureau of Telecommunications ("BOT") was under the Division of Business and Administration for the city and Mr. Richard worked there. That year a change was implemented which moved the Bureau of Telecommunications into the Division of Instructional and Information Technology ("DIIT").

13. At this time the BOT was comprised mostly of Black employees.

14. The DIIT had many similar titles and positions which performed substantially similar

2

work. DIIT was comprised mostly of White employees.

15. When the BOT was moved into the DIIT, DIIT employees were compensated as a significantly higher rate than BOT employees.

16. Upon information and belief, the salary of White employees within the DIIT with similar titles or positions as those Black employees who worked for the BOT was and is significantly higher than salaries for Black employees.

17. Mr. Richard and other BOT employees were never informed of this discrepancy and were not provided salary increases to prove the same or similar compensation to the employees working in the DIIT.

18. Upon information and belief, this policy has resulted in disparate pay for Black employees such as Mr. Richard working within DIIT. This has continued to this day.

19. In or around 1998, Mr. Richard was passed over for promotion when Mark Spencer, a White coworker with a significantly lesser educational background, was promoted to the title of "Senior Project Manager" and made Mr. Richard's supervisor.

20. Indeed, many other White employees who started working after Mr. Richard were promoted into managerial positions while Black employees were not promoted.

21. Many times the managerial positions were not posted or offered to Mr. Richard while they were offered or given to White coworkers.

22. In or around 2000, Mr. Richard obtained a Master's Degree in Educational Technology.

23. In or around 2003, Mr. Richard was again passed over when the DOE brought in Jerry Campanella, a White man, from the outside to take Mr. Spencer's position after Mr. Spencer was again promoted. Upon information and belief, this position was never posted and Mr. Richard was not permitted the opportunity to apply. Mr. Campanella is

3

35

significantly less qualified than Mr. Richard for that position.

24. In or around 2011, Mr. Richard obtained certification in A+ computer repair.

25. In or around May of 2013, Mr. Richard met with the Director of Human Resources, Jeanine Anaya, to ask what it would take to get a promotion or raise. Ms. Anaya told Mr. Richard she would look into it and get back to him.

26. In or around July of 2013, Mr. Richard met with Ms. Anaya, Mr. Spencer and Mr. Campanella, Mr. Richard's White supervisor. During that meeting Mr. Richard provided evidence that he had been passed over for positions which he should have been given since as early as 1994 when he applied for a database administrator position. That job had been given to a White man, newly hired from the outside. He went on to demonstrate that he was being compensated at a rate that was far below what someone with his level of education should be paid.

27. At the close of that meeting Ms. Anaya told Mr. Richard that they would "see what could be done."

28. Ms. Anaya later informed Mr. Richard that they would not meet with him again relating to his requests for promotion or advancement.

29. Beginning in September of 2013, Mr. Richard began applying to every open position which offered the opportunity for advancement. Each time he was passed over or blatantly ignored.

30. On or about September 27, 2013 Mr. Richard applied for the position of Business Consultant. Ms. Anaya told Mr. Richard he should not apply for the position although it represented a significant increase in salary.

31. On or about November 21, 2013, Mr. Richard applied for the position of IPDVS

4

36

Technical Project Manager. This position represented a significant increase in salary and would provide an excellent opportunity for advancement. While initially Ms. Anaya told Mr. Richard that the position was available, she later retracted and told Mr. Richard that the position was no longer open. When Mr. Richard sought clarification as to what had occurred Ms. Anaya ignored Mr. Richard's email.

32. On or about January 9, 2014, Mr. Richard applied for the position of Senior Director of IT Procurement. Mr. Richard never received a response to his application.

33. On or about January 14, 2014, Mr. Richard applied for the position of Director of IT Procurement. Mr. Richard never received a response to his application.

34. On or about March 18, 2014, Mr. Richard was denied entrance to a school where he was supervising a job. When Mr. Richard contacted the vendor representative assigned to the job he was very rude and hostile for no reason.

35. Mr. Richard reported this event to Mr. Campanella on or about March 20, 2014. During that meeting Mr. Richard explained that the vendors do not respect him because of how the office as a whole treats him and because he has not been promoted despite his excellent work. There was a clear implication that Mr. Richard was referencing his Race and National Origin when he brought up these issues.

36. Mr. Campanella reacted by asking if Mr. Richard wanted his job. Mr. Richard responded by telling him that Mr. Campanella was not there long enough to completely understand the situation. Mr. Richard then stated that he had been blacklisted and treated disparately within the office. Mr. Campanella then told Mr. Richard that he would not speak with him anymore and left the room, entering the common area and began shouting at Mr. Richard that he was not going to talk to him anymore while wagging his fingers in Mr.

5

37

Richard's face.

37.   This situation was witnessed by numerous coworkers and was very embarrassing to Mr. Richard.

38.   On or about March 25, 2014, Mr. Richard met with Ms. Anaya regarding the conversation with Mr. Campanella. During that conversation Ms. Anaya refused to discuss issues relating to Mr. Richard's continued attempts to be treated fairly and instead demanded that he participate in a confrontation with the vendor.

39.   Mr. Richard was later given a counseling letter for his file to retaliate against him for these complaints which included a fabricated allegation that Mr. Richard had become angry and that Ms. Anaya was frightened for her safety. Upon information and belief, this type of accusation directly relates to Mr. Richard's Race as Ms. Anaya chose to use the stereotype of an angry and violent Black man to avoid facing Mr. Richard's valid concerns about being treated disparately in the workplace.

40.   On or about May 2, 2014, Mr. Campanella removed two computers which Mr. Richard had stored under his desk. There was no reason to have done this other than to harass Mr. Richard.

41.   On or about May 22, 2014, Mr. Richard applied for the position of Sr. Project Manager. Mr. Richard received a response stating that Mr. Richard's background was "more technical" and that the position was not suited for him. This statement, upon information and belief, was entirely fabricated as the position was essentially the same as what Mr. Richard was already performing. The position provided a significantly higher salary than Mr. Richard's current position.

42.   On or about September 10, 2014, Mr. Richard applied for the position of Senior Business

6

*38*

Systems Analyst. Mr. Richard was given a telephone interview for this position but was never seriously considered for the position.

43. On or about September 22, 2014, Mr. Richard applied for the position of Borough Director, Space Planning. Mr. Richard never received a response to this application.

44. In or around October of 2014, Mr. Campanella asked a coworker "why this Black guy" was making so much money, in reference to another Black employee within the DOE. The clear implication from this comment was that the employee's Race was a factor in forming Mr. Campanella's opinion.

45. On or about October 15, 2014 Mr. Richard applied for the position of Business IT Specialist. This position explicitly requested a degree in Educational Technology. Mr. Richard never received a response and the position was advertised a second time without ever calling Mr. Richard for an interview. Despite Mr. Richard having already applied for the position and never receiving a response, and in an effort to harass Mr. Richard, Human Resources sent out an email with a link to this position to every employee in DIIT, encouraging them to apply.

46. On or about October 15, 2014, Mr. Richard applied for the position of Senior Program Manager, PMO. Mr. Richard was interviewed for this position. Ms. Anaya wrote Mr. Richard to tell him that he was not selected for the position. This position was re-advertised later.

47. On or about November 20, 2014, Mr. Richard met with Ms. Vazquez, the Executive Director of Systems and Improvement; Ms. Anaya; Mr. Spencer and Mr. Dana Tilghman, Mr. Richard's union representative. During the meeting when Mr. Tilghman raised the issues relating to the unfair treatment Mr. Richard has suffered through Ms. Vazquez

7

*39*

stopped him and stated that this language was "divisive" and should stop. Mr. Richard interjected that the situation has caused him pain and that the meeting was supposed to relate to diversity and inclusion which should include his situation.

48. Ms. Anaya ostensibly complained about Mr. Richard having sent too many emails during this meeting. The meeting ended without having a discussion about Mr. Richard's complaint and without Mr. Richard having the opportunity to voice his concerns. It was clear that Respondent wanted to limit the amount of time Mr. Richard had to complain and was not interested in his complaints.

49. On or about December 21, 2014, Mr. Richard applied for the position of Deputy Chief Technology Officer. Mr. Richard never heard from anyone about this application.

50. On or about December 21, 2014, Mr. Richard applied for the position of Chief Technology Officer. Mr. Richard never heard from anyone about this application.

51. Mr. Richard was qualified for each and every position for which he applied. Each position offered an opportunity for advancement and a significant increase in pay. Mr. Richard was passed over each time, upon information and belief, due to his Race and National Origin.

52. On or about January 17, 2015, Mr. Richard emailed Ms. Anaya to ask why he was not given the Senior Program Manager, PMO position. Ms. Anaya did not respond to this email. Frustrated by this situation and the failure of the DOE to respond to his numerous applications, on or about January 19, 2015, Martin Luther King Day, Mr. Richard sent an email to Ms. Vazquez. In that email Mr. Richard made it clear that his Race and National Origin were the underlying reasons for his not being considered for these many positions.

53. Based on Respondents' discriminatory and disparate treatment of Complainant Richard it

40

**is clear that Respondent DOE discriminated against Complainant Richard due to his Race, National Origin and complaints of discrimination.**

54.    Respondent discriminated against Complainant Richard on account of his Race (Black) and National Origin (Haitian), leading to the denial of numerous applications for advancement and the disparate pay rates which many Black employees endure within the DIIT.

55.    Complainant Richard feels offended, disturbed, and humiliated by the blatantly unlawful and discrimination.

56.    Complainant Richard has been unlawfully discriminated against, retaliated against, humiliated, victimized, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

57.    **Respondent's actions and conduct were intentional and intended to harm Complainant Richard.**

58.    The above are just some of the acts of discrimination and disparate treatment that Complainant Richard experienced on a regular basis.

59.    As a result of the Respondent's discriminatory treatment of Complainant Richard, he has suffered emotional distress and physical ailments.

60.    As a result of the acts and conduct complained of herein, Complainant Richard has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Complainant Richard has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Complainant Richard further experienced severe emotional and physical distress.

9

61.    Complainant Richard's career and professional reputation has suffered due to Respondent's discriminatory treatment.

62.    As a result of the above, Complainant Richard has been damaged in an amount in excess of the jurisdiction of the Court.

63.    Respondent's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

Dated: New York, New York
       February 16, 2015

By:  _____
     Jesse C. Rose, Esq.
     *Attorney for Complainant*
     The Rose Law Group PLLC
     31-09 Newtown Avenue, Suite 309
     Astoria, New York 11102
     JRose@theroselawgroup.com

10

42



846-2015- ___

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.

### 1. Personal Information

Last Name: Richard          First Name: Patrick          MI: C.

Street or Mailing Address: 231-04 128th Road          Apt Or Unit #:

City: Laurelton          County: Queens          State: NY          ZIP: 11413

Phone Numbers: Home: ( 718 ) 978 - 4773          Work: ( 917 ) 880 - 7083

Cell: ( 917 ) 880 - 7083          Email Address: prichar515@gmail.com

Date of Birth: 08-17-1960          Sex: Male [x]   Female [ ]          Do You Have a Disability? [ ] Yes  [x] No

Please answer each of the next three questions.     i. Are you Hispanic or Latino?     [ ] Yes  [x] No

ii. What is your Race? Please choose all that apply.   [ ] American Indian or Alaska Native   [ ] Asian   [ ] White

[x] Black or African American   [ ] Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? Haiti

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Pauline Richard          Relationship: Daughter

Address: 231-04 128th Road          City: Laurelton          State: NY   Zip Code: 11413

Home Phone: ( 718 ) 978 - 4773     Other Phone: (   )

### 2. I believe that I was discriminated against by the following organization(s): (Check those that apply)

[x] Employer   [ ] Union   [ ] Employment Agency   [ ] Other (Please Specify)

Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here [ ] and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: NYC Department of Education

Address: 65 Court Street          County: Brooklyn

City: Brooklyn          State: NY   Zip: 11201     Phone: ( 718 ) 935 - 2000

Type of Business: Education          Job Location if different from Org. Address: 2 Metrotech Center

Human Resources Director or Owner Name: Jeanine Anaya          Phone:

Number of Employees in the Organization at All Locations: Please Check (√) One

[ ] Fewer Than 15   [ ] 15 - 100   [ ] 101 - 200   [ ] 201 - 500   [x] More than 500

### 3. Your Employment Data (Complete as many items as you can)     Are you a Federal Employee? [ ] Yes  [ ] No

Date Hired: 05/1991          Job Title At Hire: Project Manager/ Telecommunications Associate II

Pay Rate When Hired: $44K          Last or Current Pay Rate: $77K

Job Title at Time of Alleged Discrimination: Telecommunications Specialist   Date Quit/Discharged: N/A

Name and Title of Immediate Supervisor: Jerry Campanella, Director of Operations

43

2

If Job Applicant, Date You Applied for Job  Many - List atteched    Job Title Applied For  List attached

**4. What is the reason (basis) for your claim of employment discrimination?**
*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

[x] Race   ☐ Sex  ☐ Age  ☐ Disability   [x] National Origin  ☐ Religion  ☐  Retaliation   ☐ Pregnancy  [x] Color (typically a

difference in skin shade within the same race)  ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing   ☐ ii. family medical history   ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: Dark brown

If you checked genetic information, how did the employer obtain the genetic information?

Other reason (basis) for discrimination (Explain).

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
*(Example: 10/02/06 - Discharged by Mr. John Soto, Production Supervisor)*

A) Date: 3/19/2014          Action: Mr. Campanella (my supervisor) walked out of a closed-door meeting I had with him and humiliated me by shouting disparaging words at me, wagging his fingers within inches of ... *more on attachd page(3)*.

Name and Title of Person(s) Responsible: Jerry Campanella (Supervisor)- Director of Operations

B) Date: 4/29/2014          Action: Jeanine Anaya, after promising that nothing will go to my file as per the 3/19/14 incident apprised me that I am on an 18-month probation, intimidating me while covering up the *incident*.

Name and Title of Person(s) Responsible: Jeanine Anaya-HR Director, Mark Spencer-Sr.Director, Jerry Campanella-Director of Oper.

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.
Within weeks of the 3/19/2014 incident, when a white colleague of mine complained to Mr. Campanella about the same vendor associate with whom the 3/19/2014 incident arose, Mr. Campanella recommended that the vendor fire the associate. The associate was fired. His name is Alberto Martinez, and the vendor is Mitel Corporation. More on attached pages (3).

**7. What reason(s) were given to you for the acts you consider discriminatory?  By whom? His or Her Job Title?**
Until I began addressing their discriminatory practices in 1995 I've had excellent formal evaluations (1992, 1993, 1994). After those they've done informal evaluations until 1998 when they claimed that I've had satisfactory evaluations. No further evaluations since then and they give no reason for the disparate treatment I've been receiving. More on attached pages (3).

**8. Describe who was in the same or similar situation as you and how they were treated. For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.**

Of the persons in the same or similar situation as you, who was treated *better* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Mark Spencer | White | Senior Director- Telecomm. Services |

Description of Treatment  Came to the DOE about 3 months after me as a project manager with less education (no degree) and experience than me. He was made my supervisor at will in 1996, and routinely promoted with raises.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Jerry Campanella | White | Director of Operations- Telecomm. Ser |

Description of Treatment  Came to the DOE around 2003, only High School Diploma with no experience in the schools. Has been my supervisor with routine raises.

*44*

3

Of the persons in the same or similar situation as you, who was treated *worse* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Daryll Brown | Black | Project Manager |

Description of Treatment I'm not aware of any raises or promotions.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Olivia Upson | Black | Project Manager |

Description of Treatment I'm not aware of any raises or promotions.

Answer questions 9-12 <u>only</u> if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9.  Please check all that apply:          ☐   Yes, I have a disability

                                          ☐   I do not have a disability now but I did have one

                                          ☐   No disability but the organization treats me as if I am disabled

10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?

Yes ☐     No ☐

If "Yes," what medication, medical equipment or other assistance do you use?

12. Did you ask your employer for any changes or assistance to do your job because of your disability?

Yes ☐     No ☐

If "YES", when did you ask? _____     How did you ask (verbally or in writing)? _____

Who did you ask? (Provide full name and job title of person)

Describe the changes or assistance that you asked for:

How did your employer respond to your request?

*45*

4

13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| A. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| Natasha Russell | Telecommunications Support | 2 Metrotech Center, Brooklyn, NY 11201 (718) 935-5869 |

**What do you believe this person will tell us?**
Ms. Russell will say that she was upset seeing Mr. Campanella disrespecting a fellow employee in that manner.

| B. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| Theresa Hannible | Administrative Assistant | 2 Metrotech Center, Brooklyn, NY 11201 (718) 935-4695 |

**What do you believe this person will tell us?**
Ms. Hannible described the incident as: "What Jerry did was ugly."

14. Have you filed a charge previously in this matter with EEOC or another agency?      Yes ☐   No ☒

15. If you have filed a complaint with another agency, provide name of agency and date of filing:

16. Have you sought help about this situation from a union, an attorney, or any other source?   Yes ☒   No ☐
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
DC37, Local 2627. No action as of yet.

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

Box 1  ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

Box 2  ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____                              1/13/2015
              Signature                                      Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1. FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08).
2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters.
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

Print Form

46

**PATRICK RICHARD – Page 1 of 3**

Additional Pages to Intake Questionnaire.

To address

Question 5A: ... my face, raising the awareness and attention of some 200+ coworker and colleagues.

Question 6 and 7: The 3/19/14 incident arose from Mr. Campanella wanting to silence me into submission and intimidation so that the long history of discrimination against me can continue with impunity. He became aware of the long history of mistreatment I have been subjected to in a meeting with Ms. Anaya (HR Director) and Mr. Spencer (his supervisor), and me in July 2013 when Mr. Spencer admitted that there may have been some injustices towards me in the past. This discussion was supposed to continue as they promised me as the meeting was ending. When I asked them for a date and time by email they told me that they will not meet with me anymore.

Mr. Campanella walked out of the meeting after I told him that the office (run by Mr. Spencer) and HR (run by Ms. Anaya) should not have me blacklisted me to the extent that I've never been promoted or given a merit raise despite the excellent evaluations I've had and the pioneering work that I've done for the office. Mr. Campanella came to the DOE around 2003 and was made my supervisor. I don't know if he's aware of the pioneering work I did in the office as architect of the systems we've been installing in the schools for the past two plus decades.

It is my understanding that Mr. Campanella became aware of the disparate treatment and impact the practices have had on me and wanted to preserve the status quo, certain that if he humiliated me in public no one will believe me when I explained what happened in the room. After all, I have been ostracized for 20 plus years, with HR taking an active role in it.

It became clear to Mr. Campanella the way forward is to continue the practice as he noticed that I was being marginalized despite the fact that no one in the office come close to matching my education and experience. He had me and his subordinates write many of his reports for him. I did the foundational work which has been translated into templates that everyone eventually grew up to adapt to. I help newcomers in need. Over the years (24 years) the office top administration changed. Those who started the discrimination against me installed the current director who is maintaining the status quo as he is the beneficiary of my being discriminated. At least five of those placed above me have been forced to resign/leave amid investigations, including the former NYC DOE consultant, Willard "Ross" Lanham who stole millions of dollars of federal E-RATE funds.

As an Engineer, I have been one of the best qualified project manager working in the office of Telecommunications beginning in 1991. I am an African-American with a bachelor degree in Electrical Engineering and a Master's degree in Educational Technology. I have successfully completed and managed projects that none of my colleagues can do (including: database programming, development, design, report generation, and administration; revising and overhauling PBX specifications, devising methods for systems procurement, installation and management; bids evaluation & management, conducting technical pilots; research and reporting; publishing artwork design and layout, Local Area Network Administration).

47

PATRICK RICHARD – Page 2 of 3

Although my work has been evaluated as outstanding, exceeding expectations, etc., I've been kept where I started 24 years ago while white employees have been promoted over me (becoming my supervisor); have been given raises while I got none; have been brought from outside to supervise me; have been brought from outside to do work I have been doing very well; have been brought from outside to do work I have been hoping to do. I remain a low level employee with an entry level salary (for my qualifications) on par with any new comer into the office. Consultants have also been brought in to do work, I've been well suited to do.

Beginning in 1995, I've been trying to work some resolution w/ them to no avail. My Union (DC37) got involved only to stop following up when the circumstances turn into a crisis involving my family occasioning a divorce. My children were not spared as I became a single parent with three children in 2005.

I resumed discussions with them in 2013 only to be ignored after they promised to meet with me for further discussions. While they said that they did nothing illegal - yet admitted to some "injustices," the apparent neutral practices adopted towards me while promoting other white employees over me have harmed me enormously. I'm being treated as less than a person, ineligible for fair treatment as they have told me in 1996 that they don't have to treat me fairly. "This idea of fairness is your own opinion." The then assistant director (Richard M. Scott) said it, backed by the then director (Miriam Delaney) who said it's my opinion.

Although I am the only engineer (rare in this line of work) in the office, having been the pioneer in advancing the office work, they saw it fitting that I take no part in the Internet revolution as a new network is being designed.

I hope you find the basis to investigate the mistreatment towards me. Time did not allow me to sit with an interviewer to make a better case as I have been negotiating with my office, my union representative and HR to no avail. I am not well versed in law.

PATRICK RICHARD – Page 3 of 3

JOBS I HAVE APPLIED FOR TO NO AVAIL. THE JOBS ASK FOR 5 YEARS EXPERIENCE (AVERAGE) WHILE I AM OFFERING 20+. I HAD ONLY ONE INTERVIEW FOR ONE JOB THAT WAS READVERTISED AFTER MS. ANAYA SENT ME A REJECTION LETTER.

1. 12/21/14 – Chief Technology Officer (10873)
2. 12/21/14 -- Deputy Chief Technology Officer (10872)
3. 10/15/14 – Senior Program Manager, PMO (10698)
4. 10/15/14 – Business IT Specialist (10730)
5. 9/22/14 -- Borough Director, Space Planning (10671)
6. 9/10/14 – Sr. Business Systems Analyst (10628)
7. 5/22/14 – Sr. Project Manager (10374)
8. 1/14/14 – Director of IT Procurement (10229)
9. 1/9/14 – SR. Director of IT Procurement
10. 11/21/13 – IPDVS Technical Project Manager (10028)
11. 9/27/13 – Business Consultant (9954)

Please let me know how you can further assist me.

Thank you,

Patrick Richard

49

RECEIVED
2015 JAN 16  PM 2:25
EEOC
NEW YORK DISTRICT OFFICE

50

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Patrick C. Richard
231-04 128 Road
Laurelton, NY 11413

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2015-01199 | Roxanne Zygmund, Investigator | (212) 336-3764 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Kevin J. Berry,
District Director

DEC 16 2015
(Date Mailed)

Enclosures(s)

cc:
Ritu Pancholy
Associate Counsel
NYC DEPARTMENT OF EDUCATION
52 Chambers Street
Room 308
New York, NY 10007

Jesse C. Rose, Esq.
The Rose Law Group, PLLC
31-09 Newtown Avenue, Suite 309
Astoria, New York 11102