UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

PATRICK RICHARD,

                              Plaintiff,                    **MEMORANDUM & ORDER**
                                                           16-CV-957 (MKB)

                    v.

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                              Defendant.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

     Plaintiff Patrick Richard, proceeding *pro se*, commenced this action on February 25,

2016 against Defendant the New York City Department of Education (the "DOE"). (Compl.,

Docket Entry No. 1.) Plaintiff filed an Amended Complaint on March 7, 2016, alleging claims

for failure-to-promote, other discrete acts of discrimination, constructive discharge, hostile work

environment and retaliation based on his race, color and national origin in violation of Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), New York State Human

Rights Law (the "NYSHRL"), and New York City Human Rights Law (the "NYCHRL"), as

well as state law claims for libel and defamation. (*See generally* Am. Compl., Docket Entry No.

5.) The Court also construes Plaintiff's allegations to assert a disparate pay claim.[1] Defendant

---

     [1] *See Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (noting that courts must
liberally construe papers submitted by *pro se* litigants "to raise the strongest arguments they
suggest").

moves to dismiss the Amended Complaint, in part,[2] for failure to state a claim upon which relief

may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3]  (Def. Mot. to

Dismiss ("Def. Mot."), Docket Entry No. 23; Def. Mem. in Supp. of Def. Mot. ("Def. Mem."),

Docket Entry No. 24.)  For the reasons discussed below, the Court grants Defendant's motion in

part and denies it in part.

## I. Background

The facts as alleged in the Amended Complaint are accepted as true for the purposes of

deciding this motion.  Plaintiff identifies himself as a "black man" and states that he was born in

Haiti.  (Am. Compl. 13.)  He was hired by the DOE in or around December of 1991 as a project

manager with the title of "Telecommunications Associate – Level II," earning $44,000 annually.

(*Id*.)  Plaintiff has been an "exemplary employee" and "[h]e has not received any discipline or

negative reviews," except for those that are the subject of his discrimination claim.  (*Id*. at 13.)

Plaintiff currently works in the DOE's Division of Instructional and Informational Technology

("DIIT").  (*Id*. at 11, 16.)

### a. Failure-to-promote allegations – 1992 to 2013

According to Plaintiff, since 1992, Defendant has repeatedly and consistently denied

Plaintiff salary increases and job promotions commensurate with his skills and responsibilities,

---

[2] Defendant does not seek to dismiss Plaintiff's failure-to-promote claims accruing on or after March 19, 2014.  (Def. Mem. 2.)

[3] During a pre-motion conference on June 15, 2016 to discuss Defendant's anticipated motion to dismiss, the Court dismissed as time-barred Plaintiff's failure-to-promote claims based on pre-March 19, 2014 conduct.  (Min. Entry dated June 15, 2016.)  After a request by Plaintiff, the Court ordered briefing on the previously dismissed pre-March 19, 2014 failure-to-promote claims in order to allow Plaintiff the opportunity to fully brief and respond to Defendant's statute-of-limitations arguments.  (Order dated July 1, 2016.)  Accordingly, the Court addresses Defendant's statute-of-limitations defense as to the pre-March 19, 2014 conduct in this Memorandum and Order.

while white male employees have been promoted above him. (*Id*. at 15–21.) In 1992, despite the fact that he had taken on responsibilities in database design and administration that others had not, Defendant did not give Plaintiff the raise that "white project managers" received. (*Id*. at 15.) In 1993, Defendant filled an open supervisory position with a white candidate, Gerard Drazba, without posting the position internally or allowing Plaintiff the opportunity to apply. (*Id*.) In 1995, Plaintiff "could have . . . been pulled to serve as a Telecommunications Specialist like all the white coworkers," but he was not given that title. (*Id*.) When Defendant eventually gave Plaintiff the Telecommunications Specialist title, he was not awarded the associated pay given to white employees with the same title and "no degrees." (*Id*. at 17.) Plaintiff approached "director" Miriam Delaney with his concern that he was not initially promoted "like all the white coworkers," and Delaney "seems to have never forgiven him for daring to ask." (*Id*.)

In 1998, Defendant did not give Plaintiff a promotion to senior project manager, and instead gave the job to a white employee, Mark Spencer, who had "significantly less education[] and technical background" than Plaintiff. (*Id*. at 18.) As a result of the promotion, Spencer became Plaintiff's supervisor. (*Id*. at 18.) Similarly, in 2003, after Defendant promoted Spencer to "director," Jerry Campanella, a white man "from the outside," was promoted to Spencer's former position as senior project manager. (*Id*. at 19.) Defendant did not give Plaintiff the opportunity to apply for the senior project manager position, even though Campanella was "significantly less qualified" for the position than Plaintiff was. (*Id*.) Plaintiff was "passed over" again in 2007, when the position for director of maintenance and support within Plaintiff's unit became available. (*Id*.) Defendant instead gave the position to an employee who had joined the unit in or around 2001. (*Id*.)

In or around July of 2013, Plaintiff arranged a meeting with Jeanine Anaya, Director of

Human Resources, and Plaintiff's two white supervisors, Spencer and Campanella.  (*Id*. at 20.)
Plaintiff "provided evidence that he had been passed over for positions which he should have
been given since as early as 1994" and "demonstrate[d] that he was being compensated at a rate
that was far below what someone with his level of education should be paid."  (*Id*.)  At the close
of the meeting, Anaya told Plaintiff that "they would 'see what could be done.'"  (*Id*.)  Minutes
later, Anaya told Plaintiff that there would be no further meetings "relating to his request for
promotion or advancement."  (*Id*.)  Spencer also emailed Plaintiff following the meeting stating
that nothing could be done "about an injustice that happened in 1994."  (*Id*.)

In September of 2013, Plaintiff "began applying to every open position which offered the
opportunity for advancement," including business consultant position, a technical project
manager position, and a senior director of information technology ("IT") procurement position.
(*Id*. at 20–21.)  Defendant told Plaintiff not to apply for the business consultant position, that the
technical project manager position was unavailable, and did not respond to his application for the
director of IT procurement position.  (*Id*. at 21.)

### b.  Failure-to-promote allegations – 2014

On May 22, 2014, Plaintiff applied for a senior project manager position, which was
"essentially the same [position] as what [Plaintiff] was already performing."  (*Id*. at 22.)
Defendant told Plaintiff that the position was "more technical" and therefore not suited for him.
(*Id*.)  Plaintiff wrote to Anaya to ask why he was not given the senior project manager position,
but he did not receive a response.  (*Id*. at 24.)  On September 10, 2014, Plaintiff applied for a
senior business systems analyst position and, despite receiving a telephone interview, he was
"never seriously considered for" the position.  (*Id*. at 22–23.)  On September 22, 2014, Plaintiff
applied for a "Borough Director, Space Planning" position but received no response.  (*Id*. at 23.)

On October 15, 2014, Plaintiff applied for a business IT specialist position, for which Plaintiff was qualified, but Defendant never interviewed him. (*Id.*) Human resources sent an email with a hyperlink to the application for the business IT specialist position to "every employee at" the DOE's DIIT with the purpose of personally harassing Plaintiff and encouraging the DIIT employees to apply to the position. (*Id.*) On October 15, 2014, Plaintiff also applied for a senior program manager position. (*Id.*) Plaintiff was interviewed but later learned that he was not selected for the position. (*Id.*) The position was subsequently re-advertised. (*Id.* at 23.)

On December 21, 2014, Plaintiff applied for positions as a deputy chief and chief technology officer, but did not receive a response to either of his applications. (*Id.* at 24.) According to Plaintiff, he was qualified for each of these positions, and Defendant did not select him because of his "race and national origin." (*Id.*) On January 19, 2015, Plaintiff emailed Ms. Vazquez, the executive director of systems and improvement, and told her that his race and national origin were the "underlying reasons for his not being considered" for the various positions. (*Id.*)

### c. Other allegations

Plaintiff makes several other allegations in support of his claims. According to Plaintiff, he has "never received a merit raise" and has "only received raises due to his longevity in employment." (*Id.* at 13.)

In 1994, the DOE's Bureau of Telecommunications ("BOT") merged with DIIT. (*Id.* at 16.) Prior to the merger, the BOT predominantly consisted of black employees and the DIIT predominantly consisted of white employees. (*Id.*) At the time of the merger, Plaintiff worked in the BOT. (*Id.*) After the merger, the former DIIT employees, received "significantly higher" salaries than the former BOT employees, notwithstanding that everyone had "similar titles and

positions" and "performed substantially similar work." (*Id.*) The former BOT employees "were never informed of this discrepancy and were not provided salary increase[s]." (*Id.*) The pay discrepancy remains the same today. (*Id.*)

According to Plaintiff, he was treated unfairly by a supervisor, Rick Scott, who "cursed him" in front of associates whom Plaintiff managed. (*Id.* at 17.) Scott later apologized to Plaintiff in a letter copying Delaney.[4] (*Id.* at 17.) Plaintiff complained about Scott in a September 5, 1997 meeting with Scott and Delaney. (*Id.* at 17–18.) Delaney told Plaintiff, "[w]e don't have to treat you fairly. This idea of fairness is your own opinion." (*Id.* at 18.) This meeting led to a labor-management meeting coordinated by Plaintiff's union representative. (*Id.*) Plaintiff alleges that "Master HR Strategist" Robert Satriano "mask[ed] the truth," "played everyone," and issued an opinion that "condoned his officers' conduct." (*Id.*) Plaintiff also appears to allege that on an unidentified occasion, Scott said "[o]ne of us has to leave, and it's not going to be me. So . . . I can help you get a job in another division, if you want." (*Id.* at 9.)

Around 1998, Plaintiff asked to review his personnel files and found "many documents that portrayed him negatively," and "did not bear his signature."[5] (*Id.* at 18–19.) In 2000, Plaintiff obtained a Master's Degree in educational technology, but Defendant did not compensate him "for this achievement." (*Id.* at 19.) Defendant also did not compensate Plaintiff after he obtained a certification in "A+ computer repair" in 2011. (*Id.* at 20.) Plaintiff has been

---

[4] While Plaintiff does not state the date of the incident with Scott, Plaintiff attaches a memorandum to his opposition to the motion to dismiss that includes an apology from Scott to Plaintiff copying Delaney regarding "inappropriate statements that I made during our meeting of Friday, March 21, 1997 with Cross County." (Pl. Mem. in Opp'n to Def. Mot. to Dismiss ("Pl. Opp'n") 80, Docket Entry No. 46.)

[5] It is unclear whether Plaintiff is alleging that these documents were false or improperly generated based on the absence of his signature.

"repeatedly harassed" for constantly having to explain his "heavy accent" and his "never-to-be-good-enough" verbal and writing skills. (*Id*. at 6.)

On March 18, 2014, Plaintiff was denied access to a DOE school and a "vendor" was "rude" and "hostile" toward him when he questioned the denial of access. (*Id*. at 21.) Plaintiff reported the incident to his supervisor Campanella approximately two days later, on or about March 20, 2014. (*Id*.) Plaintiff explained to Campanella that vendors "do not respect him because of how the office as a whole treats him and because he has not been promoted despite his excellent work." (*Id*.) Plaintiff alleges that "[t]here was a clear implication that [he] was referencing his race and national origin." (*Id*.) Campanella "reacted by asking if [Plaintiff] wanted his job," and Plaintiff explained to Campanella that Campanella did not understand that Plaintiff had been "blacklisted and treated disparately within the office." (*Id*.) Campanella attempted to end the conversation and leave the room and "began shouting at [Plaintiff] that he was not going to talk to him anymore while wagging his fingers in [Plaintiff's] face." (*Id*. at 21–22.) Plaintiff was embarrassed by this incident, which his coworkers witnessed. (*Id*. at 22.) Following the incident with Campanella, on March 25, 2014, Plaintiff met with Anaya, the HR representative, and she "refused to discuss issues relating to [Plaintiff's] continued attempts to be treated fairly." (*Id*.)

On April 22, 2014, Defendant gave Plaintiff a "counseling letter" in "retaliat[ion] against him for [making] complaints" that included "a fabricated allegation that [Plaintiff] had become angry" and that Campanella "was frightened for his safety," (the "April 22 Letter").[6] (*Id*.)

_____

[6] Plaintiff attaches the April 22 Letter to his opposition to the motion to dismiss. (Pl. Opp'n 66–67.) In relevant part, the letter includes a description of the altercation between Campanella and Plaintiff and concludes that Plaintiff's "recurrence of similar incidents may result to [sic] further disciplinary action." (Pl. Opp'n 67.) Plaintiff also attaches to his

Plaintiff alleges that this accusation "directly relates to [Plaintiff's] race" because Anaya "chose to use the stereotype of an angry and violent Black man to avoid facing [Plaintiff's] valid concerns about being treated disparately in the workplace" and that he is "unable to ascertain what he did to occasion this letter." (*Id*.) The letter was the "first step in constructively disciplin[ing] an employee," and as a result, Defendant placed Plaintiff on "probation – subject to dismissal." (*Id*.)

Plaintiff alleges several other incidents of discrimination. According to Plaintiff, Campanella harassed Plaintiff on May 2, 2014, by removing two computers Plaintiff had stored under his desk. (*Id*.) In or around October 2014, Campanella asked a coworker, in reference to another black DOE employee, "'why this Black guy' was making so much money." (*Id*. at 23.) On November 20, 2014, Plaintiff had a meeting with Anaya, Spencer, Vazquez and his union representative, Dana Tilghman, who Plaintiff states "raised the issues related to unfair treatment." (*Id*.) The meeting concluded "without [Plaintiff] having the opportunity to voice his concerns." (*Id*. at 24.) In or around February 1, 2015, Plaintiff was not invited to two staff meetings.[7] (*Id*. at 7, 33.) On April 16, 2015, Tom Kambouras, the Chief Technology Officer, labeled Plaintiff a "visibly angry" man whose "behavior was unprofessional and offensive." (*Id*. at 7.) Plaintiff alleges that Kambouras "promulgated this narrative to all his deputies – three

---

opposition papers an email with the subject line "RE: Disciplinary Conference Resolution," dated April 24, 2014, from Anaya to Plaintiff, copying Campanella, among others. The April 24 email appears to reference the April 22 Letter. (Pl. Opp'n 78.) Anaya states "Campanella sent you the documentation on Tuesday. . . . It will NOT be placed in your personnel file at this time. Only if there are further incidences in an 18-month period may it be placed in your file. We are hopeful that will not be the case." (*Id*.)

[7] Plaintiff alleges that he was not invited to a staff meeting on or around February 1, 2015 but also attached to the Amended Complaint an exchange of emails relating to his exclusion from a "Roadshow" meeting in or around April of 2015. (Am. Compl. 33.)

layers down in the hierarchy of the Division." (*Id*.)

Plaintiff made two formal employment complaints. Plaintiff alleges in his opposition to the motion to dismiss that he filed a formal complaint with the New York State Office of Equal Opportunity ("OEO") on January 2, 2014 and that he was retaliated against three months later in March or April of 2014, when he received the first "disciplinary notice" of his career. (Pl. Opp'n 6, 12–13, 19, 63–64.) On January 13, 2015, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). (*Id*. at 46–52.) Plaintiff filed an amendment to his charge on February 20, 2015. (*Id*. at 35–45.) On December 16, 2015, the EEOC issued Plaintiff a right-to-sue letter. (*Id*. at 54.)

## II. Discussion

### a. Standards of review

#### i. Motion to dismiss

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Concord Assoc's, L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St.*

*Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976)); *see also Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (holding that courts must liberally construe papers submitted by *pro se* litigants "to make the strongest arguments they suggest"); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

### ii. Employment discrimination

In analyzing whether a plaintiff has sufficiently alleged an employment discrimination claim, the Court must consider the pleading standard discussed above and the three-stage, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)) (discussing burden-shifting); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (citing *Texas Dep't of Cty. Affairs v. Burdine*, 450 U.S. 248, 253–55 (1981)). Under that framework, a plaintiff must first establish a prima facie case of discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 506; *see also Campbell v. N.Y.C. Transit Auth.*, 662 F. App'x 571, 59 (2d Cir. 2016); *Kirkland v. Cablevision Sys.*, 760 F. 3d 223, 225 (2d Cir. 2014); *Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11 (2d Cir. 2013). A plaintiff's burden at this stage is "minimal."

*Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 506). If a plaintiff meets her burden at this stage, a "temporary presumption" of discrimination arises, and the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 307, 311). If the defendant-employer articulates such a reason, the burden shifts back to the plaintiff-employee to show that the defendant-employer's reason was pretext. *Id.* at 83.

At the pleading stage, a plaintiff does not need to prove discrimination or even allege facts establishing every element of the *McDonnell Douglas* prima facie case, but the facts alleged must give "plausible support to the reduced requirements" of the prima facie case. *Littlejohn*, 795 F.3d at 311; *see Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) (discussing *McDonnell Douglas* burden at the pleading stage in the context of Title VII cases); *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 767 (2d Cir. 2015); *Vega*, 801 F.3d at 84; *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (second alteration in original) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002))). Thus, a plaintiff need only plead facts sufficient to give "plausible support" to the plaintiff's "minimal" initial burden, which is governed by the statute under which she brings her claims. *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 312); *see also Doe*, 831 F.3d at 56.

### b. Title VII claims

Plaintiff asserts Title VII claims for failure to promote, other discrete acts of discrimination, disparate pay, constructive discharge, hostile work environment and retaliation.

The Court first considers whether Plaintiff's pre-March 19, 2014 discrimination claims are time-barred.

###### i. Plaintiff's pre-March 19, 2014 discrimination claims are time-barred

Before filing a Title VII action in federal court, a plaintiff must timely file charges of employment discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1); *Patterson v. Cty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004); *see also Staten v. City of New York*, 653 F. App'x 78, 80 (2d Cir. 2016) (noting that prior to filing a Title VII claim in a New York federal court, "[a] Title VII plaintiff must file a charge with the EEOC within 300 days 'after the alleged unlawful employment practice occurred.'" (citing 42 U.S.C. § 2000e-5(e)(1))); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (citing 42 U.S.C. § 2000e-5(e)(1)); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) ("Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency."). In New York, a federal employment discrimination claim is time-barred unless the plaintiff first files an EEOC charge within 300 days of the alleged discrimination. *Vega*, 801 F.3d at 79 (quoting 42 U.S.C. § 2000e-5(e)(1)); *McGullam*, 609 F.3d at 75. This requirement is analogous to a statute of limitations. *Vega*, 801 F.3d at 79; *Patterson*, 375 F.3d at 220 (dismissing as untimely claims based on conduct that occurred more than 300 days prior to the filing of EEOC charge).

The statute of limitations may be extended under the continuing violation exception, equitable tolling, equitable estoppel or waiver. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 385 (2d Cir. 2015) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that . . . is subject to waiver, estoppel, and equitable tolling." (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S.

385, 393 (1982))); *Briones v. Runyon*, 101 F.3d 287, 290 (2d Cir. 1996) ("[T]he statutory requirement for filing is analogous to a statute of limitations and is, therefore, considered subject to waiver, estoppel, and equitable tolling." (citation omitted)).

Here, Plaintiff filed his EEOC charge on January 13, 2015, (Am. Compl. 4), making March 19, 2014 the earliest date Plaintiff could allege conduct in violation of Title VII. Accordingly, Plaintiff's Title VII discrimination claims based on acts occurring prior to March 19, 2014 are time-barred.[8]  *See Patterson*, 375 F.3d at 220.  Plaintiff argues that his pre-March 19, 2014 claims are not time barred because of the continuing violation exception, equitable tolling, equitable estoppel and waiver.  (Pl. Opp'n 13–16.)[9]  The Court addresses each argument below.

### 1.  Continuing violation exception

Plaintiff argues that the Amended Complaint shows: "(1) the existence of serial and systemic continuing series of violations, and (2) the continuation of the violation into the limitations period."  (Pl. Opp'n 15.)  Defendant argues that Plaintiff's failure-to-promote claims

---

[8]  However, as discussed below, all of Plaintiff's allegations may be considered as part of his hostile work environment claim, so long as the acts "are part of the same unlawful employment practice" as the alleged violations after March 19, 2014.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) ("A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.");  *Patterson v. Cty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) ("A claim of hostile work environment is timely so long as one act contributing to the claim occurred within the statutory period; if it did, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

[9]  Plaintiff submitted two memoranda of law in opposition to Defendant's motion to dismiss.  (Docket Entry Nos. 44, 46.)  In a letter accompanying Plaintiff's second memorandum of law, Plaintiff requested that the Court only consider the second memorandum of law.  (Pl. Letter dated Jan. 23, 2017, Docket Entry No. 45.)  Accordingly, the Court only considers Plaintiff's second memorandum of law filed on January 23, 2017.

are based on discrete acts that do not fall within the continuing violation exception.  (Def. Mem. 3–4.)

Under the continuing violation exception, if a plaintiff files a timely EEOC charge "as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)).  The exception, however, presumes that a plaintiff challenged at least one act related to the allegedly discriminatory policy within the 300-day limitations period.  *See Patterson*, 375 F.3d at 220 ("To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period."); *Bonner v. Guccione*, 178 F.3d 581, 584 (2d Cir. 1999) (finding that conduct outside the 300-day time period is actionable "only if [the plaintiff] could demonstrate that she was subject to a continuous policy and practice of discrimination, and that one act in furtherance of the policy and practice fell within the 300-day period" (citing *Acha v. Beame*, 570 F.2d 57, 65 (2d Cir. 1978)); *Predun v. Shoreham-Wading River Sch. Dist.*, 489 F. Supp. 2d 223, 228 (E.D.N.Y. 2007) ("Essential to application of the continuing violations theory is the allegation of at least one discrete act of discrimination within the 300 day period.").

However, the continuing violation doctrine will not apply to "discrete acts" of discrimination, even if they are "related to acts alleged in timely filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Chin*, 685 F.3d at 155–57 (discussing *Morgan*).  Such discrete acts include termination, disparate disciplining, negative performance evaluations and denial of promotions.  *See Morgan*, 536 U.S. at 114; *Valtchev v.*

*City of New York*, 400 F. App'x 586, 589 (2d Cir. 2010) (affirming the district court's finding that the plaintiff's negative evaluations and disciplinary proceedings were discrete acts that did not trigger the continuing violation exception); *Pietri*, 936 F. Supp. 2d at 134 (explaining that denial of promotions, disparate disciplinary action and denial of transfer opportunities "are all discrete acts of discrimination and each incident 'constitutes a separate actionable unlawful employment practice'" (additional internal quotation marks omitted) (citing *Morgan*, 536 U.S. at 114)). If these discrete acts "fall outside the limitations period, [they] cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin*, 685 F.3d at 157.

Here, Plaintiff's untimely failure-to-promote allegations are not saved by the continuing violation doctrine because it is well-established that failure to promote is a discrete act. *See Chin*, 685 F.3d at 157 ("Discrete acts [such as termination, failure to promote, denial of transfer, or refusal to hire], which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period.").

Thus, Plaintiff's untimely claims do not fall within the continuing violation exception.

### 2. Equitable tolling, equitable estoppel and waiver

Plaintiff also argues that he is entitled to waiver, equitable estoppel and equitable tolling. (Pl. Opp'n 15–16.)

Plaintiff argues that his claims are timely under the doctrines of equitable tolling, equitable estoppel and waiver because: (1) his union "misled [him] and deprived [him] of sound advice" by making a "passing mention" that the union would file a grievance even though the union instead gave him the "run-around" and later declined to file the grievance, explaining that

they do not handle EEOC cases, (Pl. Opp'n 15–16);[10] and (2) "Defendant's malfeasance caused [Plaintiff] so much stress that [it] affected his family life" and he also suffered "situational depression." (Pl. Opp'n 15.) Because Plaintiff is proceeding *pro se*, the Court considers the allegations despite the fact that they were raised for the first time in Plaintiff's opposition to the motion to dismiss.[11]

## A. Equitable tolling

Equitable tolling may apply where, among other reasons, the plaintiff "was unaware of his or her cause of action due to misleading conduct of the defendant." *Grys v. ERIndustrial Sales, Inc.*, 553 F. App'x 61, 62 (2d Cir. 2014) (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)). "Equitable tolling is also proper where the plaintiff has shown that she: '(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" *Id.* (quoting *Zerilli-Edelglass*, 333 F.3d at 80); *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010). Equitable tolling is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Baroor v. N.Y.C. Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010) (quoting *Zerilli-Edelglass*, 333 F.3d at 80);

---

[10] Plaintiff also explains that his former counsel, Monte M. Chandler, Esq., was referred to him by his union and that Chandler was "tied by conflicts of interest at Plaintiff's peril." (Pl. Opp'n 16.) Plaintiff filed the instant matter proceeding *pro se*, (*see* Compl.; Docket Entry dated Feb. 25, 2016 (designating docket as *pro se* filing)), therefore any difficulties Plaintiff had with his prior counsel are not a basis to toll his time to file the EEOC charge.

[11] *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a [12(b)(6)] motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Small v. Ortlieb*, No. 10-CV-1616, 2012 WL 3229298, at *1 (E.D.N.Y. Aug. 6, 2012) ("[A]s part of this Court's duty to construe pro se pleadings liberally, the Court will take account of all the facts contained in both [plaintiff's] amended complaint and his opposition papers." (citation omitted).

*Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007) ("Equitable tolling applies only in the rare and exceptional circumstance." (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000))). Where a plaintiff "is unaware that he has a cause of action because of defendant's fraudulent acts or concealment," equitable tolling will apply. *Bennett v. U.S. Lines, Inc.*, 64 F.3d 62, 66 (2d Cir. 1995). The Second Circuit has recognized that "mental illness can warrant equitable tolling of a statute of limitations," including in Title VII cases. *Bolarinwa*, 593 F.3d at 232 (citing *Brown v. Parkchester S. Condo.*, 287 F.3d 58, 60 (2d Cir. 2002)); *see also Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

Here, the Amended Complaint does not include any allegations that Plaintiff was unaware of the basis for his EEOC charge such that he was prevented from filing a timely charge or that Defendant's conduct prevented Plaintiff from determining that he had a cause of action. *See Ellul v. Congr. Of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014) (denying equitable tolling where plaintiffs did not allege that they were prevented from discovering their cause of action). The conclusory allegations in Plaintiff's opposition to the motion to dismiss that he had to "exhaust the collective bargaining remediation options before seeking outside assistance . . . [s]o thought the Plaintiff," and that the union made a "passing mention" that it would file a grievance on his behalf, which "never happened," (Pl. Opp'n 16), are insufficient to demonstrate that Plaintiff is entitled to equitable tolling. As an initial matter, the pendency of a grievance does not toll the running of a statute of limitations, *Cherry v. City of New York*, 381 F. App'x 57, 59 (2d Cir. 2010) (citing *Del. State Coll. v. Ricks,* 449 U.S. 250, 261 (1980)), and it is unclear that misconduct by a third-party, such as a union, is a basis for equitable tolling, *see Edner v. NYCTA–MTA*, 134 F. Supp. 3d 657, 665 (E.D.N.Y. 2015) ("[W]here a non-defendant third party engages in such fraud or misleading conduct, the doctrine's application is less clear." (citing

*Hannah v. Wal-Mart Stores, Inc.*, 969 F. Supp. 2d 229, 233 (D. Conn. 2013))); *Hannah*, 969 F. Supp. 2d at 233 (noting that "[t]here is some debate within the Second Circuit as to whether misleading conduct must have been at the hands of the defendant or whether misconduct by a third party could make equitable tolling appropriate").

In any event, Plaintiff's allegations are too conclusory for the Court to find that his situation is extraordinary and merits equitable tolling. Plaintiff fails to provide any details, such as the timing of the alleged misrepresentation or the particular union representatives who made the allegedly misleading statements, from which the Court can infer that in the absence of the misrepresentation, Plaintiff would have filed a timely EEOC charge. *See, e.g.*, *Edner*, 134 F. Supp. 3d at 666 (dismissing the plaintiff's untimely claims and his argument for equitable tolling based on alleged union misconduct because the plaintiff did not allege any "facts about misleading interactions with the union — such as who misled [the plaintiff], how [the plaintiff] was misled, or when this occurred"); *see also Lomako v. N.Y. Inst. of Tech.*, 440 F. App'x 1, 3 (2d Cir. 2011) (dismissing equitable tolling argument raised for the first time on appeal of a 12(b)(6) dismissal because "[the plaintiff's] assertion that his union and the defendants intentionally misled him for the purpose of preventing him from filing a complaint with the New York State Division of Human Rights or [the] EEOC is vague and conclusory and does not suggest a plausible basis for equitable tolling"); *Cherry*, 381 F. App'x at 59 ("Appellant's only argument in favor of equitable tolling is that he was misled by his union and/or DOC. . . . [But] he has not asserted, much less established, that extraordinary circumstances justify application of the equitable tolling doctrine. Moreover, nothing in the record supports Appellant's claim of a conspiracy or shows that there existed exceptional circumstances sufficient to excuse his delay." (citations omitted)).

As to Plaintiff's mental impairment argument, Plaintiff generically alleges that he suffered from "stress" and "situational depression." (Pl. Opp'n 15). These allegations are insufficient, particularly without any facts as to why or how his alleged mental impairments prevented him from timely filing his claims. *See, e.g.*, *Serrano v. USA United Transit Bus Inc*., No. 9-CV-2719, 2009 WL 3698395, at *7 (E.D.N.Y. Nov. 3, 2009) ("Plaintiffs' assertion that [he] suffered from post-traumatic stress disorder and depression does not provide a sufficient basis for equitable tolling, because plaintiffs simply do not explain how the illness stood in the way of [their] ability to comply with the limitations period."); *Gannon v. Continuum Health Partners, Inc*., No. 6-CV-5133, 2007 WL 2040579, at *5 (S.D.N.Y. July 12, 2007) (finding equitable tolling was not appropriate where "counsel has not indicated how plaintiff's depression adversely affects her capacity to function" and accordingly dismissing the time-barred claims); *cf. Pietri v. N.Y.S. Office of Court Admin*., 936 F. Supp. 2d 120, 136–37 (E.D.N.Y. 2013) (finding that equitable tolling based on mental incapacity was insufficiently pled and allowing the plaintiff leave to replead where he alleged that he was being treated by a psychiatrist for "severe depression, attention deficit disorder, post-traumatic stress disorder and insomnia").

## B. Equitable estoppel

The Court summarily dismisses Plaintiff's equitable estoppel argument because it lacks factual support. "[E]quitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit." *Ellul*, 774 F.3d at 802 ("In order to invoke equitable estoppel, a plaintiff must show that: "(1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." (citations omitted)); *see, e.g.*, *Dillman v. Combustion Eng'g, Inc*., 784 F.2d 57, 61

(2d Cir. 1986) ("The doctrine properly may be invoked in a case in which the employer has misrepresented the length of the limitations period or in some other way has "lulled the plaintiff into believing that it was not necessary for him to commence litigation." (citation and internal quotation marks omitted)). Neither the Amended Complaint nor opposition to the motion to dismiss includes allegations that Defendant prevented Plaintiff from filing a timely EEOC charge. *See Ellul*, 774 F.3d at 802 (dismissing untimely claims and rejecting equitable estoppel argument as plaintiffs did not allege that the defendants misrepresented facts that caused them to delay bringing the lawsuit). Accordingly, Plaintiff is not entitled to benefit from equitable estoppel.

### C. Waiver

The Court also summarily dismisses Plaintiff's waiver argument. Defendant asserts the statute-of-limitations defense in its memorandum of law in support of its motion to dismiss, (Def. 5–7), and, accordingly, the Court finds no basis to conclude that Defendant waived the defense. *See* Fed. R. Civ. P. 8(c); *cf. Sec. & Exchange Comm'n v. Amerindo Inv. Advisors*, 639 F. App'x 752, 754 (2d Cir. 2016) (finding the defendant waived the statute of limitations defense by failing to raise it in its motion to dismiss).

Thus, Plaintiff's untimely claims are not saved by equitable tolling, equitable estoppel or waiver.

### ii. Plaintiff fails to state a discrimination claim as to the removal of computers, the April 22 Letter and exclusion from two staff meetings

Defendant does not move to dismiss Plaintiff's failure-to-promote claims based on the alleged conduct that occurred after March 19, 2014. (Def. Mem. 2.) However, Defendant moves to dismiss Plaintiff's discrimination claims that are not based on failure-to-promote allegations. (*Id.* 8–10.) Defendant specifically moves to dismiss the claims that Defendant discriminated

against Plaintiff by (1) failing to invite Plaintiff to two staff meetings, (Am. Compl. 7, 33); (2) removing two computers from under Plaintiff's desk, (*id*. at 22); and (3) issuing the April 22 Letter that included fabricated allegations against Plaintiff "directly related to [Plaintiff's] race" and placed Plaintiff "on probation – subject to dismissal," (*id.*). Defendant argues that these allegations fail to state a discrimination claim because Plaintiff fails to allege an adverse employment action or an inference of discrimination based on Plaintiff's race, color or ethnicity.[12] (Def. Mem. 8–10.) Liberally construing Plaintiff's allegations, he fails to allege any adverse employment action because he does not demonstrate that any of the actions had a material effect on the terms and conditions of his employment.

Title VII requires that "a plaintiff must first establish a *prima facie* case of discrimination by showing that: '(1) []he is a member of a protected class; (2) []he is qualified for h[is] position; (3) []he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Vega*, 801 F.3d at 83 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). "[A]bsent direct evidence of discrimination," to survive a motion to dismiss a claim of employment discrimination in violation of Title VII, a plaintiff must allege facts that plausibly support a finding that he suffered an adverse employment action and "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311; *see Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 70 (S.D.N.Y. 2015).

An "adverse employment action" means "a materially adverse change in the terms and conditions of employment" and includes, among other things, termination, demotion or a failure

---

[12] Defendant does not dispute that Plaintiff has adequately alleged that he is a member of a protected class on the basis of his Haitian national origin and by virtue of his "black race" and "dark skin color." (Def. Mem. 2 (citing Am. Compl. 8).)

to promote.  *See Robinson v. Dibble*, 613 F. App'x 9, 12 (2d Cir. 2015) (noting that plaintiff's termination constituted an "adverse employment action"); *Levitant v. City of N.Y. Human Res. Admin.*, 558 F. App'x 26, 29 (2d Cir. 2014) ("It is well-established that a failure to promote is an adverse employment action." (citing *Tregelia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002))); *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (holding that an adverse employment action includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." (citations and internal quotation marks omitted)).  However, conduct that is a "mere inconvenience" does not rise to the level of an adverse employment action.  *Sanders*, 361 F.3d at 755.

### 1. Plaintiff's exclusion from staff meetings and the removal of computers from under Plaintiff's desk

Plaintiff does not allege how his employment was materially altered as a result of his exclusion from the staff meetings and therefore has not alleged an adverse action based on the exclusion.  *See, e.g., Littlejohn*, 795 F.3d at 312 n.10 (finding the defendant's decision to exclude the plaintiff from meetings involving decision-making for a merger did not constitute an adverse action because it did not "significantly diminish" the plaintiff's responsibilities); *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 22 (2d Cir. 2015) (holding that exclusion from at least two staff meetings and at least five other meetings, among other things, did not constitute an adverse employment action); *Moore v. Verizon*, No. 13-CV-6467, 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016) (finding that exclusion from team meetings, among other allegations, did not support an inference of adverse employment action for purposes of, *inter alia*, an NYSHRL age discrimination claim).  Likewise, Plaintiff does not allege how Campanella's removal of the two computers stored under Plaintiff's desk had a material impact on his work.  *See, e.g., Vale v.*

*Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 435 (E.D.N.Y. 2015) ("[T]he allegations regarding the [denial of] 'post-its' and the office shift, even if true, do not rise above a level of 'mere inconvenience'" for purposes of an ADA claim.).

### 2. The April 22 Letter which resulted in Plaintiff's "probation– subject to dismissal"

Plaintiff's allegation that the April 22 Letter he received resulted in his "probation – subject to dismissal," (Am. Compl. 22), fails to qualify as an adverse employment action because of the conclusory nature of Plaintiff's allegations. While a period of probation might constitute an adverse action,[13] Plaintiff fails to allege any facts to show that the April 22 Letter resulted in his probation, and if so, the terms of the probation or its effect, if any, on his employment. *See, e.g.*, *Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011) (holding, in the context of an ADA claim, that "[w]hile negative employment evaluation letters, or reprimands may be considered adverse employment actions, here there was no proof that this evaluation had any effect on the terms and conditions of [the plaintiff's] employment" (citations and internal quotation marks omitted)). Indeed, Plaintiff does not allege that the letter led Defendant to deny any of his requests for promotions. Rather, the April 22 Letter only warned Plaintiff that a future infraction could result in "further disciplinary action." (Pl. Opp'n 66.) Moreover, the email from Anaya, which informed Plaintiff that the letter would only be placed in his file upon a second infraction within eighteen months, undermines Plaintiff's argument that the letter had any

---

[13] *See, e.g.*, *Abraham v. Potter*, 494 F. Supp. 2d 141, 147–48 (D. Conn. 2007) (finding that "[a] seven-day 'paper' suspension," which was the equivalent degree of suspension without pay, was an adverse employment action for purposes of a Title VII discrimination case and that the period between the "paper suspension" and ultimate resolution of the employment discipline issue was a "disciplinary probation period" that might also qualify as an adverse employment action); *Forbes v. State Univ. of New York at Stony Brook*, 259 F. Supp. 2d 227, 235 (E.D.N.Y. 2003) (finding allegations that the plaintiff was placed on probation and constructively discharged stated a Title VII discrimination claim).

probationary effect.  (Pl. Opp'n 78.)  Plaintiff does not allege a second infraction that led

Defendant to include the letter in his file or otherwise use it adversely in his employment.

Accordingly, because a letter-to-file absent material adverse employment consequences is not an

adverse employment action, the April 22 Letter implementing a time period in which a second

infraction would result in the filing of the April 22 Letter in Plaintiff's records, similarly, is not

an adverse employment action.  *See, e.g.*, *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76,

86 (2d Cir. 2001) (finding "notice of discipline" and "counseling memo" insufficient to

constitute adverse action when the plaintiff did "not describe its effect or ramifications, how or

why the effect would be serious, [or] whether it went to any file"), *abrogated on other grounds*

*by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *see, e.g.*, *John v. Dep't of Educ.*

*of the City of New York*, No. 15-CV-2407, 2016 WL 4539209, at *3 n.2 (E.D.N.Y. Aug. 30,

2016) (dismissing claims for failure to allege an adverse employment action where the plaintiff

claimed, among other things, that she had been the subject of "biased memos, letters to the file

and discipline").[14]

    Accordingly, Plaintiff fails to state a discrimination claim based on the alleged discrete

acts.

---

[14]  Moreover, Plaintiff fails to allege facts giving rise to a "minimal inference" of
discriminatory motive for any of the acts.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801
F.3d 72, 87 (2d Cir. 2015) (holding that at the pleadings stage, "a plaintiff must allege that the
employer took adverse action against her at least in part for a discriminatory reason, and she may
do so by alleging facts that directly show discrimination or facts that indirectly show
discrimination by giving rise to a plausible inference of discrimination" (citing *Littlejohn v. City
of New York*, 795 F.3d 297, 310 (2d Cir. 2015))).

### iii. Plaintiff fails to state a disparate-pay discrimination claim

Neither party addresses Plaintiff's allegations that Defendant pays him less as a black DIIT employee than it pays white DIIT employees who hold "similar titles and positions" and "perform[] substantially similar work." (Am. Compl. 16.) The Court construes these allegations as an attempt to state a disparate-pay discrimination claim. Specifically, Plaintiff alleges that in 1994, when he was working for the BOT, the BOT and the DIIT merged. (*Id.*) The BOT predominately consisted of black employees and the DIIT predominantly consisted of white employees. (*Id.*) After the merger, the DIIT employees received "significantly higher" salaries than the former BOT employees, including Plaintiff, even though everyone had "similar titles and positions" and "performed substantially similar work." (*Id.*) Plaintiff alleges that the former BOT employees were "not provided salary increase[s]" and that the pay discrepancy remains the same today. (*Id.*)

"[T]o establish a *prima facie* case of discriminatory disparate pay under Title VII, a plaintiff must show: (1) that he was a member of a protected class; (2) that he was paid less than similarly situated non-members of his protected class; and (3) evidence of discriminatory animus." *Quarless v. Bronx-Lebanon Hosp. Ctr.*, 228 F. Supp. 2d 377, 383 (S.D.N.Y. 2002) (citing *Belfi v. Prendergast*, 191 F.3d 129, 140 (2d Cir. 1999)), *aff'd*, 75 F. App'x 846 (2d Cir. 2003).

Plaintiff fails to plausibly allege elements two and three because he does not point to any facts supporting his allegation that he is paid less than white DIIT employees, other than stating his own base salary of $44,000, nor does he provide any detail about the titles or the responsibilities of the individuals that he claims have comparable duties but receive greater compensation. *See, e.g.*, *Reid v. Time Warner Cable*, No. 14-CV-3241, 2016 WL 743394, at

*2, *5 (E.D.N.Y. Feb. 22, 2016) (dismissing a *pro se* plaintiff's Title VII disparate-pay claims for failure to allege facts, such as "the timeframe when he allegedly was paid unequally, the nature and extent of the pay disparity, or the identity and national origin of those employees who allegedly received better pay" in support of his assertion that he was paid less than "non-Jamaican employees in the same position even though he was one of the most qualified sales representatives"); *Williams v. N.Y.C. Health & Hosp. Corp.*, No. 08-CV-4132, 2010 WL 2836356, at *4 (E.D.N.Y. July 16, 2010) (finding the plaintiff's allegations that, "[u]pon information and belief, males got paid when they were out sick but females were not" without any supporting facts showing that males were indeed treated differently or that plaintiff herself did not receive wages while on sick leave did not provide sufficient facts to state a claim for disparate pay under Title VII).

Accordingly, Plaintiff does not state a plausible claim for disparate pay. To the extent Plaintiff seeks to bring such a claim, he is granted leave to amend his complaint to include facts sufficient to support the elements of a disparate-pay claim.

### iv. Plaintiff fails to state a constructive discharge claim

Plaintiff also alleges constructive discharge as a basis for his discrimination claims. (Am. Compl. 3, 8.)

To state a claim for constructive discharge under Title VII, a plaintiff must allege that his "employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir. 2003); *see also Andersen v. Rochester City Sch. Dist.,* 481 F. App'x 628, 632 (2d Cir. 2012). The Supreme Court recently explained that a constructive discharge claim consists of "two basic elements." *Green v. Brennan*, 578 U.S. ---, ---, 136 S. Ct. 1769, 1777 (2016). First, a plaintiff

must prove "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign." *Id.* (citation omitted). Second, "he must also show that he actually resigned." *Green*, 136 S. Ct. at 1777 (citation omitted).

Here, the Amended Complaint does not contain an allegation that Plaintiff is no longer employed by the DOE, and indeed, Plaintiff alleges that he "remains in his job." (Am. Compl. 11); *see, e.g.*, *Brown v. N.Y.S. Dep't of Corr. Servs.*, 583 F. Supp. 2d 404, 413 (W.D.N.Y. 2008) (finding that employee could not assert a constructive discharge claim because he remained employed). Because Plaintiff is still employed by Defendant, the Court grants Defendant's motion to dismiss the constructive discharge claim.

Accordingly, Plaintiff fails to state a constructive discharge claim.

### v. **Plaintiff fails to state a hostile work environment claim**

Plaintiff alleges that he has "been mistreated and targeted as one who had never been and/or will never be promoted or given a merit raise in his twenty four plus-year career" working for Defendant. (*See generally* Am. Compl.; *id.* at 8.) Defendant argues that Plaintiff fails to allege a hostile work environment claim because Plaintiff fails to plead that any of Defendant's actions were based on Plaintiff's race or ethnicity. (Def. Mem. 12, 14.) Defendant also argues that even if based on Plaintiff's race or ethnicity, the conduct was not sufficiently severe or pervasive to state a hostile work environment claim. (*Id.* at 10–13.)

To plead a hostile work environment claim in violation of Title VII, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "This standard has both objective and subjective

components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)); *Staten*, 653 F. App'x at 80 ("We consider factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance.'" (alteration in original) (quoting *Harris*, 510 U.S. 17)).

Hostile work environment claims are "different in kind from discrete acts" since "[t]heir very nature involves repeated conduct," and "[t]he 'unlawful employment practice' therefore cannot be said to occur on any particular day." *McGullam*, 609 F.3d at 75. "Accordingly, consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* (citation and internal quotation marks omitted). However, actions outside the limitations period must be sufficiently similar in kind to those within the relevant time period such that the events constitute the "same" hostile work environment. *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014) (holding that even facially neutral incidents must be considered in determining whether a hostile work environment exists under Title VII); *McGullam*, 609 F.3d at 77; *see also Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002) ("[I]ncidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination — for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not.").

Here, liberally construing Plaintiff's allegations and considering them in the aggregate,

including his otherwise time-barred allegations, Plaintiff does not state a hostile work environment claim because his allegations are insufficient to allege animus based on his race, color or ethnicity. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."). Plaintiff alleges that two different DOE supervisors publicly yelled at him on several occasions in front of other employees, which caused him embarrassment, (Am. Compl. 7, 17, 21–22); that a supervisor removed two computers from under his desk for the purpose of harassing Plaintiff, (*id.* at 22); that his file contained negative reviews that he did not learn of until he gained access to his file, (*id.* at 18–19); that he was harassed because he repeatedly had to explain his "heavy accent" and "never-to-be-good-enough" writing and verbal skills, (*id.* at 6); that a supervisor did not invite him to two staff meetings, (*id.* at 7); that the April 22 Letter resulted in his placement on probation, (*id.* at 22); that in referencing another black DOE employee, Campanella asked a coworker "'why this Black guy' was making so much money," (*id.* at 23); and that Plaintiff was not promoted and was denied new positions, (*see generally id.*). With the exception of the comments regarding Plaintiff's accent and the isolated comment referring to another black DOE employee,[15] the acts do not include any explicit or implicit reference to race, color or ethnicity

---

[15] Defendant argues that the Court should not consider the allegation that Campanella asked a coworker "'why this Black guy' was making so much money" in reference to another black DOE employee because the statement was not made about Plaintiff or in Plaintiff's presence. (Def. Mem. 12–13.) The Court considers the allegation because "the mere fact that the plaintiff was not present when a racially derogatory comment was made will not render that comment irrelevant to his hostile work environment claim." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 71 (2d Cir. 2000) (alteration and internal quotation marks omitted) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997)). Indeed, "the fact that a

and Plaintiff has not otherwise alleged how the acts are connected to any of the protected classes to which he belongs.[16]  *See Opoku v. Brega*, No. 15-CV-2213, 2016 WL 5720807, at *14 (S.D.N.Y. 2016) (dismissing a hostile work environment clam in part because "none of the incidents alleged by [the plaintiff] explicitly invoked his race or national origin"); *Rivera v. Brooklyn Hosp. Med. Ctr.*, 28 F. Supp. 3d 159, 163 (E.D.N.Y. 2014) (dismissing a hostile work environment claim based on ethnicity where the plaintiff only alleged one remark in which a coworker referred to his ethnicity); *Giscombe v. N.Y.C. Dep't of Educ.*, No. 12-CV-464, 2013 WL 829127, at *6 (S.D.N.Y. Feb. 28, 2013) (dismissing a hostile work environment claim based on race and gender where the plaintiff did not plead "any facts that would establish a nexus between the incidents underlying his hostile workplace claim and his race or gender"); *Oteri–Harkins v. City of New York*, No. 97-CV-2309, 1998 WL 817689, at *7 (E.D.N.Y. Feb. 5, 1998) (dismissing a hostile work environment claim alleging, among other things, reassignment to less desirable position and increased and unreasonable workload, where there were no allegations of racial acts or comments because "[t]hese non-racial forms of 'hostility'. . . if proven, may well support plaintiff's claim that [the defendant] discriminates in its hiring and promotion, but they cannot support a claim of a racially hostile work environment").  Standing alone, the comments regarding Plaintiff's accent and the isolated comment referring to another black DOE employee are not sufficient to state a hostile work environment claim.  *Cf. Brown v. Coach Stores,*

_____

plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment."  *Id.* (internal quotation marks omitted) (quoting *Schwapp*, 118 F.3d at 111).

[16]  In his opposition to the motion to dismiss, Plaintiff includes new allegations that his union colluded with Defendant, that a coworker placed a seasonal greeting card display in a manner that blocked Plaintiff's "view," and that Plaintiff's wife was "being followed."  These allegations do not allow for any inference of discrimination.

*Inc.*, 163 F.3d 706, 713 (2d Cir. 1998) (holding that a plaintiff failed to state a hostile work environment claim where the plaintiff's supervisor made racist remarks on one occasion, including one directed toward the plaintiff); *Rivera*, 28 F. Supp. 3d at 163 (finding that the isolated comment that an unidentified coworker called the plaintiff "stupid like a Puerto Rican" was insufficient, standing alone, to support a hostile work environment claim).

Moreover, even when liberally construed and viewed in the aggregate, the allegations do not demonstrate objectively severe or pervasive acts that rendered Plaintiff's work environment hostile. *See, e.g.*, *Littlejohn*, 795 F.3d at 321 (finding allegations, among others, that "harsh tones" were used with the plaintiff and that the plaintiff was replaced at meetings and wrongfully reprimanded did not rise to the level of "severe or pervasive" environment); *Yan v. Ziba Mode*, No. 15-CV-47, 2016 WL 1276456, at *6 (S.D.N.Y. Mar. 29, 2016) (finding allegations that coworkers "commented" on his foreign accent were not "so severe as to create an abusive working environment").

Accordingly, the Court grants Defendant's motion and dismisses Plaintiff's hostile work environment claim.

### vi. Plaintiff has sufficiently alleged a retaliation claim

Plaintiff alleges that he made various informal complaints to human resources personnel as well as formal complaints to the OEO and the EEOC and, in retaliation for these complaints, Defendant issued him the April 22 Letter that resulted in his probation. (Am. Compl. 20, 22–24; Pl. Opp'n 6, 12–13.) Defendant argues that Plaintiff's informal complaints are not protected activity because he complained only of unfair treatment without any reference to mistreatment

based upon race or ethnicity.[17]  Defendant also argues that of Plaintiff's various informal and

formal complaints, only Plaintiff's filing of an EEOC charge was protected activity, and Plaintiff

does not allege that he experienced any adverse employment actions after filing the EEOC

charge on January 13, 2015.  (Def. Mem. 14–15.)

Title VII prohibits retaliation against an employee who "has opposed any practice [that

is] made an unlawful employment practice" under Title VII.  42 U.S.C. § 2000e-(3)(a).

Retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework.  *See*

*Littlejohn*, 795 F.3d at 315.  To establish a prima facie case of retaliation, a plaintiff must show:

"(1) participation in a protected activity; (2) that the defendant knew of the protected activity;

(3) an adverse employment action; and (4) a causal connection between the protected activity

and the adverse employment action."  *Id.* at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d

Cir. 2010)).

As with other claims analyzed under the *McDonnell Douglas* framework, at the pleadings

stage the allegations need only give "plausible support to the reduced prima facie requirements."

*Id.*  "Thus, for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly

allege that: (1) [the] defendants discriminated — or took an adverse employment action —

against [him], (2) 'because' he has opposed any unlawful employment practice."  *Vega*, 801 F.3d

---

[17]  In Plaintiff's opposition to Defendant's motion, he states that he "did not explicitly
reference his race or national origin in these complaints until January 17, 2015 when Plaintiff
emailed Jeanine Anaya, director of HR at DIIT."  (Pl. Opp'n 19.)  Defendant argues that, based
on this statement, Plaintiff admits that he made no reference to race or national origin in his
informal complaints prior to January 17, 2015.  (Def. Reply 8 (citing Pl. Opp'n 19).)  Plaintiff
explains in a letter responding to Defendant's Reply, that the statement was a "false statement"
that Plaintiff's former counsel drafted and which Plaintiff accidentally included in the
opposition.  (Pl. Letter dated Feb. 16, 2017 ("Sur-reply") 1–2, Docket Entry No. 49.)  The Court
need not consider Plaintiff's argument in his sur-reply because in the OEO complaint, Plaintiff
explicitly mentions his race and ethnicity as potential bases for his unfair treatment by
Defendant.  (Pl. Opp'n 64.)

at 90. To sufficiently allege that a defendant-employer took an adverse employment action "because" a plaintiff opposed an unlawful employment practice, a plaintiff "must plausibly allege that the retaliation was a 'but for' cause of the employer's adverse action." *Id.* But-for causation does not require that retaliation "was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (quoting *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013)).

### 1. Plaintiff engaged in protected activity and Defendant knew of the protected activity

Plaintiff alleges that he engaged in protected activity by complaining informally and by filing a complaint with the OEO on January 2, 2014. (Pl. Opp'n 6, 12–13, 19, 63–64.)

To show protected activity in having opposed discrimination, a plaintiff need not allege that she opposed conduct that actually violated the law, but only that she "possessed a good faith, reasonable belief that the underlying employment practice was unlawful under the statute." *Summa v. Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)); *Jagmohan v. Long Island R.R. Co.*, 622 F. App'x 61, 63–64 (2d Cir. 2015) (citing *Galdieri-Ambrosini*, 136 F.3d at 292). Traditionally, complaints, whether formal or informal, are considered protected activity in retaliation claims. *Summa*, 708 F.3d at 126–27 ("The law protects employees [who] . . . make[] informal protests of discrimination, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges." (quoting *Matima v. Celli*, 228 F.3d 68, 78–79 (2d Cir. 2000))); *see also Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 650 (2d Cir. 2011) ("[P]rotected activities include 'the filing of formal charges . . . as well [as] informal protests of discriminatory employment practices.'" (alterations in original) (quoting *Sumner v.*

*U.S. Postal Serv.*, 899 F.2d 203, 208–09 (2d Cir. 1990))).

However, complaints cannot be so vague or "generalized that the employer could not "reasonably have understood [ ] that the plaintiff's complaint was directed at conduct prohibited by Title VII." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (alteration and citation omitted); *see also Galdieri-Ambrosini*, 136 F.3d at 292 ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII."); *Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 280 (E.D.N.Y. 2013) ("When making the complaint, [p]laintiff must do so in sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of [the protected status]." (citation and internal quotation marks omitted)).

## A. Informal complaints

In the Amended Complaint, Plaintiff alleges that he engaged in protected activity when he informally complained to Anaya and Campanella, (Am. Compl. 22), but the complaints are not protected activity because Plaintiff did not indicate that his race, color or national origin were the basis for his complaints. Plaintiff reported to Campanella that he was denied access to a school by a vendor who was "rude" and "hostile" toward him. (*Id*. at 21.) Plaintiff explained to Campanella that vendors "do not respect him because of how the office as a whole treats him and because he has not been promoted despite his excellent work." (*Id*.) Plaintiff also explained to Campanella that Campanella did not understand that Plaintiff had been "blacklisted and treated disparately within the office." (*Id*.)

Several days later, Plaintiff complained to Anaya regarding the vendor and his discussion with Campanella. (*Id*. at 22.) Plaintiff alleges that "[d]uring that conversation Ms. Anaya

refused to discuss issues relating to Mr. Richard's continued attempts to be treated fairly." (*Id.* at 22.) Plaintiff does not allege that he explained that race, color or national origin were the basis upon which he believed he was treated unfairly during either of these incidents. Plaintiff only alleges that there was a "clear implication" that he referenced his race and national origin when he discussed the vendor issues with Campanella, (*id.* at 21), but he does not otherwise allege that he made any mention of race, ethnicity or color as the basis for his complaint to Campanella or Anaya. Thus, while Plaintiff may have understood in his mind that his race, color or ethnicity were the basis for his complaint to Campanella and Anaya, the Court has no allegations before it from which it can conclude that Plaintiff's understanding was communicated to Campanella or Anaya.

Accordingly, because Plaintiff did not indicate that he was being treated unfairly because of his membership in a protected class and does not allege that he complained to Campanella or Anaya that the vendor discriminated against him based on his race, color or ethnicity — only that the vendor was "rude and hostile for no reason," (*id.*), neither Plaintiff's complaint to Anaya nor his complaint to Campanella was a protected activity. *See Galdieri-Ambrosini*, 136 F.3d at 292; *see, e.g.*, *Martinez v. N.Y.C. Dep't of Educ.*, No. 04-CV-2728, 2008 WL 2220638, at *11 (S.D.N.Y. May 27, 2008) (finding on a motion for summary judgment that the majority of the plaintiff's OEO complaints could not be protected activity "because nothing in those submissions could be read to complain of discrimination on the basis of sex" but instead complained about "unfair treatment" based on "personal animosity").

### B. OEO complaint

In Plaintiff's opposition to the motion to dismiss, he attaches what appears to be the OEO intake form associated with his January 2, 2014 complaint. (*Id.* at 63–64.) According to the OEO intake form, Plaintiff complained that "he was not being treated fairly and that the director

Mark Spencer and former directors did not give him raises and opportunities." (*Id.* at 63.) Plaintiff specifically referenced a November of 2013 meeting during which Spencer denied his request for a raise. (*Id.*) Plaintiff also complained that he applied for a position with DIIT, which paid a higher salary, but that a few days after applying "he was told the position was filled." (*Id.*) When asked why he believed he was being treated unfairly and not provided with a raise or career opportunities, although Plaintiff "initially stated that he did not know why he was being treated unfairly," Plaintiff also stated that the reason "may be based on his color, race [and] ethnicity," even though he "could not articulate the basis of his believe [sic] that the unfair treatment was based on race, color, ethnicity." (*Id.* at 64.) The OEO declined to investigate Plaintiff's complaint, concluding that Plaintiff failed to articulate a complaint of race, color or ethnicity discrimination. (*Id.*) Defendant argues that the OEO complaint does not refer to "any alleged discrimination due to his membership in a protected class, but rather, again, simply alleged that he was not being treated fairly," and thus does not qualify as protected activity. (Def. Reply 8.)

Here, Plaintiff's formal complaints to the OEO and the EEOC constitute protected activity. *See, e.g.*, *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 242 (E.D.N.Y. 2015) (undisputed that filing OEO complaint and NYSHRL charge qualified as protected activity); *Flanagan v. N.Y.C. Dep't of Educ.*, No. 13-CV-8456, 2015 WL 11142630, at *12 (S.D.N.Y. Aug. 21, 2015) (undisputed that filing OEO complaint qualified as protected activity); *Kirkweg v. N.Y.C. Dep't of Educ.*, No. 12-CV-2635, 2013 WL 1651710, at *5 (S.D.N.Y. Apr. 4, 2013) (same). As Defendant argues, because Plaintiff does not allege any adverse actions in retaliation for the filing of his EEOC charge, the filing of the EEOC charge cannot form the basis for his retaliation claim. (Def. Mem. 15.)

However, Plaintiff has adequately pled that the OEO complaint referenced discrimination based on his race, color, and ethnicity. Accepting Plaintiff's allegations as true and drawing all reasonable inferences in Plaintiff's favor, although Plaintiff did not definitively state that discrimination based on race, color and ethnicity was the basis for his unfair treatment, his reference to race, color and ethnicity as the *potential* basis for his unfair treatment provided sufficient notice to Defendant that Plaintiff was complaining of unlawful discrimination and is more than "merely a generalized statement about unfair treatment."[18] *See Richards v. N.Y.C. Dep't of Educ.*, No. 13-CV-16, 2015 WL 4164746, at *15 (S.D.N.Y. July 10, 2015) (finding the plaintiff's OEO complaint was "clearly protected activity" because she alleged "progressive acts of harassment toward her based upon sex/race and disability" (internal quotation marks omitted)); *Benjamin v. City of Yonkers*, No. 13-CV-8699, 2014 WL 6645708, at *4 (S.D.N.Y. Nov. 24, 2014) (finding that the plaintiff's complaint that she was being treated differently than "similarly situated legislative employees, who were white" sufficient to allege that the plaintiff made a complaint about discrimination based on race); *cf. Jones v. Target Co.*, No. 15-CV-4672, 2016 WL 50779, at *7 (E.D.N.Y. Jan. 4, 2016) (finding no protected activity where the plaintiff provided "almost no detail regarding her communication with the HR representative and her HR complaint, on its face, is unconnected to her age or disability").

Accordingly, the Court finds that Plaintiff's OEO complaint was protected activity and that Defendant was aware of the OEO complaint.

---

[18] Defendant does not allege that it was unaware of Plaintiff's OEO complaint, only that the substance of the complaint did not include a complaint for activity protected by Title VII. (Def. Mem. 14–15 (citing *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)).)

## 2. Plaintiff suffered an adverse employment action

Although Defendant does not address whether Plaintiff suffered an adverse action as a result of his filing the OEO complaint, Plaintiff argues that the April 22 Letter[19] is an adverse employment action for purposes of his retaliation claim and, based on temporal proximity, there is a causal connection between the filing of the OEO complaint and the April 22 Letter placing him on probation. As discussed below, Plaintiff adequately states a Title VII retaliation claim.

In the retaliation context, as opposed to the discrimination context, an adverse employment action is one that a reasonable employee would find materially adverse, meaning it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (same). The scope of actions that may be materially adverse is broader for purposes of retaliation claims than for discrimination claims. *See Hicks*, 593 F.3d at 165 (citing *Burlington*, 548 U.S. at 67).

"[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. ---, ---, 133 S. Ct. 2517, 2533 (June 24, 2013)). A plaintiff must also show a causal connection between the protected activity and the adverse employment action either: "(1) indirectly, by showing that the

---

[19] Plaintiff does not clearly allege whether the April 22 Letter is the same "disciplinary notice" that he received in retaliation for the OEO complaint. However, liberally construing the Amended Complaint and Plaintiff's opposition to the motion to dismiss, the Court understands Plaintiff's reference to the "disciplinary notice" he received in March or April of 2014, (Pl. Opp'n 6, 12–13), to be the same as the April 22 Letter that he received in April of 2014 that resulted in his probation, (Am. Compl. 22).

protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *See Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000))); *Chung*, 605 F. App'x at 23 ("Ordinarily, causation may be inferred from close temporal proximity.").

Here, the April 22 Letter sufficiently alleges an adverse action in support of Plaintiff's retaliation claim. Unlike in the discrimination context, a formal reprimand may be an adverse action for purposes of a retaliation claim, "even when . . . the letter does not directly or immediately result in any loss of wages or benefits, and does not remain in the employment file permanently," because "it can reduce an employee's likelihood of receiving future bonuses, raises, and promotions, and it may lead the employee to believe (correctly or not) that his job is in jeopardy." *Millea v. Metro–N. R. Co.,* 658 F.3d 154, 165 (2d Cir. 2011); *Mazyck v. Metro. Transp. Auth.*, 893 F. Supp. 2d 574, 591–92 (S.D.N.Y. 2012) (finding that the issuance of a formal "letter of instruction" for tardiness was an adverse action that sufficiently supported a retaliation claim). The April 22 Letter to Plaintiff warned him that a future infraction could result in "further disciplinary action," and Anaya's email also warned him that an infraction within the proceeding eighteen months would result in Defendant placing the letter in his file. (Pl. Opp'n 66, 78.) Liberally construing the allegations and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff's allegations sufficiently plead an adverse action, as such a letter may dissuade a reasonable worker from making a complaint, particularly when, as here, Plaintiff alleges he had not previously suffered disciplinary action, (*see* Am. Compl. 13). *See, e.g.*, *Fahmy v. Duane Reade, Inc.*, No. 04–CV–1798, 2006 WL 1582084, at *2, 10

(S.D.N.Y. June 9, 2006) (finding that a written warning letter satisfied the adverse-employment-action requirement for a Title VII retaliation claim); *cf. Thomson v. Odyssey*, No. 14-CV-3857, 2015 WL 5561209, at *21 (E.D.N.Y. Sept. 21, 2015) (finding, as to one plaintiff, that a supervisor's warning to not file further complaints was "merely" advice and did not allege a "materially adverse" action for purposes of a retaliation claim).

As to causation, Plaintiff argues that temporal proximity satisfies the but-for causation requirement. (Pl. Opp'n 6.) Plaintiff's unopposed argument, although attenuated, is sufficient at this stage of the litigation because he filed the OEO complaint on January 2, 2014, and received the letter approximately three months later on April 22, 2014. *See Vega*, 801 F.3d at 91 (finding that the but-for causation requirement was met where there was a temporal proximity of two and three months between the adverse actions and the protected activity); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110–11 (2d Cir. 2010) ("Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship." (citing *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 555 (2d Cir. 2001))).[20]

Accordingly, Plaintiff has sufficiently alleged a retaliation claim based on the filing of his OEO complaint.

---

[20] Plaintiff's allegation in the Amended Complaint that the April 22 Letter was issued by Defendant as a result of his meeting with Anaya is not inconsistent with the Court's conclusion that the OEO complaint is also a but-for cause of the adverse employment action. *Vega*, 801 F.3d at 91 ("'[B]ut-for' causation does not [, however,] require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." (alteration in original) (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013))).

### c. Plaintiff's state law claims

In addition to his Title VII claims, Plaintiff brings discrimination claims pursuant to the NYSHRL and the NYCHRL based on race, color and ethnicity and also asserts claims for libel and defamation. Plaintiff admits that he did not file a notice of claim as required for his state law causes of action but argues that his EEOC charge "contained a thorough and detailed explanation of all of Plaintiff's claims and charges" and is sufficient to satisfy the relevant notice-of-claim requirements. (Pl. Opp'n 30.) Alternatively, Plaintiff seeks leave to a file a late notice of claim. (*Id.* at 31.) Defendant argues that Plaintiff does not allege that he served the EEOC charge on the school district, and therefore his EEOC claim does not satisfy the notice requirements that govern discrimination claims against the DOE. (Def. Reply 9.) Defendant also argues that Plaintiff should not be granted leave to file a notice of claim because he is barred by the statute of limitations. (*Id.* at 9–10.)

Under New York law, a party pursuing a non-tort action against the DOE[21] must file a notice of claim within three months of the accrual of the claim. N.Y. Educ. Law § 3813(1) ("No action or special proceeding, for any cause whatever, . . . involving the rights or interest of any district or any such school shall be prosecuted or maintained against any . . . board of education, . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such

---

[21] The parties do not dispute that the notice-of-claim provisions in section 3813 apply to Plaintiff's state-and city law claims. Section 3813(1) has been applied to discrimination causes of action against the DOE. *See Kumar v. N.Y. City Sch. Constr. Auth.*, No. 10-CV-3559, 2011 WL 5929005, at *9–10 (S.D.N.Y. Nov. 29, 2011) (finding summary judgment improper based on disputed facts as to whether employee of the New York City School Construction Authority satisfied section 3813(1) notice-of-claim requirements for NYSHRL and NYCHRL claims).

claim."); *see also Collins v. City of New* York, 156 F. Supp. 3d 448, 460 (S.D.N.Y. 2016) ("New York Education Law [section] 3813 requires a plaintiff to file a notice of claim prior to initiating a lawsuit against a school, school district, board of education, or education officer."); *DT v. Somers Cent. Sch. Dist.*, 588 F. Supp. 2d 485, 500 (S.D.N.Y. 2008) ("[T]he New York Court of Appeals has been clear that 'no action or proceeding may be prosecuted or maintained against any school district or board of education unless a notice of claim has been presented to the governing body and [a] court may not disregard [this] pronouncement.'" (citing *Parochial Bus Sys., Inc. v. Bd. of Educ.*, 60 N.Y.2d 539, 547 (1983))).

Where a party is pursuing a tort action against the DOE, section 3813(2) explicitly provides that "no action . . . founded upon tort shall be prosecuted . . . unless a notice of claim shall have been made and served in compliance with" General Municipal Law section 50-e, which provides that notice of claim must be filed "within ninety days after the claim arises."[22] N.Y. Educ. Law § 3813(2); N.Y. Gen. Mun. Law § 50-e; *Cardo v. Arlington Cent. Sch. Dist.*,

---

[22] The section 3813 requirement applies to claims under both NYSHRL and NYCHRL. *See, e.g.*, *Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 334, 359–61 (E.D.N.Y. 2013) (dismissing NYSHRL and NYCHRL claims for failure to file timely notice of claim); *Ullah v. N.Y.C. Dept. of Educ.*, No. 11-CV-3868, 2012 WL 4471533, at *2 (S.D.N.Y. Sept. 27, 2012) (dismissing claims under NYCHRL and NYSHRL for failure to meet section 3813); *Birkholz v. City of New York*, No. 10-CV-4719, 2012 WL 580522, at *13 (E.D.N.Y. Feb. 22, 2012) (applying section 3813 to both NYSHRL and NYCHRL claims); *Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ.*, 866 F. Supp. 2d 147, 176 (E.D.N.Y. 2011) (same); *Falchenberg v. N.Y.C. Dept. of Educ.*, 375 F. Supp. 2d 344, 351 (S.D.N.Y. 2005) (same).

Neither party addresses the New York Court of Appeals holding in *Margerum v. City of Buffalo*, 24 N.Y.3d 721, 730 (2015) (holding that General Municipal Law sections 50-e and 50-i notice-of-claim requirements do not apply in "an action based on the Human Rights Law in a jurisdiction where General Municipal Law [sections] 50-e and 50-i provide the only notice of claim criteria") and its effects, if any, on the requirement of the filing of a notice-of-claim as to Plaintiff's NYSHRL and NYCHRL claims. The Court therefore does not address this issue. However, the Court orders Defendant to provide further briefing within thirty days of this Memorandum and Order as to whether *Margerum* is applicable. If the Court determines that it is, the Court will consider Defendant's other grounds for dismissal of Plaintiff's NYSHRL and NYCHRL claims.

473 F. App'x 21, 24 (2d Cir. 2012) (affirming dismissal of state-law defamation claim against a school district pursuant to section 3813(2)); *Grantley v. City of New York*, No. 12–CV–8294, 2013 WL 6139688, at *3 (S.D.N.Y. Nov. 21, 2013) ("Under New York law, a plaintiff asserting state law tort claims against New York municipal entities or their employees acting within the scope of their employment must file a notice of claim within ninety days of the incident giving rise to the claim." (citing N.Y. Gen. Mun. Law §§ 50–e, 50–i)); *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 369 n.3 (W.D.N.Y. 2010) (noting that unlike section 3813(1), section 3813(2), as allowed for in General Municipal Law section 50-e, provides that service on a "proper person" fulfills the notice-of-claim requirement and, as such, service on a school superintendent, in the case of a suit against a school district, rather than the governing body of the school district would satisfy section 3813(2) notice requirements).

Failure to comply with section 3813 is a defect in pleading and entitles a defendant to judgment as a matter of law. *Parochial Bus Sys.*, 60 N.Y.2d at 548–49; *H. Verby Co. v. Carle Place Union Free Sch. Dist.*, 773 N.Y.S.2d 601, 601 (App. Div. 2004); *Kernan Library Office Grp. Inc. v. Bd. of Educ. of City Sch. Dist. of City of Schenectady*, 589 N.Y.S.2d 953, 953 (App. Div. 1992).

Some courts have recognized that an EEOC charge can satisfy the requirements of section 3813 so long as the EEOC charge: (1) places the school district on notice of the precise claims alleged; and (2) is served on the party required by section 3813 within the statutory time period. *See Riccardo v. N.Y.C. Dep't of Educ.*, No 16-CV-4891, 2016 WL 7106048, at *8 (S.D.N.Y. Dec. 2, 2016) ("[C]ourts in this Circuit have begun to coalesce around the rule that an EEOC complaint can satisfy the notice of claim requirement "in limited circumstances where 'the charge puts the school district on notice of the precise claims alleged, is served on the

governing board of the district (and not a different arm of the district), and is served within the statutory time period." (internal quotation marks omitted) (collecting cases)); *Brtalik v. S. Huntington Union Free Sch. Dist.*, No. 10-CV-10, 2010 WL 3958430, at *5 (E.D.N.Y. Oct. 6, 2010) (same); *Carlson*, 679 F. Supp. 2d at 366–71; *see, e.g.*, *Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 196 (S.D.N.Y. 2006) ("Even if an EEOC charge could be considered a substitute for a notice of claim — and courts have repeatedly declared that it cannot — this notice of claim would not suffice because it was served (on the wrong party, which is also a fatal defect) over eight months after plaintiff was fired."); *Kushner v. Valenti*, 285 F. Supp. 2d 314, 316 (E.D.N.Y. 2003) (holding that an EEOC notice that was mailed to the school district was sufficient to notify the district of the claims included in the EEOC notice); *Mennella v. Uniondale Union Free Sch. Dist.*, 732 N.Y.S.2d 40, 40 (App. Div. 2001) (concluding that a petition to the Commissioner of Education constituted the functional equivalent of a notice of claim where it provided notice of the nature of the claim and the essential facts underlying the claim).

### i.    Plaintiff fails to allege service of the EEOC charge on Defendant

Plaintiff concedes that he did not file a notice of claim for his NYSHRL, NYCHRL, libel and defamation claims,[23] (Pl. Opp'n 30–31), and does not allege that he served his EEOC charge on any appropriate entity or individual, or that he did so within the time period required.  Thus, Plaintiff's EEOC charge does not satisfy the notice-of-claim requirements.  *See Legra v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 14-CV-9245, 2016 WL 6102369, at *3

---

[23]   Plaintiff's libel and defamation claims are based on his allegations that he was "blackballed" in the DOE, that his personnel file is replete with documents meant to damage his reputation that "were written without his knowledge [and] are there to hurt him and his career," and that Scott told him "[o]ne of us has to leave, and it's not going to be me.  So . . . I can help you get a job in another division, if you want."  (Am. Compl. 9.)

(S.D.N.Y. Oct. 19, 2016) (dismissing the *pro se* plaintiff's state law claims where she did not allege that her EEOC charge provided adequate notice of her claims, or that she served the notice on the district within the required statutory period); *Young v. N.Y.C. Dep't of Educ.*, No. 09-CV-6621, 2010 WL 2776835, at *8 (S.D.N.Y. July 13, 2010) (dismissing a libel claim against the DOE for failure to comply with the notice-of-claim requirements); *Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 127–28 (W.D.N.Y. 2010) ("[E]ven assuming that plaintiff's EEOC complaint contained sufficient information to satisfy § 3813(1) . . . Plaintiff does not allege service upon any of the appropriate authorities establishing compliance with Education Law § 3813(1)."); *Fischer v. N.Y.C. Dep't. of Educ.*, 666 F. Supp. 2d 309, 320 (E.D.N.Y. 2009) (noting that the EEOC charge actually has to be served on the school district to qualify as notice); *Gear v. Dep't of Educ.*, No. 07-CV-11102, 2009 WL 484424, at *5 (S.D.N.Y. Feb. 24, 2009) (dismissing state law claims, including any possible claim for defamation, for failure to comply with the notice of claim requirements); *Biggers v. Brookhaven-Comsewogue Union Free Sch. Dist.*, 127 F. Supp. 2d 452, 456 (S.D.N.Y. 2001) ("[E]ven if the plaintiff's EEOC filing constituted notice of her claim to the School District, that notice was not filed within the statutory three-month period" and "[t]herefore, the plaintiff's state discrimination claim is dismissed for her failure to file a notice of claim as required by section 3813(1) of the Education Law.").

### ii. Plaintiff's application to file a late notice of claim is untimely

Plaintiff alternatively seeks leave to file a late notice of claim. (Pl. Opp'n 31.) Defendant opposes the request as untimely. (Def. Reply 9–10.)

"Upon application, the court, in its discretion, may extend the time to serve a notice of claim. The extension shall not exceed the time limited for the commencement of an action by

45

the claimant against any district or any such school." N.Y. Educ. Law § 3813(2-a). Similarly, General Municipality Law allows applications for late service of notice; however, any extension should not exceed the time limited for the commencement of the action by the claimant. N.Y. Gen. Mun. Law § 50–e(5) ("The extension shall not exceed the time limited for the commencement of an action by the claimant."). Because the statute of limitations on Plaintiff's state law claims has already run, Plaintiff's request to file a late notice of claim is untimely.

Discrimination and retaliation claims brought against the DOE under the NYSRL and the NYCRL are subject to a one-year statute of limitations under Education Law section 3813(2-b). N.Y. Educ. Law § 3813(2-b); *see Wade v. N.Y.C. Dep't of Educ.*, 667 F. App'x 311, 312 (2d Cir. 2016); *Floratos v. Int'l Leadership Charter Sch. Inc.*, No. 09-CV-9136, 2011 WL 291852, at *2–3 (S.D.N.Y. Jan. 20, 2011) (holding that a one-year statute of limitations applies to "[d]iscrimination and retaliation claims brought against the board of education, charter schools, and its officers under New York State and New York City Human Rights Laws," which begins to accrue the day the plaintiff learns of the discriminatory decision). "However, where tort claims are asserted against a school district, board of education, or "any teacher or member of the supervisory or administrative staff or employee," the applicable limitations period is "one year and ninety days after the happening of the event upon which the claim is based." *Carlson*, 679 F. Supp. 2d at 370 (citing N.Y. Educ. Law § 3813(2); N.Y. Gen. Mun. Law § 50-i(1)).

Although the statutes provide that any extension shall not exceed the time for commencement of the action, some courts have more generously considered whether a plaintiff sought leave to file the notice of claim within the statutory period. *See, e.g.*, *Avgerinos*, 690 F. Supp. 2d at 128 n.9, 128–29 (dismissing state and city employment law claims as well as tort claims without leave to amend where the statute of limitations had expired prior to the plaintiff

seeking leave for an extension of time to file the notice of claim); *see also Flaherty*, 752 F. Supp. 2d at 292–93 ("[F]or the Court to permit a late notice of claim here, the plaintiff must have moved for leave to file a late notice within a year of the accrual of her state law claims, regardless of the timeliness of her complaint.").

Plaintiff first requested leave to file a late notice of claim on June 15, 2016 in a letter to the Court addressing Defendant's request for a pre-motion conference. (Pl. Letter dated June 15, 2016 at 3, Docket Entry No. 17.) Even applying the most generous accrual date possible by using the most recent allegation relevant to Plaintiff's NYSHRL and NYCHRL claims, Plaintiff's claims would have accrued on April 16, 2015. (Am. Compl. 7.) Thus, Plaintiff would have had to request leave to file a late notice of claim on or before April 16, 2016, two months before Plaintiff sought leave.[24] *See Matter of Amorosi v. S. Colonie Ind. Centr. Sch. Distr.*, 9 N.Y.3d 367, 371 (2007) ("Thus, according to the statute, a late notice of claim must be filed no later than one year after a cause of action accrues."); *Flaherty*, 752 F. Supp. 2d at 292–93.

Similarly, Plaintiff's libel and defamation claims appear to have accrued sometime in the late 1990s, (Am. Compl. 9, 18–19), and accordingly, the deadline by which Plaintiff could have requested leave to file a late notice-of-claim expired many years ago. N.Y. Gen. Mun. Law § 50–e(5) ("The extension shall not exceed the time limited for the commencement of an action by the claimant."); *Young*, 2010 WL 2776835, at *8 ("As [the plaintiff] has not documented his timely compliance with section 3813, and as he did not seek leave to file a late notice of claim within the one year and ninety day statutory period for commencing a state tort action, [the

---

[24] Because the Court dismisses Plaintiff's NYSHRL and NYCHRL claims for failure to file a notice of claim, the Court does not address Defendant's arguments that the majority of Plaintiff's NYSHRL and NYCHRL are time-barred and, in the alternative, fail to state a claim as a matter of law. (Def. Mem. 6–7, 8–15.)

plaintiff's] libel claim is dismissed."); *Hilow v. Rome City Sch. Dist.*, No. 91-CV-567, 1994 WL 328625, at *8 (N.D.N.Y. June 29, 1994) (noting that once this statute of limitations period had expired, "'[a]s a matter of law [the court is] not authorized to grant leave to serve a late notice of claim upon an application pursuant to section 50–e of the General Municipal Law.'" (alteration in the original) (collecting cases)).

Thus, Plaintiff's failure to file a timely notice of claim or to allege that he served his EEOC charge on the appropriate party to satisfy section 3813 is fatal to each of his state law claims, and his request for leave to file a late notice of claim is untimely. Accordingly, the Court dismisses Plaintiff's state law claims.

### III. Conclusion

For the foregoing reasons, the Court denies Defendant's motion to dismiss Plaintiff's retaliation claim but grants Defendant's motion to dismiss Plaintiff's (1) pre-March 19, 2014 Title VII claims as time-barred; (2) discrimination claims for failure to state a claim; (3) hostile work environment claim for failure to state a claim; and (4) state law claims for failure to file a notice of claim.

Plaintiff's retaliation claims and his timely failure-to-promote claims, which Defendant did not move to dismiss, may proceed. In addition, as discussed in note 22, Defendant shall provide further briefing within thirty days of this Memorandum and Order as to whether *Margerum v. City of Buffalo* is applicable to Plaintiff's NYSHRL and NYCHRL claims. If the Court determines that it is, the Court will consider Defendant's other grounds for dismissal of Plaintiff's state law claims. In light of Plaintiff's *pro se* status, Plaintiff is granted thirty (30) days from the date of this Memorandum and Order to file an amended complaint to allege a disparate-pay claim. Plaintiff is advised that any amended complaint will completely replace the

original complaint and thus should include Plaintiff's retaliation and failure-to-promote claims, must be captioned "Second Amended Complaint," and must bear the same docket number as this Memorandum and Order.

SO ORDERED:

     s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: March 31, 2017
     Brooklyn, New York