UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

PATRICK RICHARD,

                    Plaintiff,　　　　　　**MEMORANDUM & ORDER**
　　　　　　　　　　　　　　　　　　　16-CV-957 (MKB)

        v.

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                  Defendant.

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

I.   Background ................................................................................................................... 4
  a.   Procedural background ........................................................................................... 5
    i.   The 2015 EEOC Charge ................................................................................... 5
    ii.   The March 31, 2017 Memorandum and Order ............................................... 5
    iii.   The 2017 EEOC charge .................................................................................. 6
    iv.   The TAC .......................................................................................................... 7
    v.   Plaintiff's additional requests ......................................................................... 8
  b.   Factual background ................................................................................................ 9
    i.   Alleged failures to promote ............................................................................. 9
      1.   Senior Project Manager ............................................................................. 9
      2.   Senior Business System Analyst .............................................................. 10
      3.   Analyst, Office of Space Planning ........................................................... 10
      4.   Business IT Specialist ............................................................................... 10
      5.   Senior Program Manager ......................................................................... 11
      6.   Senior Director of Special Projects, CSE ................................................ 11
      7.   Deputy Chief Technology Officer ............................................................ 12
      8.   Chief Technology Officer ......................................................................... 12
      9.   Strategic Initiatives Manager ................................................................... 13
      10.   Chief Information Officer ......................................................................... 13
      11.   Instructional Technology Director ........................................................... 14

12. Chief Product Officer ........................................................................... 14

13. Other failures to promote alleged in the Proposed FAC ...................... 15

ii. Alleged acts of retaliation ........................................................................ 15

1. The April 22, 2014 Letter ...................................................................... 15

2. Referral for medical evaluation, temporary relocation pending evaluation, and the removal of Plaintiff's holiday decorations ................................. 16

iii. Plaintiff's disparate pay allegations......................................................... 17

iv. Alleged constitutional violations ............................................................. 18

v. Plaintiff's resignation .............................................................................. 18

II. Discussion ........................................................................................................ 20

a. Standard of review ......................................................................................... 20

b. Plaintiff's previously dismissed claims are barred by the law of the case doctrine........ 22

c. Claims barred on procedural grounds ............................................................ 25

i. Plaintiff's Title VII failure to promote claims are not time-barred ........... 25

ii. Exhaustion of administrative remedies .................................................... 27

iii. State and city law claims .......................................................................... 33

1. NYSHRL and NYCHRL claims ............................................................ 35

A. Failure to promote claims ................................................................ 37

B. Retaliation and hostile work environment claims ........................... 39

2. Claims under New York State Constitution.......................................... 40

d. Plaintiff's Title VII, NYSHRL, and NYCHRL claims fail as a matter of law ............... 43

i. Title VII and NYSHRL failure to promote claims .................................... 43

1. Defendant has proffered legitimate, nondiscriminatory reasons for its hiring decisions........................................................................................ 46

2. Plaintiff fails to establish a triable issue as to pretext ............................ 51

ii. Title VII disparate pay claim ................................................................... 54

iii. NYSHRL hostile work environment claim .............................................. 57

iv. Title VII and NYSHRL retaliation claims ............................................... 61

1. Plaintiff's Title VII and NYSHRL retaliation claims based on the April 22, 2014 Letter .................................................................................... 63

2. Plaintiff's Title VII and NYSHRL retaliation claims based on his referral for a medical evaluation and temporary reassignment ................................. 67

v. NYCHRL claims ....................................................................................... 70

e. Constitutional claims .................................................................................... 74

f. The Court grants in part Plaintiff's request for leave to amend...................... 77

      i.    Failure to promote claims ............................................................................... 80

     ii.    Constructive discharge and defamation claims ............................................. 83

       1.    Constructive discharge claims ............................................................. 85

       2.    Defamation claims ................................................................................ 87

III.   Conclusion ....................................................................................................... 88

Plaintiff Patrick Richard, proceeding pro se, commenced the above-captioned action on

February 25, 2016, against Defendant the New York City Department of Education (the "DOE").

(Compl., Docket Entry No. 1.)  Plaintiff filed a Third Amended Complaint ("TAC") on April 13,

2018, and has also filed a Proposed Fourth Amended Complaint (the "Proposed FAC") and a

request to further amend the Proposed FAC.[1]  Plaintiff brings claims in the TAC of employment

discrimination under federal, state, and city law and for constitutional violations based on

Defendant failing to promote him, giving him unequal pay, issuing him a disciplinary letter,

referring him for a medical evaluation, temporarily reassigning him, removing his holiday

decorations from his cubicle, asking him not to say and do certain things at work, and removing

materials from his briefcase.  (*See generally* TAC.)  In the Proposed FAC, Plaintiff adds claims

based on additional failures to promote him, his resignation, and claims made in a report about

him.  (*See generally* Proposed FAC.)

Defendant moves for summary judgment as to the TAC pursuant to Rule 56 of the

Federal Rules of Civil Procedure and opposes the Proposed FAC, and Plaintiff opposes the

motion for summary judgment.[2]  The Court liberally construes the TAC as alleging claims of

---

[1]  (Am. Compl., Docket Entry No. 5; Second Am. Compl. ("SAC"), Docket Entry No. 56; TAC, Docket Entry No. 90; Proposed FAC, Docket Entry No. 133; Pl.'s Second Mot. for Leave to File Fourth Am. Compl., Docket Entry No. 155.)

[2]  (Def.'s Mot. for Summ. J. ("Def.'s Mot."), Docket Entry No. 142; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 147; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 148; Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s

(1) failure to promote, (2) disparate pay, and (3) hostile work environment based on race, color, and national origin, and (4) retaliation claims in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"), (TAC ¶¶ 337–346), as well as (5) claims for miscellaneous violations of the New York State Constitution and Federal Constitution, the latter of which the Court construes as *Monell* claims,[3] (*id.* ¶¶ 347–352).  The Court liberally construes the Proposed FAC as alleging additional claims of (1) failure to promote and (2) constructive discharge under Title VII, the NYSHRL, and the NYCHRL, and (3) a defamation claim under New York law.  (Proposed FAC ¶¶ 336k, 336m, 336o, 336p, 336t, 336ae, 355–356, 357–358.) For the reasons discussed below, the Court grants Defendant's motion for summary judgment and dismisses the TAC in its entirety and grants in part Plaintiff's request for leave to file a Fourth Amended Complaint.

## I.   Background

The following facts are undisputed unless otherwise noted.[4]

---

Opp'n"), Docket Entry No. 150; Pl.'s Opp'n to Def.'s Reply ("Pl.'s Sur-Reply"), Docket Entry No. 149.)

[3]  *See Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (noting that courts must liberally construe papers submitted by pro se litigants "to raise the strongest arguments they suggest" (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994))).

[4]  The Court relies on Defendant's statement of undisputed facts.  (Def.'s Stmt. of Undisputed Facts Pursuant to Local Rule 56.1 ("Def.'s 56.1"), Docket Entry No. 145.)  Pursuant to Local Civil Rule 56.2, Defendant served Plaintiff with separate notice of its motion for summary judgment, (Def.'s Notice Pursuant to Local Rule 56.2, Docket Entry No. 146), but Plaintiff failed to submit a response to Defendant's Statement of Material Facts Pursuant to Local Rule 56.1.  Instead, Plaintiff submitted a sur-reply to Defendant's reply challenging facts in Defendant's 56.1 statement but failing to cite to any evidence in the record.  (*See generally*

### a.   Procedural background

#### i.   The 2015 EEOC Charge

On January 2, 2014, Plaintiff filed a "largely blank, unsigned and undated" internal

complaint with Defendant's Office of Equal Opportunity claiming "unspecified acts of

discrimination and retaliation" (the "2014 OEO Complaint").  (Def.'s 56.1 ¶ 1; 2014 OEO

Complaint, annexed to Decl. of Kimberly K. Brown in Supp. of Def.'s Mot. ("Brown Decl.") as

Ex. Q, Docket Entry No. 144-17.)

On January 16, 2015, Plaintiff filed a charge of discrimination with the Equal

Employment Opportunity Commission (the "EEOC"), which he amended on February 20, 2015

(the "2015 EEOC Charge").  (Def.'s 56.1 ¶ 2; 2015 EEOC Charge, annexed to Brown Decl. as

Ex. R, Docket Entry No. 144-18.)  The 2015 EEOC Charge "alleges discriminatory failure to

promote and retaliation based on [Plaintiff's] filing of the . . . [2014] OEO [C]omplaint and

[receipt of] a letter to file dated April 22, 2014" (the "April 22, 2014 Letter").  (Def.'s 56.1 ¶ 3.)

"On December 16, 2015, the EEOC . . . issued [P]laintiff a right to sue letter."  (*Id.* ¶ 4; 2015

Right to Sue Letter, annexed to TAC, Docket Entry No. 90, at 72.)

#### ii.   The March 31, 2017 Memorandum and Order

Plaintiff commenced this action on February 25, 2016, (Compl.), and filed an Amended

Complaint on March 7, 2016, (Am. Compl.).  On July 21, 2016, Defendant moved to dismiss the

---

Pl.'s Sur-Reply.)  A "district court has broad discretion to determine whether to overlook a
party's failure to comply with local court rules," *McLean v. Metro. Jewish Geriatric Ctr.*, No.
11-CV-3065, 2013 WL 5744467, at *1 (E.D.N.Y. Oct. 23, 2013) (quoting *Holtz v. Rockefeller &
Co.*, 258 F.3d 62, 73 (2d Cir. 2001)), and the Court exercises its discretion and overlooks
Plaintiff's failure to comply with the local rules.  In addition, in light of Plaintiff's pro se status,
the Court will "deem admitted only those facts that are supported by the record and not
controverted by other admissible evidence."  *Hill v. Laird*, No. 06-CV-126, 2016 WL 3248332,
at *4 (E.D.N.Y. June 13, 2016) (quoting *McLean*, 2013 WL 5744467, at *1).

Amended Complaint.  (Def.'s Mot. to Dismiss, Docket Entry No. 23.)  By Memorandum and

Order dated March 31, 2017, the Court granted in part and denied in part Defendant's motion

(the "March 2017 Decision").  (Mar. 2017 Decision, Docket Entry No. 52.)  The Court dismissed

"Plaintiff's (1) pre-March 19, 2014 Title VII claims as time-barred; (2) discrimination claims for

failure to state a claim; (3) hostile work environment claim for failure to state a claim; and (4)

state law claims for failure to file a notice of claim."  (*Id.* at 48.)  The Court also dismissed

Plaintiff's constructive discharge and disparate pay claims for failure to state a claim but granted

Plaintiff leave to amend as to his disparate pay claim.  (*Id.* at 25–27, 48.)  The Court noted that

Plaintiff's Title VII claims, including his "retaliation claims and his timely failure to promote

claims . . . may proceed."  (*Id.* at 48.)

### iii.  The 2017 EEOC charge

"On April 17, 2017, [P]laintiff filed another charge of discrimination with the EEOC"

(the "2017 EEOC Charge").  (Def.'s 56.1 ¶ 7; 2017 EEOC Charge, annexed to Brown Decl. as

Ex. S, Docket Entry No. 144-19.)  In the 2017 EEOC Charge, Plaintiff alleges three additional

failures to promote to the positions of "Strategic Initiatives Manager" on or about April 8, 2016;

"Chief Technology Officer" on or about April 27, 2016;[5] and "Instructional Technology

Director" on or about August 12, 2016.  (Def.'s 56.1 ¶ 8.)  In addition, "[o]n June 1, 2017,

[P]laintiff served a notice of claim upon [Defendant] alleging 'libel' and that he was 'black

balled' at various times since the 1990s" (the "2017 Notice of Claim").  (*Id.* ¶ 9; 2017 Notice of

Claim, annexed to TAC as Ex. SAC2, Docket Entry No. 90, at 73–81.)

---

[5]  Defendant notes that "[t]he correct title of the position to which [P]laintiff applied on or about April 27, 2016 is 'Chief Information Officer,' not 'Chief Technology Officer.'"  (Def.'s Mem. 6 n.3.)

Following these administrative filings, on June 12, 2017, Plaintiff filed the SAC, which "added a new claim for 'defamation.'" (Def.'s 56.1 ¶ 10.) On August 4, 2017, Defendant sought leave to make a partial motion to dismiss the SAC, and, on October 4, 2017, the Court held a pre-motion conference, during which it *sua sponte* dismissed Plaintiff's newly pled defamation claim and advised Plaintiff that most of the allegations in the SAC had been previously dismissed. (*Id.* ¶¶ 11–12; Min. Entry dated Oct. 4, 2017.)

"On March 1, 2018, the EEOC . . . issued [P]laintiff a right to sue letter." (Def.'s 56.1 ¶ 13.) "On March 15, 2018, [P]laintiff served an 'update' to the [2017] [N]otice of [C]laim . . . , wherein, among other things, he described his participation in a [2017] holiday cubicle workspace decorating contest" (the "March 2018 Update"). (*Id.* ¶ 14; Mar. 2018 Update, annexed to TAC as Ex. TAC-A, Docket Entry No. 90, at 102–13.)

### iv. The TAC

On April 13, 2018, Plaintiff filed the TAC, which consists of 352 paragraphs, the first 239 of which are "nearly identical" to paragraphs one through 230 of the SAC. (Def.'s 56.1 ¶ 15.) In the TAC, Plaintiff adds claims based on Defendant's alleged failure to promote him to four additional positions — namely, the positions of Strategic Initiatives Manager, Chief Technology Officer, and Instructional Technology Director that he listed in the 2017 EEOC Charge, (TAC ¶¶ 203–205, 320–322), and the position of Chief Product Officer, which Plaintiff alleges he applied to after filing the 2017 EEOC Charge, (*id.* ¶ 328). Liberally construed, Plaintiff also alleges in the TAC several new workplace grievances, including (1) a referral for a medical evaluation, (*id.* ¶¶ 294–295, 301–303); (2) a temporary reassignment to a different work location during the pendency of the medical evaluation, (*id.* ¶¶ 296–299); and (3) the removal of Plaintiff's holiday decorations from his cubicle following the holiday workplace decorating contest in December of 2017, which he discovered in January of 2018 after returning to his prior

work location following his medical evaluation, (*id.* ¶¶ 246, 271, 309, 316–318).  Plaintiff also includes in the TAC additional claims under the U.S. Constitution and the New York State Constitution for alleged violations of Plaintiff's "[F]irst [A]mendment rights," (*id.* ¶¶ 275–276, 311–312, 347–348), "due process rights," (*id.* ¶¶ 349–350), and an "unreasonable search and seizure," (*id.* ¶¶ 175–176, 351–352).

"On September 12, 2018[,] [P]laintiff filed an 'amended' notice of claim" (the "September 2018 Update").  (Def.'s 56.1 ¶ 16; Sept. 2018 Update, Docket Entry No. 102-1.)

### v.  Plaintiff's additional requests

On November 26, 2019, Plaintiff sought leave to file a Proposed FAC.  (Mot. to Amend/Correct/Supplement the TAC, Docket Entry No. 130.)  On December 2, 2019, the Court directed Plaintiff to file his Proposed FAC and directed Defendant to respond to the Proposed FAC in its summary judgment motion.  (Order dated Dec. 2, 2019.)

On December 13, 2019, Plaintiff filed the Proposed FAC, which is nearly identical to the TAC except for the inclusion of paragraphs "174a" through "174e" and "336a" through "336ar." (Def.'s 56.1 ¶ 18.)  In the Proposed FAC, Plaintiff includes another "update" to his previously filed 2017 Notice of Claim, attached as an exhibit (the "December 2019 Update").  (*Id.*; December 2019 Update, annexed to Proposed FAC, Docket Entry No. 133, at 65–69.)  He adds claims based on (1) Defendant's alleged failure to promote Plaintiff to additional positions to which he applied after he filed the TAC on April 13, 2018, (2) constructive discharge, and (3) defamation related to an independent report and recommendation dated April 9, 2019, from the Special Commissioner of Investigation for the New York City School District to Defendant (the "April 2019 Report"), where the Commissioner substantiated that Plaintiff falsified payroll hours and recommended that the DOE take appropriate disciplinary action against him.

(Proposed FAC ¶¶ 336u–336ab, 336af–336ap, 357–358; Apr. 2019 Report, annexed to Brown Decl. as Ex. Z, Docket Entry No. 144-26.)

On March 29, 2021, Plaintiff again requested leave to file a new proposed FAC and to use the Proposed FAC "as [a] template," attaching to his request a new right to sue letter issued by the EEOC on February 12, 2021, but not the underlying EEOC charge.  (Pl.'s Second Mot. for Leave to File FAC, Docket Entry No. 155; Feb. 12, 2021 Right to Sue Letter, annexed to Pl.'s Second Mot. for Leave to File FAC as Ex. 1, Docket Entry No. 155, at 4.)  The Court again noted that it would consider Plaintiff's motion for leave to file a new proposed FAC when it considers Defendant's summary judgment motion.  (Order dated Apr. 1, 2021.)

### b.  Factual background

#### i.  Alleged failures to promote

"Plaintiff was hired by the DOE in 1991" and "resigned . . . effective January 3, 2020." (Def.'s 56.1 ¶¶ 19–20.)  During that time, Plaintiff claims that he was denied numerous promotions on account of his race, color, and national origin.  (*Id.* ¶ 30.)

##### 1.  Senior Project Manager

On or about May 22, 2014, Plaintiff applied for the position of "Senior Project Manager." (TAC ¶ 180; Def.'s 56.1 ¶ 31.)  "Plaintiff did not recall the qualifications for the position . . . but testified that he 'met them.'"  (Def.'s 56.1 ¶ 32.)  "Plaintiff testified that he is unaware of the reason he did not get the . . . position and is unaware if any candidate was selected."  (*Id.* ¶ 33.) Demographic information for the selected applicant shows that the applicant is "Black/African American."  (*Id.* ¶ 34.)

### 2. Senior Business System Analyst

On or about September 10, 2014, Plaintiff applied for the position of "Senior Business System Analyst." (TAC ¶ 186; Def.'s 56.1 ¶ 35.) "Plaintiff did not recall the qualifications for the position . . . ." (Def.'s 56.1 ¶ 36.) "Plaintiff testified that he is unaware of the reason he did not get the . . . position and is unaware if any candidate was selected." (*Id.* ¶ 37.) The selected applicant's résumé indicates that the applicant "had nearly ten years of experience as a business analyst both in the private sector and most recently within the New York City Department of Information and Technology." (*Id.* ¶ 38.) Plaintiff's application for the position indicates that he "lacked experience as a business system analyst." (*Id.* ¶ 39.) The evidence shows that the selected applicant is "Hispanic." (*Id.* ¶ 40.)

### 3. Analyst, Office of Space Planning

On or about September 22, 2014, Plaintiff applied for the position of "Analyst, Office of Space Planning."[6] (TAC ¶ 187; Def.'s 56.1 ¶ 41.) "Plaintiff did not recall the qualifications for the position . . . ." (Def.'s 56.1 ¶ 42.) "The position . . . was located within the DOE's Office of Space Planning" — a separate division from the Division of Instructional and Information Technology ("DIIT"). (*Id.* ¶ 43.) "Plaintiff testified that he is unaware of the reason he did not get the . . . position and is unaware if any candidate was selected." (*Id.* ¶ 44.) "No candidate was selected for the . . . position." (*Id.* ¶ 45.)

### 4. Business IT Specialist

Plaintiff testified that, in or about October of 2014, he "perhaps" applied for the position of "Business IT Specialist." (*Id.* ¶ 46; TAC ¶ 189.) Plaintiff did not recall the qualifications for

---

[6] Plaintiff alleges that he applied for the position of "Borough Director, Space Planning." (Proposed FAC ¶ 187; TAC 60.) However, the correct title for the position for which he applied was "Analyst Office Space Planning." (Def.'s 56.1 6 n.2.)

this position.  (Def.'s 56.1 ¶ 47.)  "Plaintiff testified that he is unaware of the reason he did not

get the . . . position and is unaware if any candidate was selected."  (*Id.* ¶ 48.)  The selected

applicant's résumé indicates that the applicant "held, among other things, a New York State

Teacher Certification and was currently enrolled in a second master's program, a Master of Art

in Technology Educational Specialist at Teachers College, Columbia University."  (*Id.* ¶ 49.)

Plaintiff's application for the position indicates that he did "not hold a New York State Teacher

Certification nor a masters' degree from any Ivy League universities."  (*Id.* ¶ 50.)  The evidence

shows that the applicant is "Black/African American."  (*Id.* ¶ 51.)

### 5.  Senior Program Manager

On or about October 15, 2014, Plaintiff applied for the position of "Senior Program

Manager."  (TAC ¶ 191; Def.'s 56.1 ¶ 52.)  "Plaintiff did not recall the qualifications for the

position . . . and testified that 'I try not to remember these things.'"  (Def.'s 56.1 ¶ 53.)  "Plaintiff

testified that he is unaware of the reason he did not get the  . . . position and is unaware if any

candidate was selected."  (*Id.* ¶ 54.)  The selected applicant's résumé indicates that the applicant

"was a current senior executive and the DIIT Portfolio Manager; had decades of leadership

experience, and held, among other things, two master's degrees from New York University and

Columbia University."  (*Id.* ¶ 55.)  The evidence shows that the applicant is "White."  (*Id.* ¶ 56.)

### 6.  Senior Director of Special Projects, CSE

Plaintiff alleged that, on or about November 17, 2014, he applied for the position of

"[Senior] Director of Special Projects, CSEs," (TAC ¶ 192), however Plaintiff testified that he

does not specifically recall applying for this position, (Def.'s 56.1 ¶ 57).  "Plaintiff did not recall

the qualifications for the position," (Def.'s 56.1 ¶ 58), and "testified that he is unaware if any

candidate was selected for the . . . position," (*id.* ¶ 59).  "When asked if he was aware of why he

was not selected . . . , [he] testified: 'I'll make a broad statement.  For most of the positions, for many of the positions that I have not been granted, the positions had to do with my color.'" (*Id.* ¶ 60.)  "Plaintiff testified that he was not aware that applicants of color were selected for various positions to which he had applied." (*Id.* ¶ 61.)  "The position . . . was located within the DOE's Division of Specialized Instruction and Student Support[,] which serves students with disabilities — an entirely separate division from DIIT[,] wherein [P]laintiff worked." (*Id.* ¶ 62.)  "Plaintiff's application . . . was devoid of any work experience in the Office of Special Education or Division of Specialized Instruction and Student Support." (*Id.* ¶ 63.)  The selected applicant's résumé indicates that the applicant "was the current Chief of Staff to the Chief Executive Officer in the Special Education Office." (*Id.* ¶ 64.)  The evidence shows that the applicant is "White." (*Id.* ¶ 65.)

### 7.  Deputy Chief Technology Officer

On or about December 21, 2014, Plaintiff applied for the position of "Deputy Chief Technology Officer." (TAC ¶ 196; Def.'s 56.1 ¶ 66.)  "Plaintiff did not recall the qualifications for the position . . . ." (Def.'s 56.1 ¶ 67.)  "Plaintiff's application was devoid of both the minimum and preferred requirements for the . . . position." (*Id.* ¶ 68.)  The selected applicant's résumé indicates that the applicant "had been the acting Deputy Chief Technology Officer for years, and had decades of executive-level senior leadership and computer engineering experience prior to acting in that position." (*Id.* ¶ 69.)  The evidence shows that the applicant is "White." (*Id.* ¶ 70.)

### 8.  Chief Technology Officer

Also on or about December 21, 2014, Plaintiff applied for the position of "Chief Technology Officer." (TAC ¶ 197; Def.'s 56.1 ¶ 71.)  "Plaintiff testified that he did not recall

the qualifications for the position . . . , declaring 'I don't keep this in my head.'" (Def.'s 56.1

¶ 72.)  With respect to his qualifications, Plaintiff testified:

> These are positions I'm very qualified for.  I meet the qualifications
> for those positions very well.  I have been positioned based on the
> experience I have with the DOE having known DOE systems and
> my savoir faire I think I do have what it takes to have the DOE
> achieve the aim [of] educating the kids that I think they are
> interested in, helping everyone pull in the right direction.

(*Id.* ¶ 73.)  "Plaintiff's application was devoid of both the minimum and preferred requirements

for the . . . position."  (*Id.* ¶ 74.)  The selected applicant's résumé indicates that the applicant

"had been the acting Chief Technology Officer for years, and had decades of executive-level

senior leadership experience in both the private and public sectors."  (*Id.* ¶ 75.)  The evidence

shows that the applicant is "White."  (*Id.* ¶ 76.)

### 9.   Strategic Initiatives Manager

On or about April 8, 2016, Plaintiff applied for the position of "Strategic Initiatives

Manager."  (TAC ¶ 203; Def.'s 56.1 ¶ 77.)  "Plaintiff testified that he did not recall the

qualifications for the position," (Def.'s 56.1 ¶ 78), and "that he is unaware if any candidate was

selected," (*id.* ¶ 79).  "Plaintiff's application was devoid of both the minimum and preferred

requirements for the . . . position."  (*Id.* ¶ 80.)  The selected applicant's résumé indicates that the

applicant "had previously held the position of 'Strategic Initiatives Coordinator' at DIIT, and had

previously worked at the State Department and the United Nations."  (*Id.* ¶ 81.)  The evidence

shows that the applicant is "Asian."  (*Id.* ¶ 82.)

### 10.  Chief Information Officer

On or about April 27, 2016, Plaintiff applied for the position of "Chief Information

Officer."  (TAC ¶ 204; Def.'s 56.1 ¶ 83.)  "Plaintiff testified that he did not recall the

qualifications for the position . . . .'"  (Def.'s 56.1 ¶ 84.)  "Plaintiff's application was devoid of

both the minimum and preferred requirements for the . . . position." (*Id.* ¶ 85.)  The selected applicant's résumé indicates that the applicant "possessed decades of executive-level senior leadership experience and previously served as a Chief Information Officer in both the private and public sectors." (*Id.* ¶ 86.)  The evidence shows that the applicant is "White." (*Id.* ¶ 87.)

### 11.  Instructional Technology Director

On or about August 12, 2016, Plaintiff applied for the position of "Instructional Technology Director."  (TAC ¶ 205; Def.'s 56.1 ¶ 88.)  "Plaintiff testified that he did not recall the qualifications for the position . . . ."  (Def.'s 56.1 ¶ 89.)  "Plaintiff's application was devoid of both the minimum and preferred requirements for the . . . position." (*Id.* ¶ 90.)  The selected applicant's résumé indicates that the applicant "possessed decades of teaching and administrative experience and served previously as the Assistant Superintendent/Deputy Director of Teaching and Learning within the DOE's Office of Field Support."  (*Id.* ¶ 91.)  The evidence shows that the applicant is "White."  (*Id.* ¶ 92.)

### 12.  Chief Product Officer

Plaintiff alleged that on or around December 6, 2017, "he applied for the position of 'Chief Product Officer.'"  (TAC ¶ 328; Def.'s 56.1 ¶ 93.)  "Plaintiff testified that he did not recall the qualifications for the position . . . .'"  (Def.'s 56.1 ¶ 94.)  "The DOE does not have an application from [P]laintiff referencing the . . . position."  (*Id.* ¶ 95.)  "Plaintiff meets neither the preferred nor minimum requirements for the . . . position."  (*Id.* ¶ 96.)  The selected applicant's résumé indicates that the applicant "possessed decades of executive-level senior leadership experience in . . . the private, public and non-profit sectors."  (*Id.* ¶ 97.)

14

### 13.  Other failures to promote alleged in the Proposed FAC

On or about May 21, 2018, Plaintiff applied for the position of "Senior Data Administrator."  (Proposed FAC ¶ 336k; Def.'s 56.1 ¶ 98.)  "No candidate has been selected for this position."  (Def.'s 56.1 ¶ 99.)

On or about May 24, 2018, Plaintiff applied for the position of "Senior Network Engineer."  (Proposed FAC ¶ 336m; Def.'s 56.1 ¶ 100.)  "The position . . . is in a Civil Service competitive class that is subject to examination," and it "was only open to applicants who were permanent as Certified IT Administrator."  (Def.'s 56.1 ¶ 101.)  "Plaintiff was not a permanent 'Certified IT Administrator.'"  (*Id.* ¶ 102.)  The selected applicant's résumé indicates that the applicant "was a certified IT administrator currently employed by the DOE."  (*Id.* ¶ 103.)

On July 25, 2018, Plaintiff applied for the position of Chief Technology Officer. (Proposed FAC ¶ 336o.)  On October 19, 2018, Plaintiff applied for the position of Chief Product Officer.  (*Id.* ¶ 336p.)  On April 3, 2019, Plaintiff applied for the position of DOE Chief Information Officer.  (*Id.* ¶ 336t.)  On June 14, 2019, Plaintiff applied for the position of Director of Network Infrastructure Deployment Services.[7]  (*Id.* ¶ 336ae).

### ii.  Alleged acts of retaliation

### 1.  The April 22, 2014 Letter

"Plaintiff's supervisor received a complaint on March 19, 2014, from an outside vendor that they did not wish to work with [P]laintiff due to the manner in which [he] treated them — namely that [he] was yelling at the outside vendor."  (Def.'s 56.1 ¶ 104.)  "When [P]laintiff's supervisor tried to discuss this matter with [him] on March 20, 2014, [P]laintiff displayed

---

[7]  Defendant does not address Plaintiff's allegations regarding the positions he applied to beginning in July of 2018.

unprofessional behavior." (*Id.* ¶ 105.) "This prompted a meeting with Human Resources and [P]laintiff's union representative on March 25, 2014 wherein [P]laintiff's supervisor provided verbal guidance regarding a display of conduct unbecoming."[8] (*Id.*) "The March 25, 2014 meeting was memorialized in [the April 22, 2014 Letter]." (*Id.* ¶ 106.) "Plaintiff testified that he never lost any wages or benefits following his receipt of the April 22, 2014 [L]etter." (*Id.* ¶ 107.)

### 2.  Referral for medical evaluation, temporary relocation pending evaluation, and the removal of Plaintiff's holiday decorations

"On November 17, 2017, [P]laintiff's supervisor requested a medical examination of [him] pursuant to section 2568 of the New York State Education Law." (*Id.* ¶ 118.) "The request . . . was made after numerous witnessed instances wherein [P]laintiff displayed erratic and threatening behavior in the workplace." (*Id.* ¶ 119.) "For example, one female coworker expressed fear of working in close proximity to [P]laintiff following his aggressive outburst towards her, and several outside vendors expressed their displeasure with working with [P]laintiff due to his aggressive and unstable behavior." (*Id.*) "Plaintiff testified that there was a 'grain of truth' in the reasons provided in support of the request for [a medical] evaluation — but took issue with the narrative[,] which he interpreted as placing him 'at fault.'" (*Id.* ¶ 120.)

"On or about December 13, 2017, [P]laintiff received a letter informing him that his work location would be temporarily reassigned pending the outcome of his medical examination."[9] (*Id.* ¶ 121.) "Plaintiff testified that he was temporarily relocated to a DOE office building located in Queens, which was closer to his home." (*Id.* ¶ 122.) "Plaintiff testified that he worked

---

[8]  Plaintiff testified that he did not receive verbal guidance at this meeting regarding a "display of conduct unbecoming." (Pl.'s Dep. 37.)

[9]  Plaintiff maintains that he did not receive a letter on December 13, 2017. (Pl.'s Sur-Reply 24.) Although the letter is dated December 13, 2017, Plaintiff recalled receiving the letter on Friday, December 15, 2017. (Pl.'s Dep. 49.)

at the Queens location for approximately two weeks, out of the approximate one month he was

assigned, due to use of vacation and sick leave." (*Id.* ¶ 123.)  During those two weeks, Plaintiff

"earned the same salary, worked the same hours, . . . and his civil service title remained the

same," (*id.* ¶ 124), and "his responsibilities included scanning documents onto a computer,"[10]

(*id.* ¶ 125).

"Plaintiff . . . returned to his regular work location . . . in mid-January [of] 2018, after

completion of the medical examination and clearance from a DOE referred psychiatrist and a

mental health provider recommended by his union." (*Id.* ¶ 126.)  "Upon [P]laintiff's return to his

regular work location . . . , he discovered that the Christmas decorations he [had] placed in and

around his work cubicle [had been] taken down and placed on his desk." (*Id.* ¶ 127.)  "Plaintiff

does not know who took down the decorations or why they were removed." (*Id.* ¶ 128.)

### iii.  Plaintiff's disparate pay allegations

"Plaintiff testified that in or around 1994, the division in which he worked, the Bureau of

Telecommunications, merged with the Division of Management Information Systems

('DMIS')." (*Id.* ¶ 129.)  "Plaintiff claims that at the time of the merger in 1994, the salaries of

white employees in DMIS were higher than [those of] black employees in the Bureau of

Telecommunications," and he "identified Gary Weglarz, Mike Woods, Louis Pezzengrili, Hugh

Courtney, Bob Einbeinder, Joe Fusi, and Robert Gwirtzman as white employees who received

higher salaries." (*Id.* ¶ 130.)  "When asked if he was aware of any individuals that were paid

higher salaries than him on account of his race, color[,] or national origin for the period March

2014 forward, [P]laintiff testified '[t]hese people who are paid more.'" (*Id.* ¶ 131.)  The

---

[10]  Plaintiff testified that he was "relegated" to the position of "scan boy," (Pl.'s Dep. 46),
and that scanning documents into a computer was his only duty during his reassignment, (*id.* at
50), something he had not been responsible for before, (*id.* at 50–51).

individuals Plaintiff identified "were not employed by the DOE for the period March 2014 forward." (*Id.* ¶ 132.)

### iv.   Alleged constitutional violations

"Plaintiff asserted a claim that DOE violated his rights under the First Amendment." (*Id.* ¶ 133.)  Plaintiff "asserted his [F]irst [A]mendment claim because Peter Quinn, Chief Information Officer, advised [him] that during work hours he should refrain from sending non-work[-]related emails to coworkers advocating [his] philosophies." (*Id.* ¶ 134.)

"Plaintiff asserted a claim that DOE violated his right to due process." (*Id.* ¶ 135.) "When asked the basis of his due process claim, [P]laintiff testified 'I explained it all in [the complaint].'" (*Id.* ¶ 136.)

"Plaintiff asserted a claim that he had been the victim of an unreasonable search and seizure in violation of the Fourth Amendment." (*Id.* ¶ 137.)  "When asked the basis for his unreasonable search and seizure claim, [P]laintiff testified that computers had been removed from under his work desk and unspecified 'information' — but no personal property — had been obtained from his briefcase by an unknown person."[11] (*Id.* ¶ 138.)

### v.   Plaintiff's resignation

"On or about April 9, 2019, the Special Commissioner of Investigation for the New York City School District . . . recommended that the DOE take appropriate disciplinary action against [P]laintiff following the conclusion of [an] independent investigation wherein [the Commissioner] substantiated that [P]laintiff falsified payroll hours." (*Id.* ¶ 24.)  "On or about

---

[11]   In the TAC, Plaintiff does not include any allegations concerning the removal of information from a briefcase he owned.  Plaintiff argues in his opposition to the motion that on December 14, 2017 — the night of the DOE's 2017 holiday party — Defendant searched his briefcase and "reviewed and took" anything in it that was "useful for this case." (Pl.'s Opp'n 30–31.)

June 24, 2019, the DOE preferred charges against [P]laintiff alleging misconduct, neglect of

duty, insubordination, time theft, fraud, larceny, unauthorized lateness, conduct that may

constitute a crime in violation of the New York State Penal Law and conduct unbecoming of his

profession." (*Id.* ¶ 25.) "The disciplinary charges and specifications . . . were predicated on,

among other things, [sixty-seven] documented instances of fraudulent time keeping in 2017,

which resulted in [P]laintiff's receipt of thousands of dollars of unearned wages." (*Id.* ¶ 26.) "At

the advice of counsel provided by his union, [P]laintiff chose to resign from the DOE with a

neutral reference in consideration of the DOE discontinuing the disciplinary charges against

him." (*Id.* ¶ 27.)

  "On October 30, 2019, [P]laintiff, with the advice and consultation of legal counsel,

entered into a stipulation of settlement with the DOE in which he knowingly waived his right to

make any legal or equitable claims or to initiate legal proceedings or administrative hearings of

any kind against the DOE, relating to or arising out of the facts and circumstances of the

disciplinary matter and [his] resignation"[12] (the "October 2019 Stipulation of Settlement"). (*Id.*

¶ 28; Oct. 2019 Stipulation of Settlement, annexed to Brown Decl. as Ex. Y, Docket Entry No.

144-25.)

  Plaintiff resigned from the DOE "effective January 3, 2020." (Def.'s 56.1 ¶ 20.)

"Plaintiff's civil service title at the time of resignation was Telecommunications Associate Level

4, and he worked within the DOE's [DIIT]." (*Id.* ¶ 21.) "Plaintiff's office job within the DOE

was '[S]enior [P]roject [M]anager' and [his] job responsibilities included overseeing and

---

  [12]  Plaintiff asserts that these facts are "based on the false information DIIT intentionally
gave to the [Commissioner], occasioning a cascade of problems." (Pl.'s Sur-Reply 7–8.)  The
Court notes that there is no evidence in the record that would tend to undermine these facts.

directing outside vendors in the installation, maintenance, troubleshooting and setting up of hardware and software related to telephone systems in DOE schools." (*Id.* ¶ 22.) "Plaintiff had no employees that reported directly to him" and "was never employed as a supervisor." (*Id.* ¶ 23.) Neither "[P]laintiff's salary nor [his] benefits have ever decreased at any time while he was employed by the DOE."[13] (*Id.* ¶ 29.)

## II. Discussion

### a. Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021); *Windward Bora, LLC v. Wilmington Sav. Fund Soc'y*, 982 F.3d 139, 142 (2d Cir. 2020). The court must "constru[e] the evidence in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (first quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 118 (2d Cir. 2001); and then quoting *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006)). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury

---

[13] Plaintiff notes that he was suspended without pay from July 1 to July 30, 2019. (*Id.* at 5, 8; *see* June 24, 2019 Letter, annexed to Brown Decl. as Ex. X, Docket Entry No. 144-24 (informing Plaintiff of his suspension without pay for thirty days pending trial of the disciplinary charges preferred against him).)

could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

In reviewing a motion for summary judgment involving a pro se litigant, "special solicitude should be afforded." *Gachette v. Metro N.-High Bridge*, 722 F. App'x 17, 19 (2d Cir. 2018) (alteration omitted) (quoting *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988)); *see also Essani v. Earley*, No. 13-CV-3424, 2021 WL 1579671, at *4 (E.D.N.Y. Apr. 22, 2021) (quoting *Graham*, 848 F.2d at 344). The court must "read his pleadings 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). However, this "does not relieve [the *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.* (quoting *Jorgensen v. Epic/Sony Recs.*, No. 00-CV-9181, 2002 WL 31119377, at *1 (S.D.N.Y. Sept. 24, 2002)).

In cases that involve claims of discrimination, courts must use "an extra measure of caution" in determining whether to grant summary judgment "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)). However, "the salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to . . . other areas of litigation." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d

Cir. 1985)).  Striking this balance requires that to survive summary judgment "a plaintiff must

provide more than conclusory allegations to resist a motion for summary judgment," *Holcomb v.*

*Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); *see also Gorzynski v. JetBlue Airways Corp.*, 596

F.3d 93, 101 (2d Cir. 2010), and courts may grant summary judgment against "discrimination

claims in cases lacking genuine issues of material fact," *Holtz*, 258 F.3d at 69 (quoting *McLee v.*

*Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997)).  "Because the district court is not to resolve

issues of fact on a summary judgment motion, 'its determination of whether the circumstances

give rise to an inference of discrimination must be a determination of whether the proffered

admissible evidence shows circumstances that would be sufficient to permit a rational finder of

fact to infer a discriminatory motive.'"  *Abdelal v. Police Comm'r*, 857 F. App'x 30, 31 (2d Cir.

2021) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F. 3d 29, 38 (2d Cir. 1994) (alterations

omitted)).

### b.  Plaintiff's previously dismissed claims are barred by the law of the case doctrine

Defendant argues that the claims in the TAC that the Court previously dismissed with

prejudice in the March 2017 Decision must be dismissed under the law of the case doctrine.

(Def.'s Mem. 4 (listing claims).)

Plaintiff argues that "Defendant failed to delineate properly which claims are considered

duplicative."  (Pl.'s Opp'n 42.)  In addition, Plaintiff appears to argue that he has plausibly

alleged the claims the Court previously dismissed with prejudice.  (*See generally id.* at 42–60.)

"The law of the case doctrine commands that 'when a court has [explicitly or implicitly]

ruled on an issue, that decision should generally be adhered to by that court in subsequent stages

in the same case.'"  *Ragbir v. Lynch*, 640 F. App'x 105, 108 (2d Cir. 2016) (quoting *Johnson v.*

*Holder*, 564 F.3d 95, 99 (2d Cir. 2009)); *Ariz. Premium Fin. Co. v. Emp'rs Ins. of Wausau*, 586

F. App'x 713, 716 (2d Cir. 2014) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983))).  To prevent the parties from re-litigating previously decided issues, the doctrine "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Jackson v. New York State*, 523 F. App'x 67, 69 (2d Cir. 2013) (quoting *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008)).  A court should therefore be "'loathe' to revisit an earlier decision 'in the absence of extraordinary circumstances.'" *N. River Ins. Co. v. Phila. Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)); *see also Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999) ("[T]he decision whether or not to apply law-of-the-case is . . . informed principally by the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the doctrine." (quoting *United States v. Uccio*, 940 F.2d 753, 757–58 (2d Cir. 1991))).  Although prudential and discretionary, the doctrine may be raised by a court *sua sponte*.  *See United States v. Lacouture*, 721 F. App'x 1, 4 (1st Cir. 2018) (citing *United States v. Wallace*, 573 F.3d 82, 90 n.6 (1st Cir. 2009)); *United States v. Anderson*, 772 F.3d 662, 669 (11th Cir. 2014); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551, 2012 WL 1890242, at *4 (E.D.N.Y. May 23, 2012).

Plaintiff has not shown cogent and compelling reasons for the Court to revisit its prior rulings dismissing with prejudice his (1) pre-March 19, 2014 Title VII claims as time-barred; (2) discrimination claims for failure to state a claim; (3) hostile work environment claim for

failure to state a claim; and (4) state and city law claims for failure to file a notice of claim.[14]

(Mar. 2017 Decision 48.)  Accordingly, the Court does not consider these claims.

The remaining Title VII claims in the TAC include Plaintiff's (1) twelve post-March 19,

2014 failure to promote claims; (2) repleaded disparate pay claim; (3) hostile work environment

claim based on his referral for a medical examination, temporary reassignment, and the removal

of his holiday decorations; (4) surviving retaliation claim based on his receipt of the April 22,

2014 Letter and two new retaliation claims based on his medical examination and temporary

reassignment; and (5) newly alleged claims for violations of his First Amendment and due

process rights, and for an unreasonable search and seizure.  Because of the law of the case

doctrine, Plaintiff's remaining state and city law claims include only those that he raised for the

first time in the TAC.  Therefore, Plaintiff's only valid NYSHRL and NYCHRL claims are his

claims of (1) failure to promote to the positions of Strategic Initiatives Manager, Chief

---

[14]  Plaintiff raised discrimination claims under Title VII based on discrete acts, including Defendant (1) failing to invite Plaintiff to two staff meetings, (2) removing computers from under his desk, and (3) issuing the April 22, 2014 Letter.  The Court dismissed these claims with prejudice because Plaintiff failed to allege how any of these actions had a material impact on his employment and thus failed to allege that they constituted adverse employment actions.  (Mar. 2017 Decision 20–24.)  Plaintiff also raised a Title VII discrimination claim based on his constructive discharge, but because he alleged he was still employed, the Court also dismissed this claim with prejudice.  (*Id.* at 27.)  The Court dismissed Plaintiff's Title VII hostile work environment claim without leave to amend because his allegations were insufficient to allege animus based on his race, color, or ethnicity and because they did not demonstrate objectively severe or pervasive acts that rendered his work environment hostile.  (*Id.* at 27–31); *see, e.g.*, *Quirino v. New Jewish Home*, No. 19-CV-5778, 2021 U.S. Dist. LEXIS 248295, at *15 (S.D.N.Y. Dec. 29, 2021) (finding that "absent compelling circumstances, [the] [p]laintiff should be barred from using her amended pleading to revive claims that were previously dismissed with prejudice or without leave to amend" and collecting cases), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 8115 (S.D.N.Y., Jan. 14, 2022); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551, 2012 WL 1890242, at *8 (E.D.N.Y. May 23, 2012) (refusing to revisit previously rejected arguments that the amended complaint failed to state a claim because its earlier ruling was the law of the case); *cf. Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 260 (S.D.N.Y. 2013) ("The law of the case does not apply where none of the dismissed claims . . . were dismissed with prejudice, and express permission was granted to replead.").

Information Officer, Instructional Technology Director, and Chief Product Officer; (2) hostile work environment based on his referral for a medical examination, temporary reassignment, and the removal of his holiday decorations; (3) retaliation based on his medical evaluation and temporary reassignment; and (4) his claims under the New York State Constitution for violations of his freedom of speech, due process rights, and for an unreasonable search and seizure.

### c.   Claims barred on procedural grounds

Defendant argues that (1) two of Plaintiff's Title VII failure to promote claims based on jobs to which he applied in April of 2016 are time-barred because he did not file an EEOC charge regarding these events until more than 300 days later, on April 17, 2017 — the date of the 2017 EEOC Charge; (2) Plaintiff's Title VII claims based on events that occurred after the filing of the 2017 EEOC Charge on April 17, 2017, are barred by his failure to exhaust administrative remedies; and (3) Plaintiff's NYSHRL and NYCHRL claims are barred by his failure to file an adequate notice of claim.  (Def.'s Mem. 5–7.)  The Court considers these arguments below.

### i.   Plaintiff's Title VII failure to promote claims are not time-barred

Defendant argues that Plaintiff's claims of failure to promote to the positions of Strategic Initiatives Manager, to which he applied on April 8, 2016, and Chief Information Officer, to which he applied on April 27, 2016 — both of which were alleged for the first time in the TAC — are time-barred because Plaintiff did not file an EEOC charge regarding these events until more than 300 days later, on April 17, 2017.  (Def.'s Mem. 5–6.)

Plaintiff argues that his claims are not time-barred because they are "reasonably related to the failure to promote claims that are already in Court."  (Pl.'s Opp'n 62.)

In New York, a federal employment discrimination claim is time-barred unless the plaintiff first files an EEOC charge within 300 days of the alleged discrimination.  42 U.S.C. § 2000e-5(e)(1); *Rasko v. N.Y.C. Admin. for Children's Servs.*, 734 F. App'x 52, 54 (2d Cir.

2018) ("Under Title VII, a plaintiff in New York must file a complaint with the EEOC within 300 days of a discriminatory act." (first citing 42 U.S.C. 2000e-5(e)(1); and then citing *Pikulin v. City Univ. of New York*, 176 F.3d 598, 599 (2d Cir. 1999))); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-5(e)(1)); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010).  This requirement is analogous to a statute of limitations.  *Vega*, 801 F.3d at 79; *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) (dismissing as untimely claims based on conduct that occurred more than 300 days prior to the filing of EEOC charge).

Although Plaintiff applied to the Strategic Initiatives Manager and Chief Information Officer positions in April of 2016, more than 300 days before he filed the April 2017 EEOC Charge, the statutory time-period for bringing a failure to promote claim does not begin to run on the day a plaintiff applies to a job but rather on the day the plaintiff receives notice that another individual received the promotion.  *See Cetina v. Longworth*, 583 F. App'x 1, 3 (2d Cir. 2014) (stating that the court "has held that the limitations period begins to run [for failure to promote claims] when the plaintiff receives notice of the adverse action" and collecting cases).  With respect to the Strategic Initiatives Manager position, Plaintiff testified that he could not remember if anyone was selected for this position, (*see* Dep. of Patrick Richard ("Pl.'s Dep.") 29–30, annexed to Brown Decl. as Ex. A, Docket Entry No. 144-1), and there is no other evidence in the record indicating if or when Plaintiff ever received notice that this position had been filled.  With respect to the Chief Information Officer position, Plaintiff indicated in the 2017 EEOC Charge that he "acknowledged that Mr. Peter Quinn, a white man, was selected for the position in or around October [of] 2016," and any date in October of 2016 would be within

26

300 days of April 17, 2017, when Plaintiff filed the 2017 EEOC Charge.  (2017 EEOC Charge; *see also* Pl.'s Dep. 30–31 (stating that Quinn was "eventually" hired).)

Accordingly, there is no basis for the Court to conclude that Plaintiff's claim of failure to promote to the Strategic Initiatives Manager position is time-barred, and it appears from the record that his claim of failure to promote to the Chief Information Officer position is not time-barred.  *See Johnson v. Dynamic Educ. Sys.*, No. 08-CV-5233, 2011 WL 2635444, at *5–6 (E.D.N.Y. July 5, 2011) (finding summary judgment "not warranted" where the defendant failed to meet its "burden of establishing that [the plaintiff's] claim [was] time barred" because it "ha[d] not identified any evidence" that spoke to when the plaintiff knew or should have known she had been denied the promotion); *Arroyo v. N.Y. Downtown Hosp.*, No. 07-CV-4275, 2010 WL 3861071, at *4 (E.D.N.Y. Sept. 28, 2010) (same).  Therefore, the Court will consider the merit of these claims below.

### ii.   Exhaustion of administrative remedies

Defendant argues that Plaintiff's "federal claims" based on events that occurred after Plaintiff filed the 2017 EEOC Charge — including his receipt of additional workplace performance letters, his referral for a medical evaluation, his temporary reassignment to a different work location during the pendency of the medical evaluation, and the removal of his holiday decorations during his temporary reassignment — are barred by his failure to exhaust administrative remedies.  (*See* Def.'s Mem. 5.)  Defendant does not specify which Title VII claims it believes are barred.  However, based on the Court's reading of the TAC, the Court understands Plaintiff to be raising additional retaliation claims based on his referral for a medical evaluation and his temporary reassignment and to be raising a new hostile work environment claim based on these events and the removal of his holiday decorations.  (*See id.*)  Defendant

also argues that Plaintiff's claim of failure to promote to the position of Chief Product Officer, to which he applied on December 6, 2017, is not exhausted.  (*Id.* at 12 n.6; TAC ¶ 328.)

Plaintiff argues that these claims are not barred because they are "reasonably related to the claims in his ongoing lawsuit."  (Pl.'s Opp'n 62.)

Before bringing a federal claim under Title VII, a plaintiff must first file a complaint with the EEOC or equivalent state agency.  42 U.S.C. § 2000e-5(e)(1).  Under Title VII, a complainant must "exhaust" her administrative remedies by filing a complaint with the EEOC or an authorized state agency prior to the commencement of a Title VII action in federal court, and that complaint must name the defendant.  *See Edo v. Antika Pizzeria Astoria, Inc.*, 852 F. App'x 618, 619 (2d Cir. 2021) ("Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." (quoting *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006))); *McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41, 43 (2d Cir. 2020) ("Pursuant to Title VII and the [Americans with Disabilities Act], a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC within 300 days of a discriminatory act." (citing 42 U.S.C. §§ 2000e-5(e)(1), 12117(a))); *Duplan v. City of New York*, 888 F.3d 612, 624 (2d Cir. 2018) ("Exhaustion is 'an essential element of Title VII's statutory scheme.'" (quoting *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018))). However, "[c]laims not raised in an EEOC complaint . . . may be brought in federal court if they are reasonably related to the claim filed with the agency."  *Zarda*, 883 F.3d at 110 n.5 (alteration in original) (quoting *Williams*, 458 F.3d at 70); *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (same).  "Reasonably related" claims are recognized in three situations: where (1) the alleged discriminatory conduct "would fall within the 'scope of the EEOC investigation

which can reasonably be expected to grow out of the charge of discrimination'"; (2) the claim is

one of "retaliation by an employer against an employee for filing an EEOC charge"; and (3) the

plaintiff "alleges further incidents of discrimination carried out in precisely the same manner

alleged in the EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (quoting *Butts*

*v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402–03 (2d Cir. 1993)); *see*

*also Carter v. New Venture Gear, Inc.*, 310 F. App'x 454, 458 (2d Cir. 2009) (same).  "The

central question is whether the complaint filed with the EEOC gave that agency 'adequate notice

to investigate discrimination on both cases.'"  *Ximines v. George Wingate High Sch.*, 516 F.3d

156, 158 (2d Cir. 2008) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)); *see also*

*Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011) ("A new allegation

will be considered reasonably related if the administrative charge provided the EEOC with

sufficient notice to investigate the allegation.").  Courts look at "factual allegations made in the

EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving" to

determine whether the claims are reasonably related.  *Littlejohn*, 795 F.3d at 322 (alteration

omitted) (quoting *Deravin*, 335 F.3d at 201); *Scott v. N. Manor Multicare Ctr., Inc.*, No. 15-CV-

2495, 2018 U.S. Dist. LEXIS 54730, at *17 (S.D.N.Y. Mar. 30, 2018) ("[T]he 'relatedness'

analysis is 'intimately connected to the facts asserted in the EEOC complaint,' 'and does not

depend on the boxes checked or labels applied by the plaintiff.'" (citation omitted) (first quoting

*Williams*, 458 F.3d at 71; and then quoting *Carby v. Holder*, No. 11-CV-5775, 2013 WL

3481722, at *5 (S.D.N.Y. July 10, 2013))).

### A.   Plaintiff's Title VII retaliation claims are exhausted

Plaintiff's new retaliation claims based on events that occurred after April 17, 2017 are

reasonably related to the 2017 EEOC Charge.

In the April 2017 EEOC charge, Plaintiff claimed that he was retaliated against for filing this lawsuit when he was "compell[ed] . . . into a March 7, 2017 meeting" where his supervisor and DOE's Human Resources Manager "outlined [DOE's] opinion that [Plaintiff] [had] been insubordinate; that [he does] not understand . . . what is expected of [him], and that [his] overall work behavior is less than acceptable." (2017 EEOC Charge.)  When Plaintiff subsequently filed the TAC, he added allegations that, following his filing of the 2017 EEOC Charge, Defendant continued to retaliate against him for filing this lawsuit by referring him for a medical evaluation and temporarily reassigning him to a different work location during the pendency of the medical evaluation in December of 2017.[15]  (*See* TAC ¶ 265 (alleging that the "December 15, 2017 reassignment" and "mental checkup" constitute "retaliation [for] Plaintiff's ongoing lawsuit").)

Plaintiff's claims that Defendant retaliated against him for his ongoing lawsuit by referring him for a medical evaluation and temporarily reassigning him are reasonably related to the 2017 EEOC Charge that Defendant retaliated against him for filing this lawsuit by compelling him to attend the March 7, 2017 work-performance meeting.  Because the 2017 EEOC Charge put the EEOC on notice that Defendant had allegedly retaliated against Plaintiff for filing this lawsuit, the new allegations of continuing retaliation based on the ongoing lawsuit would fall within the scope of the EEOC's investigation.  *See Kangethe v. District of Columbia*, 206 F. Supp. 3d 661, 667, 673–74 (D.D.C. 2016) (finding allegations that the defendant retaliated against the plaintiff for his ongoing lawsuit by denying him leave to attend the deposition of a party to the lawsuit reasonably related to allegations in EEOC charge that the defendant failed to promote the plaintiff in retaliation for filing the lawsuit).  In addition, the

---

[15]  Plaintiff also added allegations that his holiday workplace cubicle decorations were removed during his temporary reassignment, but the TAC does not specify whether this act sounds in discrimination or retaliation.

retaliatory actions cited in the 2017 EEOC Charge (i.e., Defendant forcing Plaintiff to attend the March 2017 work-performance meeting) and the TAC (i.e., Defendant referring Plaintiff for a medical evaluation) are also factually related, as Defendant's memorandum of reasons for Plaintiff's medical referral lists Plaintiff's behavior at the March 2017 meeting as one reason for the medical referral.  (*See* Referral for Medical Examination, annexed to Brown Decl. as Ex. W, Docket Entry No. 144-23, at 3.)  Therefore, Plaintiff's claims of retaliation based on these acts are exhausted and Plaintiff is not barred from pursuing these claims.

## B.   Plaintiff's Title VII hostile work environment claim is unexhausted

To the extent the TAC raises a hostile work environment claim based on Plaintiff's "reassign[ment]" and referral for a "psychiatric evaluation," which Plaintiff alleges constitute "a continuing pattern of harassment, meant to intimidate and compel Plaintiff to resign as any reasonable employee would," (*see* TAC ¶ 1), this claim is not reasonably related to the charges in the 2017 EEOC Charge.  Because the 2017 EEOC Charge did not mention a claim of hostile work environment, it did not put the EEOC on notice of this claim, and therefore this claim would not fall within the scope of the EEOC's investigation into the alleged retaliation.  Nor would this claim fall under the other exceptions to the exhaustion requirements, as it is not a claim of retaliation for filing the 2017 EEOC Charge and does not involve allegations of further incidents of discrimination carried out in precisely the same manner as alleged in the 2017 EEOC Charge.

## C.   Plaintiff's failure to promote claim is exhausted

In the 2017 EEOC Charge, Plaintiff alleged failure to promote claims regarding the positions of Strategic Initiatives Manager, Chief Technology Officer, and Instructional Technology Officer, to which he applied in 2016.  (2017 EEOC Charge 2.)  When Plaintiff

subsequently filed the TAC, he added a claim for failure to promote to the position of Chief Product Officer, to which he applied on or around December 6, 2017.  (TAC ¶ 328.)

Plaintiff's new claim of failure to promote to the position of Chief Product Officer is reasonably related to the failure to promote claims in the 2017 EEOC Charge.  Plaintiff applied to this position in December of 2017, prior to the EEOC's determination in its March 15, 2018 right-to-sue letter.  Because there is no information in the record as to when Plaintiff received notice that he did not get the position, it remains possible that his new failure to promote claim accrued during the EEOC's investigation and might have fallen within the scope of that investigation.  *Cf. Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 03-CV-8363, 2004 WL 626180, at *3 (S.D.N.Y. Mar. 30, 2004) (finding that new claim of failure to promote in 2004 not raised in 2003 EEOC complaint was unrelated to prior failure to promote claims because it fell "well after the date of the EEOC determination in 2003" and thus "did not fall within the scope of the EEOC investigation," did "not involve retaliation for [the] plaintiff filing the EEOC charge," and was not a "further incident of discrimination carried out in precisely the same manner" because the plaintiff did "not allege[] any discriminatory policy that would convert the three distinct alleged failures to promote into one continuing violation").  Therefore, the Court declines to dismiss this claim for lack of administrative exhaustion.

Accordingly, Plaintiff's Title VII hostile work environment claim based on his referral for a medical evaluation, temporary reassignment, and the removal of his decorations is barred because he failed to exhaust his administrative remedies and his Title VII retaliation claims based on these acts, and his Title VII claim of failure to promote to the Chief Product Officer position, are not barred.

### iii.   State and city law claims

Defendant argues that Plaintiff's state and city law claims are barred because Plaintiff

"filed two notice[s] of claims against the DOE . . . but neither notice of claim adequately set

forth any cogent details regarding [P]laintiff's purported claims," as required by New York

General Municipal Law § 50-e[2].[16]  (Def.'s Mem. 6–7.)

Plaintiff argues that his state and city law claims are not barred by failure to file an

adequate notice of claim because he filed two "timely notices of claim with timely updates

throughout the lawsuit period" and Defendant "also knew the case was being litigated in Court."

(Pl.'s Opp'n 62.)

Following the Court's March 2017 Decision dismissing Plaintiff's state and city law

claims for failure to file a timely notice of claim and denying as untimely his application to file a

late notice of claim, Plaintiff nevertheless filed the 2017 Notice of Claim for "failure to promote,

harassment, [and] various acts of discrimination[,] which include disparate pay, hostile work

---

[16]  As further discussed below, the Court notes that General Municipal Law § 50-e applies only to tort claims and does not apply to employment discrimination claims under the NYSHRL and NYCHRL.  *See, e.g., Margerum v. City of Buffalo*, 24 N.Y.3d 721, 730 (2015) (holding that notice-of-claim requirements set forth in sections 50-e and 50-i do not apply "in an action based on the Human Rights Law" against a municipality); *Pohlman v. Village of Freeport*, No. 19-CV-5277, 2020 WL 5878257, at *5 (E.D.N.Y. Sept. 30, 2020) (stating that section 50-e does "not apply to employment discrimination claims, including those under the NYHRL, as [it is] limited to claims . . . 'founded in tort'" (quoting *Skates v. Incorporated Village of Freeport*, No. 15-CV-1136, 2016 WL 1459659, at *20 (E.D.N.Y. Jan. 28, 2016), *report and recommendation adopted*, 2016 WL 1452391 (E.D.N.Y. Apr. 12, 2016))); *Anderson v. City of New York*, No. 06-CV-5726, 2012 WL 6720694, at *5 (E.D.N.Y. Dec. 27, 2012) (collecting cases).  Therefore, the Court understands Defendant to be arguing that Plaintiff's discrimination claims under the NYSHRL and NYCHRL fail under New York Education Law § 3813(1), as Defendant argued in its supplemental briefing on its motion to dismiss.  (*See* Def.'s Suppl. Mem. in Supp. of Def.'s Mot. to Dismiss, Docket Entry No. 53; Min. Order dated Oct. 4, 2017); *see also United States v. N.Y.C. Dep't of Educ.*, No. 16-CV-4291, 2017 WL 435940, at *6 (S.D.N.Y. Jan. 31, 2017) (finding that NYSHRL and NYCHRL employment discrimination claims are not subject to General Municipal Law § 50-e's notice of claim requirement because they are not founded in tort but are subject to New York Education Law § 3813(1)'s notice of claim requirement), *report and recommendation adopted*, 2017 WL 1319695 (S.D.N.Y. Apr. 4, 2017).

environment[,] and retaliation," as well as for "libel and defamation."  (2017 Notice of Claim 73.)

On March 15, 2018, Plaintiff filed an "update" to the 2017 Notice of Claim, adding claims that Defendant had recently failed to promote him to "the Chief Product Officer" position, retaliated against him for "fil[ing] a federal lawsuit" and complaints "to various organizations including the EEOC[] and the DOE," and infringed his "Civil Rights, Freedom of Speech, Press, Assembly, Petition, and Due Process."  (Mar. 2018 Update 102.)  Plaintiff also added allegations that Defendant removed his holiday decorations from his cubicle while he was on temporary reassignment pending a mental evaluation, and that he received an e-mail on January 18, 2018, asking him not to send emails to DOE staff advocating his thoughts about education and not to ask co-workers to sign petitions.  (*Id.* at 105–07.)

On April 13, 2018, Plaintiff filed the TAC, adding similar allegations and claims.  (*See generally* TAC.)  As noted above, Plaintiff's only remaining state and city law claims are those that he pled for the first time in the TAC, including his (1) new failure to promote claims for the positions of Strategic Initiatives Manager, Chief Information Officer, Instructional Technology Director, and Chief Product Officer; (2) new retaliation claims based on a referral for a medical evaluation and temporary reassignment to a different work location during the pendency of the medical evaluation in December of 2017; (3) hostile work environment claim based on these events and the removal of his holiday decorations in December of 2017; and (4) claims that Defendant violated his freedom of speech and due process rights and subjected him to an

unreasonable search and seizure in violation of the New York State Constitution.[17]  The Court addresses these claims below.

### 1.   NYSHRL and NYCHRL claims

Plaintiff alleges failure to promote, retaliation, and hostile work environment claims under the NYSHRL and the NYCHRL.

Under New York law, a party pursuing a non-tort action against the DOE must file a notice of claim within three months of the accrual of the claim.  N.Y. Educ. Law § 3813(1) ("No action or special proceeding, for any cause whatever, . . . involving the rights or interest of any district or any such school shall be prosecuted or maintained against any . . . board of education, . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim."); *see Bernheim v. N.Y.C. Dep't of Educ.*, No. 19-CV-9723, 2020 WL 3865119, at *4 (S.D.N.Y. July 9, 2020) ("The notice of claim requirement applies to claims of discrimination against school districts under the NYCHRL and NYSHRL."), *report and recommendation adopted*, 2020 WL 4383503 (S.D.N.Y. July 31, 2020); *Seifullah v. City of New York*, 74 N.Y.S.3d 506, 507 (2018) ("[S]ince [the plaintiff's] complaint seeks both equitable relief and the

---

[17]  On September 12, 2018, several months after Plaintiff filed the TAC, Plaintiff filed another update to his notice of claim, adding additional references to his December 2017 reassignment to a different work location and submitting the TAC "as an amendment to the March 15, 2018 Notice of Claim, appended."  (Sept. 2018 Update 7, Docket Entry No. 102-1.)  Because Plaintiff filed the September 2018 Update after he filed the TAC, the September 2018 Update cannot provide notice of the claims in the TAC, and the Court does not consider it.  *See In re N.Y.C. Dep't of Educ.*, No. 15-CV-7150, 2019 WL 1433163, at *12 (S.D.N.Y. Mar. 29, 2019) ("It is well-settled that compliance with Education Law § 3813 is a condition precedent to commencement of an action against a school board, its members or employees." (quoting *Grennan v. Nassau County*, No. 04-CV-2158, 2007 WL 952067, at *17 (E.D.N.Y. Mar. 29, 2007))).

recovery of damages, the filing of a notice of claim . . . was a condition precedent to the maintenance of this action against the defendant[] Department of Education . . . ."); *see also Collins v. City of New York*, 156 F. Supp. 3d 448, 460 (S.D.N.Y. 2016) ("New York Education Law § 3813 requires a plaintiff to file a notice of claim prior to initiating a lawsuit against a school, school district, board of education, or education officer.").

"[S]ince the purpose of § 3813 is to give the DOE prompt notice of a claim so as to enable a timely investigation, the essential elements of a notice of claim under § 3813 are 'the nature of the claim, the time when, the place where and the manner in which the claim arose . . . .'" *Bayside Refrig. Inc. v. Dep't of Educ.*, No. 15771/11, 2012 N.Y. Misc. LEXIS 5140, at *2–3 (Sup. Ct. Sept. 13, 2012) (quoting *Parochial Bus Sys., Inc. v Bd. of Educ.*, 60 N.Y.2d 539, 547 (1983)). Failure to comply with section 3813 is a defect in pleading and entitles a defendant to judgment as a matter of law. *Parochial Bus Sys.*, 60 N.Y.2d at 548–49; *H. Verby Co. v. Carle Place Union Free Sch. Dist.*, 773 N.Y.S.2d 601, 601 (App. Div. 2004); *Kernan Library Office Grp. Inc. v. Bd. of Educ. of City Sch. Dist. of City of Schenectady*, 589 N.Y.S.2d 953, 953 (App. Div. 1992). However, some courts have recognized that an EEOC charge can satisfy the requirements of section 3813 so long as the EEOC charge: (1) places the school district on notice of the precise claims alleged; and (2) is served on the party required by section 3813 within the statutory time period. *See Riccardo v. N.Y.C. Dep't of Educ.*, No. 16-CV-4891, 2016 WL 7106048, at *8 (S.D.N.Y. Dec. 2, 2016) ("[C]ourts in this Circuit have begun to coalesce around the rule that an EEOC complaint can satisfy the notice of claim requirement 'in limited circumstances where the charge puts the school district on notice of the precise claims alleged, is served on the governing board of the district (and not a different arm of the district), and is served within the statutory time period.'" (collecting cases)), *report and recommendation*

*adopted*, 2017 WL 57854 (S.D.N.Y. Jan. 4, 2017); *Brtalik v. S. Huntington Union Free Sch. Dist.*, No. 10-CV-10, 2010 WL 3958430, at *5 (E.D.N.Y. Oct. 6, 2010) (same); *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 366–71 (W.D.N.Y. 2010); *see also, e.g.*, *Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 196 (S.D.N.Y. 2006) ("Even if an EEOC charge could be considered a substitute for a notice of claim — and courts have repeatedly declared that it cannot — this notice of claim would not suffice because it was served (on the wrong party, which is also a fatal defect) over eight months after plaintiff was fired."); *Kushner v. Valenti*, 285 F. Supp. 2d 314, 316 (E.D.N.Y. 2003) (holding that an EEOC notice that was mailed to the school district was sufficient to notify the district of the claims included in the EEOC notice); *Mennella v. Uniondale Union Free Sch. Dist.*, 732 N.Y.S.2d 40, 40 (App. Div. 2001) (concluding that a petition to the Commissioner of Education constituted the functional equivalent of a notice of claim where it provided notice of the nature of the claim and the essential facts underlying the claim).

## A.   Failure to promote claims

Plaintiff alleges failure to promote to the positions of (1) Strategic Initiatives Manager, to which he applied on April 8, 2016, (2) Chief Information Officer, to which he applied on April 27, 2016, (3) Instructional Technology Director, to which he applied on August 12, 2016, and (4) Chief Product Officer, to which he applied on December 6, 2017.

Plaintiff's 2017 Notice of Claim and March 2018 Update do not appear sufficient to provide notice of his failure to promote claims.[18]  The 2017 Notice of Claim merely states that

---

[18]   Plaintiff was required to file a notice of claim within "three months after the accrual" of these claims.  N.Y. Educ. Law § 3813(1).  Under New York law, a failure to promote claim accrues when "another individual is improperly promoted to a position that should have been offered to the plaintiff."  *Nielsen v. United Parcel Serv. Inc.*, 619 N.Y.S.2d 844, 846 (App. Div. 1994) ("[I]t is settled law that a separate cause of action for discrimination in promotion accrues

"[f]rom 2013 to [June 1, 2017], Plaintiff applied for fourteen (14) positions for which he had been highly qualified to no avail." (2017 Notice of Claim 76.) Similarly, the March 2018 Update merely states that the "latest" failure to promote was to the position of Chief Product Officer, for which the application period closed on December 8, 2017. (TAC 102.) Although these notices arguably describe the nature of Plaintiff's claims and the general time they arose, they do not describe the place and manner in which they arose or provide any additional details, and, with respect to three of Plaintiff's claims, they do not identify the relevant positions to which Plaintiff alleges Defendant failed to promote him. *See, e.g.*, *Logan v. City of Schenectady*, No. 18-CV-1179, 2019 WL 3803631, at *10 (N.D.N.Y. Aug. 13, 2019) ("Merely providing notice of the occurrence is not adequate to constitute notice of a particular claim." (quoting *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 76 (S.D.N.Y. 2016))). In addition, the 2017 Notice of Claim cannot provide notice of a claim for failure to promote Plaintiff to the Chief Product Officer position, as Plaintiff did not apply to this position until December 6, 2017 — months after he filed the 2017 Notice of Claim on June 1, 2017. Finally, even if the Court found the 2017 EEOC Charge sufficient to provide notice of Plaintiff's claims, Plaintiff does not allege that he served the 2017 EEOC Charge on any appropriate entity or individual, or that he did so within the time-period required. Therefore, as the Court explained in the March 2017 Decision, Plaintiff's EEOC charge "does not satisfy the notice-of-claim requirements." (Mar. 2017 Decision 44); *see also, e.g.*, *Legra v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 14-

---

every time another individual is improperly promoted to a position that should have been offered to the plaintiff."). Plaintiff testified that he is unaware if anyone received the Strategic Initiatives Manager position, (Def.'s 56.1 ¶ 79), and there is no other evidence in the record as to when Defendant filled these positions. Because the Court is therefore unable to determine when these claims accrued and whether the 2017 Notice of Claim and March 2018 Update were timely, the Court considers both to determine whether either one provides adequate notice of Plaintiff's claims.

CV-9245, 2016 WL 6102369, at *3 (S.D.N.Y. Oct. 19, 2016) (dismissing pro se plaintiff's state

law claims where she did not allege that her EEOC charge provided adequate notice of her

claims, or that she served the notice on the district within the required statutory period).

Because the 2017 Notice of Claim and March 2018 Update do not appear sufficient to

provide notice of Plaintiff's failure to promote claims, except perhaps with respect to the position

of Chief Product Officer, which the March 2018 Update at least identifies and for which it

provides a specific date, the Court dismisses these claims without prejudice.  *See, e.g.*, *Pritchard*

*v. Curtis*, 957 N.Y.S.2d 440, 443 (App. Div. 2012) (noting that "failure to comply with a

condition precedent related to a statutory notice of claim . . . affect[s] subject matter jurisdiction

because the municipality or governmental authority 'waived immunity and consented to be sued

only in the event that certain jurisdictional conditions precedent are complied with'" (quoting

*Lumbermens Mut. Cas. Co. v Port Auth. of N.Y. & N.J.*, 525 N.Y.S.2d 343 (1988))); *Yennard v.*

*Boces*, No. 16-CV-556, 2017 U.S. Dist. LEXIS 226802, at *46 n.13 (N.D.N.Y. Mar. 27, 2017)

(collecting cases).  Nevertheless, the Court considers these claims on their merits and, for the

reasons discussed below, finds that they also fail as a matter of law.

### B.   Retaliation and hostile work environment claims

Plaintiff's remaining NYSHRL and NYCHRL claims also include retaliation and hostile

work environment claims based on his being required to take a medical evaluation and being

temporarily reassigned during the pendency of that examination, and, with respect to his hostile

work environment claims, also based on the removal of his holiday decorations.  These events

took place from December 15, 2017, through early January of 2018 and are therefore described

in the March 2018 Update, which indicates that it is notifying Defendant of, among other things,

ongoing retaliation "for having file[d] a federal lawsuit" and of "creating a hostile work

environment."  (Mar. 2018 Update 104.)  In addition, the March 2018 Update is timely, as

Plaintiff filed it on March 15, 2018, and these events began exactly three months prior, on December 15, 2017.  Accordingly, the Court declines to dismiss these claims as barred for failure to file an adequate notice of claim.

### 2.   Claims under New York State Constitution

Plaintiff also alleges violations of his freedom of speech and due process rights and an unreasonable search and seizure under the New York State Constitution.  (TAC ¶¶ 347–352.)

Where a party is pursuing a tort action against the DOE, section 3813(2) of the New York Education Law provides that "no action . . . founded upon tort shall be prosecuted . . . unless a notice of claim shall have been made and served in compliance with" General Municipal Law section 50-e, which provides that notice of claim must be filed "within ninety days after the claim arises."  N.Y. Educ. Law § 3813(2); *see also* N.Y. Gen. Mun. Law § 50-e(a); *Miranda v. S. Country Cent. Sch. Dist.*, 461 F. Supp. 3d 17, 30 (E.D.N.Y. 2020), *reconsideration denied*, No. 20-CV-104, 2020 WL 4287165 (E.D.N.Y. July 27, 2020) (permitting claim to continue because the notice of claim requirement under section 3813 was satisfied); *see also Cardo v. Arlington Cent. Sch. Dist.*, 473 F. App'x 21, 24 (2d Cir. 2012) (affirming dismissal of state-law defamation claim against a school district pursuant to section 3813(2)); *Grantley v. City of New York*, No. 12-CV-8294, 2013 WL 6139688, at *3 (S.D.N.Y. Nov. 21, 2013) ("Under New York law, a plaintiff asserting state law tort claims against New York municipal entities or their employees acting within the scope of their employment must file a notice of claim within ninety days of the incident giving rise to the claim." (citing N.Y. Gen. Mun. Law §§ 50–e, 50-i)).  Section 50-e further provides that "[t]he notice "shall be served on the public corporation against which the claim is made."  N.Y. Gen. Mun. Law § 50-e(3)(a).

Notice under section 50-e "shall set forth: (1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place

where and the manner in which the claim arose; and (4) the items of damage or injuries

claimed." N.Y. Gen. Mun. Law § 50-e(2); *see also Clark v. N.Y.C. Hous. Auth.*, 514 F. Supp. 3d

607, 611 (S.D.N.Y. 2021) ("The notice of claim must set forth 'the nature of the claim' and 'the

time when, the place where and the manner in which the claim arose,' among other things."

(quoting N.Y. Gen. Mun. Law § 50-e(2))).  To determine whether a notice is sufficient under

General Municipal Law section 50-e(2), "courts should focus on whether the notice of claim

included information sufficient to enable the municipal defendant to investigate the claim and

whether, based on the claimant's description, municipal authorities could locate the place, fix the

time, and understand the nature of the accident." *Hudson v. N.Y.C. Transit Auth.*, 798 N.Y.S.2d

105, 106 (App. Div. 2005) (first citing *Brown v. City of New York*, 95 N.Y.2d 389, 393 (2000);

and then citing *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 358 (1981)); *see also Miranda*, 461

F. Supp. 3d at 30 (quoting *Hudson*, 798 N.Y.S.2d at 105).  The requirement of section 50-e need

not be "stated with literal nicety or exactness," and the question is simply whether the notice

includes "information sufficient to enable the city to investigate." *Parise v. N.Y.C. Dep't of

Sanitation*, 306 F. App'x 695, 697 (2d Cir. 2009) (quoting *Brown*, 95 N.Y.2d at 393); *see also

Rentas v. Ruffin*, 816 F.3d 214, 227 (2d Cir. 2016) ("Although the notice must set forth 'the

nature of the claim,' it need not 'state a precise cause of action *in haec verba*.'" (citation omitted)

(first quoting N.Y. Gen. Mun. Law § 50-e; and then quoting *DeLeonibus v. Scognamillo*, 583

N.Y.S.2d 285, 286 (App. Div. 1992))).  "[T]he 'plain purpose' of statutes requiring pre-litigation

notice to municipalities 'is to guard them against imposition by requiring notice of the

circumstances . . . upon which a claim for damages is made, so that its authorities may be in a

position to investigate the facts as to time and place, and decide whether the case is one for

settlement or litigation.'" *Rosenbaum v. City of New York*, 8 N.Y.3d 1, 11 (2006) (quoting *Purdy v. City of New York*, 193 N.Y. 521, 523 (1908)).

As an initial matter, courts in this district and in New York State have found that constitutional claims for damages are subject to the notice of claim requirement. *See, e.g.*, *Brooks v. County of Nassau*, 54 F. Supp. 3d 254, 257 (E.D.N.Y. 2014) (stating that "[t]he notice of claim requirement applies . . . to [the plaintiff's] . . . claims for violation [sic] of state constitutional and statutory provisions" and collecting cases); *Pratt v. Indian River Cent. Sch. Dist.*, 803 F. Supp. 2d 135, 146 (N.D.N.Y. 2011) ("The New Court of Appeals has held that the notice-of-claim provisions of the General Municipal Law § 50-i are applicable to a cause of action for 'constitutional torts' in violation of the New York State Constitution." (quoting *423 S. Salina Street, Inc. v. City of Syracuse*, 68 N.Y.2d 474, 489 n.5 (1986))); *Mirro v. City of New York*, 74 N.Y.S.3d 356, 359 (App. Div. 2018) ("The plaintiff's failure to serve a notice of claim requires dismissal of the cause of action alleging violations of the State Constitution.").

As noted above, the March 2018 Update purports to provide notice of violations of Plaintiff's "Civil Rights, Freedom of Speech, Press, Assembly, Petition, and Due Process." (Mar. 2018 Update 102.)  The March 2018 Update provides sufficient notice of Plaintiff's freedom of speech claim, which is based on his receipt of a January 18, 2018 email asking him not to "send emails to DOE staff advocating [his] thoughts on education," (TAC ¶¶ 275, 311), as it describes these events.  However, it is not clear from the March 2018 Update how or when Plaintiff believes Defendant violated his due process rights, and the March 2018 Update does not mention or describe an unreasonable search and seizure.  Accordingly, Plaintiff's claims based on a violation of due process and an unreasonable search and seizure are barred by his failure to file an adequate notice of claim.  *See Alexander v. City of Syracuse*, No. 17-CV-1195, 2018 WL

6591426, at *5 (W.D.N.Y. Dec. 13, 2018) (finding state law constitutional claims, including claim of illegal search, barred by failure to include them in notice of claim); *Gilmore v. Bouboulis*, No. 15-CV-686, 2016 WL 4532146, at *21 (N.D.N.Y. Aug. 29, 2016) (finding due process claim under New York State Constitution barred by failure to file timely notice of claim).

In sum, the Court dismisses without prejudice Plaintiff's NYSHRL and NYCHRL failure to promote claims, as well as Plaintiff's claims under the New York State Constitution for violation of his due process rights and for an unreasonable search and seizure, for failure to file an adequate notice of claim as to these claims. The Court declines to dismiss Plaintiff's NYSHRL and NYCHRL retaliation and hostile work environment claims and also declines to dismiss Plaintiff's claim under the New York State Constitution for a violation of his right to free speech.

### d.   Plaintiff's Title VII, NYSHRL, and NYCHRL claims fail as a matter of law

Plaintiff's remaining Title VII claims include (1) twelve failure to promote claims; (2) a disparate pay claim, and (3) three retaliation claims based on Plaintiff's (a) receipt of the April 22, 2014 Letter, (b) referral for a medical evaluation, and (c) temporary reassignment during the pendency of the medical evaluation. Plaintiff's remaining NYSHRL and NYCHRL claims include (1) four failure to promote claims, (2) a hostile work environment claim based on Plaintiff's referral for a medical evaluation, temporary reassignment, and the removal of his holiday decorations; and (3) two retaliation claims based on Plaintiff's (a) referral for a medical evaluation and (b) temporary reassignment. The Court addresses these claims below.

### i.   Title VII and NYSHRL failure to promote claims

Defendant argues that Plaintiff's failure to promote claims fail as a matter of law because Plaintiff either was not qualified for the positions to which he applied or was less qualified than

the selected applicant.  (*See* Def.'s Mem. 9–13.)  In addition, Defendant argues that Plaintiff

cannot create a triable issue as to pretext because the record is "devoid of any evidence that

[P]laintiff's credentials were so superior . . . that no reasonable person . . . could have chosen the

candidates selected over [him] for the jobs in question," and it is also "devoid of any evidence of

discriminatory motive."  (*Id.* at 9.)

Plaintiff argues that he "was qualified for each of the jobs to which he applied" and

"every one of the positions was denied to him because he is black" or was "not filled . . . [,]

indicating that Defendant was still looking for applicants while Plaintiff was not considered or

placed on the jobs although he was available."  (Pl.'s Opp'n 53.)

Claims of employment discrimination under Title VII are assessed using the burden-

shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973).  *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d

Cir. 2016) (analyzing the plaintiff's "employment-discrimination claims under . . . Title VII, and

the ADEA using the now-familiar burden-shifting framework established by the Supreme Court

in *McDonnell Douglas*"); *Littlejohn*, 795 F.3d at 312–13 (applying "burden-shifting evidentiary

framework set forth in *McDonnell Douglas*" to the plaintiff's "disparate treatment claim under

Title VII").  Discrimination claims under the NYSHRL are analyzed under the same standard as

discrimination claims under Title VII.[19]  *Hyek v. Field Support Servs., Inc.*, 461 F. App'x 59, 60

(2d Cir. 2012) ("Claims brought under the NYSHRL 'are analyzed identically' [to Title VII

---

[19]  In June of 2019, New York State Legislature amended the NYSHRL, "the effect of
which is to render the standard for claims [brought under the NYSHRL] closer to the standard
under the NYCHRL."  *Wellner v. Montefiore Med. Ctr.*, No. 17-CV-3479, 2019 WL 4081898, at
*5 n.4 (S.D.N.Y. Aug. 29, 2019); *see also* A8421/S6577 (as amended by S6594/A8424).
Because the amendments apply to claims that accrued after October 11, 2019, *see Wellner*, 2019
WL 4081898, at *5 n.4; A8421/S6577 (as amended by S6594/A8424), the date that the
amendments went into effect, they do not apply to Plaintiff's NYSHRL claims.

claims] and 'the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under . . . Title VII.'" (alteration in original) (quoting *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999))).  Under this framework, a plaintiff must first establish a prima facie case of discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *see also Ruiz v. County of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010).  A plaintiff's burden at this stage is "minimal."  *Holcomb*, 521 F.3d at 139 (quoting *Hicks*, 509 U.S. at 506); *Kelleher v. Fed A. Cook, Inc.*, 939 F.3d 465, 468 (2d Cir. 2019) ("A plaintiff's burden to establish an initial prima facie case is, by design, 'minimal and de minimis.'" (quoting *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005))).  If the plaintiff satisfies this initial burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *Miceli v. Mehr*, 830 F. App'x 63, 65 (2d Cir. 2020) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).  The defendant's burden "is not a particularly steep hurdle."  *Hyek v. Field Supp. Servs., Inc.*, 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010), *aff'd*, 461 F. App'x 59 (2d Cir. 2012).  It "is one of production, not persuasion; it 'can involve no credibility assessment.'"  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (quoting *Hicks*, 509 U.S. at 509).  If the defendant offers a legitimate, nondiscriminatory explanation for its action, the court must nevertheless deny summary judgment if the plaintiff can show that the explanation was pretext.  *See Williams v. Mount Sinai Med. Ctr.*, 859 F. Supp. 2d 625, 643 (S.D.N.Y. 2012) (citing *Calabro v. Westchester BMW, Inc.*, 398 F. Supp. 2d 281, 294 (S.D.N.Y. 2005)).

To defeat summary judgment in a Title VII discrimination claim, "a plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus."  *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010) (citing *Gordon v.*

*N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013) ("An employee who alleges status-based discrimination under Title VII . . . [must] show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision.").

The Court assumes, without deciding, that Plaintiff has stated a prima facie case of failure to promote[20] to the twelve positions alleged in the TAC, including the positions of Senior Project Manager; Senior Business System Analyst; Analyst, Office of Space Planning; Business IT Specialist; Senior Program Manager; Senior Director of Special Projects, CSE; Deputy Chief Technology Officer; Chief Technology Officer; Strategic Initiatives Manager; Chief Information Officer; Instructional Technology Director; and Chief Product Officer.  Plaintiff's claims nevertheless fail because Defendant has proffered legitimate, nondiscriminatory reasons for its hiring decisions and Plaintiff has failed to show that these reasons are a pretext for discrimination.

### 1.   Defendant has proffered legitimate, nondiscriminatory reasons for its hiring decisions

Defendant argues that Plaintiff's failure to promote claims fail because Plaintiff either was not qualified for the positions to which he applied or was less qualified than the selected applicant.  (*See* Def.'s Mem. 9–13.)  In support, Defendants have produced copies of the job

---

[20]  To establish a prima facie case of employment discrimination based on a failure to promote claim under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he applied and was qualified for a position for which the employer was seeking applicants, (3) he was not selected for the position, and (4) the failure to promote occurred under circumstances giving rise to an inference of discriminatory intent.  *See, e.g.*, *Duckett v. Foxx*, 672 F. App'x 45, 47 (2d Cir. 2016) (citing *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000)).

posting, selected applicant's résumé, and Plaintiff's application for each job alleged.[21]  (*See*

Brown Decl. 2–4.)

Plaintiff argues that "Defendant provides cursory, conclusory one-liners to indicate that

Plaintiff was not qualified" but fails to provide information on the positions, including, among

other things, "the cover letters of each person who got the jobs," "the criteria by which each

person was evaluated," and "any data supporting why the selected candidate was chosen over

Plaintiff."  (Pl.'s Opp'n 54–55.)

An employer's "'explanation of its reasons must be clear and specific' in order to 'afford

the employee a full and fair opportunity to demonstrate pretext.'"  *Byrnie v. Town of Cromwell,*

*Bd. of Educ.*, 243 F.3d 93, 105 (2d Cir. 2001) (quoting *Meiri v. Dacon*, 759 F.2d 989, 996–97

(2d Cir. 1985)).  "If the defendant proffers such a reason, the presumption of

discrimination . . . drops out of the analysis, and the defendant will be entitled to summary

judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of

prohibited discrimination."  *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (per curiam)

(quoting *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216–17 (2d Cir. 2005)).

Defendant has proffered legitimate, non-discriminatory reasons for declining to promote

Plaintiff and has met its burden to produce evidence of the same.  The record reflects that, for

each of the positions to which Plaintiff applied, either he did not meet the minimum requirements

of the position or the person hired had more relevant experience or credentials.

Plaintiff applied for the position of Senior Project Manager on May 22, 2014.  (TAC

¶ 180; Def.'s 56.1 ¶ 31.)  However, a more qualified Black applicant was selected.  (Def.'s 56.1 ¶

---

[21]  These documents are attached to the Brown Declaration as exhibits and, for each
position, are referred to collectively as "[Position Name] Docs."

34.  *See generally* Senior Project Manager Docs., annexed to Brown Decl. as Ex. D, Docket

Entry No. 144-4.)

Plaintiff applied for the position of Senior Business System Analyst on September 10,

2014.  (TAC ¶ 186; Def.'s 56.1 ¶ 35.)  The selected applicant "had nearly ten years of experience

as a business analyst both in the private sector and most recently within the New York City

Department of Information and Technology," while Plaintiff "lacked experience as a business

system analyst."  (Def.'s 56.1 ¶¶ 38–39.  *See generally* Senior Business System Analyst Docs.,

annexed to Brown Decl. as Ex. F, Docket Entry No. 144-6.)

Plaintiff applied for the position Analyst, Office of Space Planning on September 22,

2014 — a position that was located within the DOE's Office of Space Planning, which is a

separate division from DIIT wherein Plaintiff worked.  (TAC ¶ 187; Def.'s 56.1 ¶¶ 41, 43.)

Plaintiff did not meet the qualifications because he lacked experience in, among other things,

space utilization analysis and highly specialized managerial and supervisory experience.  (Def.'s

56.1 ¶ 42.  *See generally* Analyst, Office of Space Planning Docs., annexed to Brown Decl. as

Ex. G, Docket Entry No. 144-7.)

Plaintiff applied for the position of Business IT Specialist in October of 2014.  (TAC

¶ 189; Def.'s 56.1 ¶ 46.)  The selected applicant was a Black applicant who "held, among other

things, a New York State Teacher Certification and was currently enrolled in a second Master's

Program, a Master of Art in Technology Educational Specialist at Teachers College, Columbia

University."  (Def.'s 56.1 ¶ 49.)  Plaintiff also applied for the position of Senior Program

Manager on October 15, 2014.  (TAC ¶ 191; Def.'s 56.1 ¶ 52.)  "The selected applicant . . . was a

current senior executive and the DIIT Portfolio Manager; had decades of leadership experience,

and held, among other things, two Masters degrees from New York University and Columbia

University." (Def.'s 56.1 ¶ 55.) "Plaintiff does not hold a New York State Teacher Certification nor a masters' degree from any Ivy League universities." (*Id.* ¶ 50. *See generally* Business IT Specialist Docs., annexed to Brown Decl. as Ex. H, Docket Entry No. 144-8; Senior Program Manager Docs., annexed to Brown Decl. as Ex. I, Docket Entry No. 144-9.)

Plaintiff applied for the position of Senior Director of Special Projects, CSEs on November 17, 2014 — a position "located within the DOE's Division of Specialized Instruction and Student Support[,] which serves students with disabilities" and is "an entirely separate division" from the one in which Plaintiff worked. (Def.'s 56.1 ¶ 62; TAC ¶ 192.) The selected applicant "was the current Chief of Staff to the Chief Executive Officer in the Special Education Office," but Plaintiff's application "was devoid of any work experience in the Office of Special Education or Division of Specialized Instruction and Student Support." (Def.'s 56.1 ¶¶ 63–64. *See generally* Senior Director of Special Projects, CSE Docs., annexed to Brown Decl. as Ex. J, Docket Entry No. 144-10.)

Plaintiff applied for the position of Deputy Chief Technology Officer on December 21, 2014. (TAC ¶ 196; Def.'s 56.1 ¶ 66.) "The selected applicant . . . had been the acting Deputy Chief Technology Officer for years, and had decades of executive-level senior leadership and computer engineering experience prior to acting in that position," (Def.'s 56.1 ¶ 69), while "Plaintiff's application was devoid of both the minimum and preferred requirements for the . . . position," (*id.* ¶ 68. *See generally* Deputy Chief Technology Officer Docs., annexed to Brown Decl. as Ex. K, Docket Entry No. 144-11.)

Plaintiff applied for the position of Chief Technology Officer on December 21, 2014. (TAC ¶ 197; Def.'s 56.1 ¶ 71.) "The selected applicant . . . had been the acting Chief Technology Officer for years, and had decades of executive-level senior leadership experience in

both the private and public sectors," (Def.'s 56.1 ¶ 75), but "Plaintiff's application was devoid of both the minimum and preferred requirements for the . . . position," (*id.* ¶ 74. *See generally* Chief Technology Officer Docs., annexed to Brown Decl. as Ex. L, Docket Entry No. 144-12.)

Plaintiff applied for the position of Strategic Initiatives Manager on April 8, 2016. (TAC ¶ 203; Def.'s 56.1 ¶ 77.) "The selected applicant . . . had previously held the position of 'Strategic Initiatives Coordinator' at DIIT, and had previously worked at the State Department and the United Nations," (Def.'s 56.1 ¶ 81), but "Plaintiff's application was devoid of both the minimum and preferred requirements for the . . . position," (*id.* ¶ 80. *See generally* Strategic Initiatives Manager Docs., annexed to Brown Decl. as Ex. M, Docket Entry No. 144-13.)

Plaintiff applied for the position of Chief Information Officer on April 27, 2016. (TAC ¶ 204; Def.'s 56.1 ¶ 83.) "The selected applicant . . . possessed decades of executive-level senior leadership experience and previously served as a Chief Information Officer in both the private and public sectors," (*id.* ¶ 86), while "Plaintiff's application was devoid of both the minimum and preferred requirements for the . . . position," (*id.* ¶ 85. *See generally* Chief Information Officer Docs., annexed to Brown Decl. as Ex. N, Docket Entry No. 144-14.)

Plaintiff applied for the position of Instructional Technology Director on August 12, 2016. (TAC ¶ 205; Def.'s 56.1 ¶ 88.) "The selected applicant . . . possessed decades of teaching and administrative experience and served previously as the Assistant Superintendent/Deputy Director of Teaching and Learning within the DOE's Office of Field Support," (Def.'s 56.1 ¶ 91), but "Plaintiff's application was devoid of both the minimum and preferred requirements for the . . . position," (*id.* ¶ 90. *See generally* Instructional Technology Director Docs., annexed to Brown Decl. as Ex. O, Docket Entry No. 144-15.)

Plaintiff applied for the position of Chief Product Officer on December 6, 2017.  (TAC ¶ 328; Def.'s 56.1 ¶ 93.)  Although "[t]he DOE does not have an application from [P]laintiff referencing the . . . position," (Def.'s 56.1 ¶ 95), "[t]he selected applicant . . . possessed decades of executive-level senior leadership experience in . . . the private, public and non-profit sectors," (*id.* ¶ 97), and, based on the credentials contained in Plaintiff's other application, "Plaintiff meets neither the preferred nor minimum requirements for the . . . position," (*id.* ¶ 96.  *See generally* Chief Product Officer Docs., annexed to Brown Decl. as Ex. P, Docket Entry No. 144-16.)

Because Defendant has proffered legitimate, nondiscriminatory reasons for its hiring decisions, the burden shifts to Plaintiff to show that these reasons are a pretext for discrimination.

### 2.  Plaintiff fails to establish a triable issue as to pretext

Defendant argues that Plaintiff cannot demonstrate pretext because he "must show that 'his credentials are so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over [him] for the job in question,'" however the record is "devoid of any evidence that [P]laintiff's credentials were so superior."  (Def.'s Mem. 8–9 (quoting *Abraham v. N.Y.C. Dep't of Educ.*, 398 F. App'x 633, 635 (2d Cir. 2010)).)

Plaintiff argues that he was qualified for the positions to which he applied because of his seniority.  (*See* Pl.'s Opp'n 64 (arguing that Plaintiff "was qualified with a lifetime of experience"); Pl.'s Sur-Reply 8–18 (arguing that Plaintiff "was qualified" due to his years of experience and "would have been productive in the position[s]" and "assert[ing] that Defendant's rejection of his application[s] was due to his being blackballed, black, and/or his being Haitian").)

Upon the defendant's showing of a legitimate, nondiscriminatory reason for the employment action, the plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action].'"  *DiCesare v. Town of Stonington*, 823 F. App'x 19, 24 (2d Cir. 2020) (alterations in original) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996)); *Mullins v. City of New York*, 626 F.3d 47, 53–54 (2d Cir. 2010) (same).  A plaintiff may show pretext "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, [nondiscriminatory] reasons for its action." *Palencar v. N.Y. Power Auth.*, 834 F. App'x 647, 651 (2d Cir. 2020) (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)); *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 430 (2d Cir. 2016) (same).  "From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason."  *Graziadio*, 817 F.3d at 430 (quoting *Zann Kwan*, 737 F.3d at 846); *see also Reeves*, 530 U.S. at 147 ("Proof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."); *Doe v. Bd. of Educ. of Fallsburgh Cent. Sch. Dist.*, 63 F. App'x 46, 49–50 (2d Cir. 2003) ("Evidence that could permit a jury to believe that the defendant's proffered reasons are not believable can support an inference that they are pretexts for discrimination." (citing *Reeves*, 530 U.S. at 147)); *Pediford-Aziz v. City of New York*, 170 F. Supp. 3d 480, 486 (E.D.N.Y. 2016) ("From . . . 'implausibilities, inconsistencies, [and] contradictions in' the proffered reasons . . . one 'could conclude that . . . explanations [are] pretext.'" (alteration in original) (quoting *Zann Kwan*, 737 F.3d at 846)).

Plaintiff has not presented any evidence, and there is no evidence in the record, that his credentials were "so superior to the credentials of the person selected for the job[s] that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate[s] selected over [him]." *Abraham*, 398 F. App'x at 635.  Indeed, Plaintiff testified that he could not recall the qualifications of any of the positions to which he applied and that he was unaware of the reasons he was not selected for the positions.  (Pl.'s Dep. 22–33.)  Nevertheless, he asserted: "I'll make a broad statement.  For most of the positions, for many of the positions that I have not been granted, the positions had to do with my color.'"  (*Id.* at 27.)  He further testified that:

> These are positions I'm very qualified for.  I meet the qualifications for those positions very well.  I have been positioned based on the experience I have with the DOE having known DOE systems and my savoir faire I think I do have what it takes to have the DOE achieve the aim [of] educating the kids that I think they are interested in, helping everyone pull in the right direction.

(*Id.* at 82.)  However, as detailed above, the evidence reflects that Defendant made reasonable hiring decisions for each position, and Plaintiff's credentials were not "so superior" that they would support an inference that Defendant's reasons were a pretext for discrimination.  *Peddy v. L'Oreal USA, Inc.*, 848 F. App'x 25, 26–27 (2d Cir. 2021) (assuming without deciding that the plaintiff, who had alleged thirteen failures to promote, had successfully stated a prima facie ADEA failure to promote claim but concluding that the defendant made "reasonable hiring decisions" because "the selected candidates each had experience that roughly matched the job postings" and affirming grant of summary judgment); *Abraham*, 398 F. App'x at 635 (assuming that the plaintiff established a prima facie Title VII failure to promote claim but concluding that the defendant "proffered legitimate, non-discriminatory reasons for declining to promote [the plaintiff]" because while the plaintiff "has an engineering degree and extensive experience

working for [the defendant], neither an engineering degree nor seniority were among the mandatory or preferred qualifications for the . . . position").

Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's Title VII and NYSHRL failure to promote claims.

### ii.  Title VII disparate pay claim

Defendant argues that Plaintiff's disparate pay claim (1) remains dismissed because Plaintiff "never adequately re-plead[ed]" this claim and (2) even if Plaintiff has stated a plausible disparate pay claim, this claim "must be dismissed as time-barred."  (Def.'s Mem. 18–19.)

Plaintiff argues that the TAC "included facts sufficient" to address the deficiencies the Court noted when it dismissed this claim in the March 2017 Decision.  (Pl.'s Opp'n 44.)  In addition, Plaintiff notes that "[t]he additional facts [he] needs for comparative analyses were requested during discovery, but Defendant . . . refused to cooperate."[22]  (Id.)  Plaintiff attaches to his opposition "a very conservative estimate of Plaintiff's opportunity cost for being denied

---

[22]  Plaintiff argues in his opposition that he is "unable to provide a complete and proper response to Defendant's motion because Defendant has held and continue[s] to withhold Plaintiff's paper documents, emails, files, affidavits, the transcript of [P]laintiff's [fifty-hour] deposition, electronically stored documents, and materials that Plaintiff had prepared in response to this case's summary judgment."  (Pl.'s Opp'n 7.)  In addition, Plaintiff argues that he informed the court of Defendant's refusal to cooperate in discovery, the court ordered relief, and Defendant "failed to obey."  (Id. at 10.)  In addition, he was "shocked and surprised" when discovery closed on October 8, 2019, (id.), as he was never allowed to depose certain individuals, (id. at 20; Pl.'s Sur-Reply 2–3), and "discovery failed to produce" salary information he required for his disparate pay claim, (Pl.'s Sur-Reply 5; Pl.'s Opp'n 20–21).  Plaintiff "asks the Court to consider the many appeals he made . . . to facilitate discovery to no avail."  (Pl.'s Opp'n 29.)  As Defendant argues, Magistrate Judge Cheryl L. Pollak "ruled on several discovery motions and made clear during the course of numerous discovery status conferences, that [Defendant] had fulfilled its discovery obligations," and "[c]ontrary to [P]laintiff's assertions regarding depositions, he never noticed any depositions and never mentioned this supposed issue with [the] [c]ourt during any of the numerous discovery conferences."  (Def.'s Reply 3; see Order dated Apr. 10, 2019, Docket Entry No. 115; Order dated Oct. 24, 2019, Docket Entry No. 127.)

raises and promotions while similarly situated white coworkers as Plaintiff were treated [differently]." (*Id.* at 44–45.)

"[T]o establish a *prima facie* case of discriminatory disparate pay under Title VII, a plaintiff must show: (1) that he was a member of a protected class; (2) that he was paid less than similarly situated non-members of his protected class; and (3) evidence of discriminatory animus." *Quarless v. Bronx-Lebanon Hosp. Ctr.*, 228 F. Supp. 2d 377, 383 (S.D.N.Y. 2002) (citing *Belfi v. Prendergast*, 191 F.3d 129, 140 (2d Cir. 1999)), *aff'd*, 75 F. App'x 846 (2d Cir. 2003); *see also Joseph v. Owens & Minor Distrib.*, 5 F. Supp. 3d 295, 312 (E.D.N.Y. 2014), *aff'd*, 594 F. App'x 29 (2d Cir. 2015); *Thomas v. iStar Fin., Inc.*, 438 F. Supp. 2d 348, 367 (S.D.N.Y. 2006), *aff'd*, 629 F.3d 276 (2d Cir. 2010).

In the Amended Complaint, Plaintiff alleged that in 1994, when he was working for the Bureau of Telecommunications ("BOT"), the BOT was moved from the Division of Business and Administration ("B&A") into the DIIT. (Am. Compl. 16.)[23] The BOT predominantly consisted of black employees and the DIIT predominantly consisted of white employees, but the two had "many similar titles and positions which performed substantially similar work." (*Id.*) When the BOT was moved into the DIIT, white employees within the DIIT with similar titles or positions as black employees who worked for the BOT received "significantly higher" salaries. (*Id.*) Plaintiff alleged that the BOT employees were "not provided salary increase[s]" and that the pay discrepancy remains the same today. (*Id.*)

In the March 2017 Decision, the Court held that Plaintiff failed to plausibly allege that he was paid less than similarly situated non-members of his protected class and evidence of discriminatory animus because he did "not point to any facts supporting [his] allegation that he

---

[23]  The Court refers to the page numbers assigned by the electronic case filing system.

[was] paid less than white DIIT employees, other than stating his own base salary of $44,000, nor [did he] provide any detail about the titles or the responsibilities of the individuals that he claims have comparable duties but receive greater compensation." (Mar. 2017 Decision 25.)  In the TAC, Plaintiff adds the allegations that he and the other black employees in DIIT were "doing database work, LAN administration work, Telecommunications Specialist work, and the like," (TAC ¶ 95), and that the white DIIT employees doing similar work were responsible for "database, LAN/Network administration," (*id.* ¶ 91).  Plaintiff also adds that "[s]ome of th[e] similarly situated White employees in DMIS include: Gary Weglarz, Mike Woods, Louis Pezzengrili, Hugh Courtney, Bob Einbinder, Joe Fusi, and Robert Gwirtzman."  (*Id.* ¶ 93.) Finally, Plaintiff adds that, in 1998, he was "told to give his [database] development work" to a white employee "from another unit from within DIIT," and that, at that time, DIIT "was paying the market rate [of $84,000 per year] to their White database programmers" but did not pay Plaintiff the appropriate salary.  (*Id.* ¶¶ 83–87.)  Assuming without deciding that Plaintiff has stated a plausible disparate pay claim, this claim fails as a matter of law because there is no evidence that he was paid less than similarly situated non-members of his protected class for the period March 19, 2014, forward.  As the Court explained in the March 2017 Decision, "Plaintiff's Title VII discrimination claims based on acts occurring prior to March 19, 2014 are time-barred."[24]  (Mar. 2017 Decision 13.)  Plaintiff testified during his deposition that at the time of the merger in 1994, the salaries of white employees in DMIS were higher than those of black employees in BOT, and he identified eight individuals who received higher salaries.  (Pl.'s Dep.

---

[24]  As discussed above, the Court also dismissed Plaintiff's state and city law claims for failure to file a notice of claim.  (Mar. 2017 Decision 48.)  Therefore, although the Court granted Plaintiff leave to replead his disparate pay claim and Plaintiff repleaded this claim under Title VII, the NYSHRL, and the NYCHRL, his state and city law claims remain dismissed under the law of the case doctrine.

33–34.)  When asked if he was aware of any individuals who were paid higher salaries than him on account of his race, color, or national origin for the period March 19, 2014, forward, Plaintiff testified "[t]hese people who are paid more."  (*Id.* at 34.)  However, it is undisputed that none of the above-named comparators were employed by the DOE on March 19, 2014, or thereafter.  (Decl. of Marianne Ulloa ("Ulloa Decl.") ¶¶ 4–10, Docket Entry No. 143.)  Therefore, Plaintiff cannot establish a prima facie disparate pay claim because he cannot establish that he was paid less than similarly situated non-members of his protected class during the relevant period.

Accordingly, the Court grants Defendant's summary judgment motion with regard to Plaintiff's Title VII disparate pay claim.

### iii.  NYSHRL hostile work environment claim

Defendant argues that (1) "none of the acts alleged — that is the receipt of three letters regarding workplace performance issues over the course of three years or the undergoing of a medical examination [—] constitute a hostile work environment" and (2) Plaintiff "cannot establish that the complained of conduct was caused — even in part — by a discriminatory motive," as he has "offered no evidence, other than unsubstantiated allegations and assertions, to support his claim that anything happened to him on account of his race, color or national origin."  (Def.'s Mem. 20–21.)

Plaintiff argues that his supervisor harassed him by changing his work conditions to include weekly one-on-one meetings "as an opportunity . . . to entrap" Plaintiff and "devis[e] insubordination charges" against him; reassigning him to a different location "to be a scanboy" based on narratives that were "twisted to show Plaintiff at fault when in fact he was not"; and forcing him "to undergo a psychiatric examination" as "a condition to return to his position."  (Pl.'s Opp'n 14–15; *see also id.* at 45–52, 68.)  The Court also understands Plaintiff to allege that the removal of his holiday decorations contributed to a hostile work environment.

To establish a NYSHRL (and Title VII) hostile work environment claim,[25] a plaintiff must "show that the workplace is permeated with discriminatory intimidation, ridicule, and insult[] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Duplan*, 888 F.3d at 627 (alteration in original) (quoting *Gorzynski*, 596 F.3d at 102); *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "The same standards [as are applied to Title VII] apply to the plaintiffs' hostile environment claims arising under the NYSHRL . . . ." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 n.4 (2d Cir. 2014); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013) ("Hostile work environment claims under both Title VII and the NYSHRL are governed by the same standard." (citing *Schiano*, 445 F.3d at 609)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 90 (2d Cir. 2019) (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)). A plaintiff must also show "that the complained of conduct . . . creates such an environment because of the plaintiff's protected characteristic." *LeGrand v. Walmart Stores E., LP*, 779 F. App'x 779, 782 (2d Cir. 2019) (first citing *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); and then citing *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 n.4 (2d Cir. 2014)). A court should consider the totality of the circumstances and factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the]

---

[25] As discussed above, Plaintiff's Title VII hostile work environment claim is barred because he failed to exhaust his administrative remedies. *See supra* Section II.c.ii.B.

employee's work performance."[26]  *Boonmalert v. City of New York*, 721 F. App'x 29, 33 (2d Cir. 2018) (quoting *Littlejohn*, 795 F.3d at 320–21); *Patane*, 508 F.3d at 113.  In evaluating whether a plaintiff has established a hostile work environment claim, the court must consider facially neutral conduct that might "bolster a harassment claim" when the facially neutral conduct is by the same individual who engaged in "overt[]" discrimination.  *Daniel v. T&M Prot. Res., LLC*, 689 F. App'x 1, 3 (2d Cir. 2017) (quoting *Kaytor*, 609 F.3d at 547–48) (remanding with instructions to consider facially neutral incidents of harassment in analyzing the plaintiff's hostile work environment claim).

Plaintiff has not established a prima facie hostile work environment claim because there is no evidence linking any of the conduct underlying his hostile work environment claim to his protected characteristics.  Plaintiff testified to "a situation where . . . [his] supervisor harassed [him], . . . mistreated [him] in the presence of the whole floor . . . where [he] work[s]" in 2014, leading to a meeting about the incident and his receipt of the April 22, 2014 Letter.[27]  (Pl.'s Dep.

---

[26]  The Second Circuit has stated that:
> [w]hile the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that [w]hile a mild, isolated incident does not make a work environment hostile, the test is whether "the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse*.

*Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (second alteration in original) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)).

[27]  Plaintiff also testified to his receipt of further letters on March 31, 2017, and April 19, 2017, in which his then-supervisor set forth his expectations of Plaintiff and what he believed to be Plaintiff's job responsibilities, and to his receipt of an October 18, 2017 letter regarding unprofessional behavior, misconduct, and insubordination.  (Pl.'s Dep. 39, 41–42.)  As further noted below, Plaintiff does not mention these letters in the TAC, (*see generally* TAC), and instead mentioned them only in his sur-reply in connection with his retaliation claims, (*see* Pl.'s Sur-Reply 21–23).  Therefore, the Court does not consider these letters.  However, even if the Court did consider them, Plaintiff's claim would fail for the same reasons discussed below.

36–37.)  Plaintiff also testified to new allegations that he was required to undergo a medical

examination and was temporarily assigned to work in a different office pending the results of his

examination, stating that he "was relegated to scan boy" for "about two weeks." (*See generally*

*id.* at 46–57, 61–62.)  When asked if he knew why he had to undergo the medical examination,

Plaintiff testified that he had received a letter with "six or seven reasons," including "a coworker

claiming that [he] harassed her by asking her to stop building her own idea of a wall between

[him] and her with Christmas cards." (*Id.* at 61.)  Plaintiff further stated that "[t]here was a grain

of truth [in] everything but the way [his supervisor] did the narrative put [Plaintiff] at fault." (*Id.*

at 62; *see also* Medical Examination Referral (describing Plaintiff as impulsive, angry,

aggressive, paranoid, and unstable and providing examples).)  Upon his return to his normal

office, he found that someone had taken down his holiday decorations and "shoved everything

on [his] desk." (Pl.'s Dep. 62–63.  *See generally id.* at 61–67.)  Plaintiff explained that his

decorations were a "functional diagram of what education would be, how education would work"

in the near future, and that it was an "interactive display" because the diagram "would tell you to

do things and you would respond," and "[t]here was a puppet there and the puppet would

respond and, follow through the diagram," leading whoever did it to "end up believing that it

works," and Plaintiff "had a pen there and, if you believe, you can sign I believe it works." (*See*

Pl.'s Dep. 63–65.)  When asked if he knew why his decorations had been taken down, Plaintiff

testified: "Mr. Quinn . . . made it clear in his memos . . . where he alluded to not focusing on

your job . . . and focus on your job function while at work" and wrote "do not ask coworkers to

sign petitions." (*Id.* at 63, 65.)  In addition, "[t]hey didn't like the idea [he] was asking people to

believe, consistent with [them] saying do not advocate [his] thoughts on education and asking

people to be partners in education." (*Id.* at 65.)

There is no evidence in Plaintiff's testimony or otherwise that the incidents underlying Plaintiff's hostile work environment claim occurred because of Plaintiff's protected characteristics. The record shows that Plaintiff testified that the reasons for his medical referral and the removal of his holiday decorations were something other than his protected characteristics. Accordingly, the Court grants Defendant's summary judgment motion with regard to Plaintiff's NYSHRL hostile work environment claim. *See, e.g.*, *Adams v. Montefiore Med. Ctr.*, No. 15-CV-5082, 2017 WL 4417695, at *5 (S.D.N.Y. Oct. 3, 2017) ("Although [the plaintiff's] experience at [the defendant-employer] may have been unpleasant, there is no evidence to suggest that she was harassed *because of* her race and/or national origin. . . . In fact, [the plaintiff] has conceded that [her supervisor] harassed her not because of race . . . . [The plaintiff] has failed to create a triable issue of material fact that any issues in her work environment occurred because of race and/or national-origin-based animus.").

### iv.  Title VII and NYSHRL retaliation claims

Defendant argues that Plaintiff cannot establish a prima facie retaliation claim, (Def.'s Mem. 14–16), and that, even if he could, Defendant has "articulated legitimate, non-retaliatory reasons" for the alleged retaliatory acts and Plaintiff has failed to show that these reasons are pretext, (*id.* at 16–17).

Plaintiff has not responded to these arguments.

Title VII prohibits retaliation against an employee who "has opposed any practice [that is] made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a); *Green v. Mount Sinai Health Sys., Inc.*, 826 F. App'x 124, 125 (2d Cir. 2020) ("Title VII prohibits employers from retaliating against any employee because that individual has opposed any practice made unlawful by Title VII." (quoting *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015))). To establish a prima facie case of retaliation under Title VII, a plaintiff must

show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). Title VII retaliation claims are "evaluate[d] . . . using the three-step framework outlined in *McDonnell Douglas*" and discussed above. *Russell v. N.Y.U.*, 739 F. App'x 28, 32 (2d Cir. 2018) (citing *Duplan*, 888 F.3d at 625). Under the framework, the plaintiff must first establish "a *prima facie* case of retaliation." *Id.* (quoting *Hicks*, 593 F.3d at 164). If the plaintiff sustains this initial "*de minimis*" burden, *Duplan*, 888 F.3d at 626, a "presumption of retaliation" arises and the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action," *Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 14 (2d Cir. 2018) (quoting *Hicks*, 593 F.3d at 164). "If the defendant does so, then the burden shifts back to the plaintiff . . . [to] show that the reason offered by the employer is merely pretext, and that the employer's 'desire to retaliate' was the actual 'but-for cause of the challenged employment action.'" *Saji*, 724 F. App'x at 14 (quoting *Ya-Chen Chen*, 805 F.3d at 70)). "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Duplan*, 888 F.3d at 625 (quoting *Vega*, 801 F.3d at 90–91). The same standard applies to retaliation claims under the NYSHRL. *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013).

In the March 2017 Decision, the Court found that Plaintiff plausibly alleged that his receipt of the April 22, 2014 Letter was an adverse employment action in retaliation for the protected activity of filing the 2014 OEO Complaint. (Mar. 2017 Decision 39; *see also* TAC ¶¶ 158, 162–170.) Plaintiff now also alleges that the "December 15, 2017 reassignment, mental

[examination], and follow[-]up actions (with intimidating emails and memos) constitute . . . adverse employment actions . . . in retaliation [for] Plaintiff's ongoing lawsuit."[28]  (TAC ¶ 265.) For the reasons discussed below, the Court finds that Plaintiff cannot establish a prima facie retaliation claim based on the April 22, 2014 Letter because the letter is not an adverse employment action.  In addition, even assuming Plaintiff can establish prima facie retaliation claims based on his temporary reassignment and mental examination, the Court finds that Defendant has proffered legitimate, nondiscriminatory reasons for these actions and Plaintiff cannot show that these reasons are a pretext for discrimination.

### 1. Plaintiff's Title VII and NYSHRL retaliation claims based on the April 22, 2014 Letter

Defendant argues that Plaintiff cannot establish a prima facie retaliation claim based on his receipt of workplace performance letters[29] because (1) such letters do not constitute adverse employment actions, as (a) "it is undisputed that [P]laintiff never lost any wages or benefits following his receipt of [the] letters," (b) reprimands that do not lead to materially adverse

---

[28]  Plaintiff did not specify which "emails and memos" he believes constitute adverse employment actions.  Nor did Plaintiff allege that the removal of his holiday decorations was an adverse employment action or indicate whether this action sounds in discrimination or retaliation, and neither party makes any arguments as to whether this action constituted retaliation.  Accordingly, the Court does not consider whether the unspecified "emails and memos" and removal of Plaintiff's holiday decorations were adverse employment actions.

[29]  Although Defendant argues that Plaintiff's receipt of additional letters on March 31, 2017, April 19, 2017, October 18, 2017, and March 18, 2018, did not constitute adverse employment actions, Plaintiff does not include any allegations regarding these letters in the TAC or the Proposed FAC.  (*See generally* TAC; Proposed FAC; Letters, annexed to Brown Decl. as Ex. V, Docket Entry No. 144-22.)  Plaintiff mentions these letters only in his sur-reply, which is styled as a response to Defendant's 56.1 statement.  (*See* Pl.'s Sur-Reply 21-23 (asserting that the March 31, 2017 letter set forth new work expectations and "serves as prima facie evidence that Defendant has worked to change Plaintiff's work terms and conditions after he complained about discrimination," and that the April 19 and October 18, 2017 letters constituted continued retaliation, but noting that Plaintiff "found no March 18, 2018 letter" in Defendant's exhibits).) Accordingly, the Court does not consider these additional letters.

employment consequences are not actionable forms of retaliation, and (c) "regardless of how the letters are characterized, [P]laintiff was . . . not deterred from filing subsequent internal and external complaints," (Def.'s Mem. 14–15), and (2) there is no evidence of a causal connection between the alleged adverse employment actions and any protected activity, (id. at 15–16).

Plaintiff has not responded to these arguments.

Adverse employment actions are actions that "could well have dissuaded a reasonable employee in [the plaintiff's] position from complaining of unlawful discrimination." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 44 (2d Cir. 2019) (first citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006); and then citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks*, 593 F.3d at 165 (citing *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)).

Defendant's issuance of the April 22, 2014 Letter was not an adverse employment action. As the Court acknowledged in the March 2017 Decision, "a formal reprimand may be an adverse action" in some circumstances because "it can reduce an employee's likelihood of receiving future bonuses, raises, and promotions, and it may lead the employee to believe . . . that his job is in jeopardy." (Mar. 2017 Decision 39 (quoting *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011)).) However, the evidence demonstrates that the April 22, 2014 Letter was merely a warning — not a formal reprimand. (*Compare* Letters 1–2 (copy of April 22, 2014 Letter stating "[t]his *memo* confirms a meeting held on March 25, 2014" and warning Plaintiff that "failure to adhere to these expectations or the recurrence of similar incidents *may* result to further

disciplinary action" (emphases added)); *with id.* at 5–6 (copy of October 18, 2017 letter stating "[t]his *letter of reprimand* confirms a meeting held on . . . September 19[th] [2017]" and informing Plaintiff that "[f]ailure to adhere to the expectations listed . . . *will* lead to further disciplinary action" (emphases added)).)  Courts in this Circuit have found that, without more, performance warnings and reprimands do not constitute materially adverse actions because they are too trivial to dissuade a reasonable person from complaining.  *See, e.g.*, *Colton v. State of N.Y. Div. of State Police*, No. 14-CV-801, 2017 WL 5508911, at *16 (N.D.N.Y. Feb. 8, 2017) ("[R]eprimands that do not lead to materially adverse employment consequences are generally not considered actionable forms of retaliation." (quoting *Dotson v. City of Syracuse*, No. 04-CV-1388, 2009 WL 2176127, at *18 (N.D.N.Y. July 21, 2009))); *Frazier v. City of N.Y. Dep't of Corr.*, No. 14-CV-1224, 2016 WL 4444775, at *3 (E.D.N.Y. Aug. 23, 2016) (stating same and collecting cases); *Alywahby v. Shinseki*, No. 01-CV-6152, 2009 WL 5166271, at *5 (E.D.N.Y. Dec. 29, 2009) (noting that "reprimands are routinely considered insufficiently material to constitute adverse action under Title VII" and finding that "no reasonable employee would consider this reprimand . . . to have been materially adverse"); *Nieves v. Dist. Council 37*, No. 04-CV-8181, 2009 WL 4281454, at *8 (S.D.N.Y. Nov. 24, 2009) ("Cases within the Second Circuit . . . have held that performance warnings, without more, do not constitute a materially adverse action.").  As a memorandum that merely memorialized a meeting and warned Plaintiff that certain conduct could lead to disciplinary action, but that did not lead to any adverse consequences, the April 22, 2014 Letter alone is not severe enough that it would dissuade a reasonable employee in Plaintiff's position from complaining of unlawful discrimination. Moreover, Plaintiff testified that he did not lose wages or health benefits, and that he could not recall whether he lost any time off, vacation days, sick days, or any other sort of compensation.

(*See* Pl.'s Dep. 37–38; *see also* Ulloa Decl. ¶ 11 (declaring that neither Plaintiff's "salary nor [his] benefits have ever decreased at any time while he was employed by the DOE").)  Although Plaintiff testified that his "work conditions changed," he could not recall how and merely asserted that his "life was made difficult" and that he was "ask[ed] . . . to do things in CyberShift."[30]  (Pl.'s Dep. 37–38.)  Plaintiff further testified that his civil service title did not change following his receipt of the April 22, 2014 Letter.  (*Id.* at 38; *see also* Ulloa Decl. ¶ 3 (declaring that, "[b]ased on a review of human resources records maintained by the DOE," Plaintiff's civil service title did not change "from March [of] 2014 to the time of his resignation").)

Because the April 22, 2014 Letter was merely a warning letter and did not lead to any adverse consequences, it was not severe enough to dissuade a reasonable employee from complaining about discrimination, and Plaintiff has failed to create a genuine issue of fact as to whether the letter constituted an adverse employment action and therefore cannot establish a prima facie claim of retaliation under Title VII or the NYSHRL based on the letter.  *See, e.g.*, *Magnusson v. County of Suffolk*, No. 14-CV-3449, 2016 WL 2889002, at *11 (E.D.N.Y. May 17, 2016) ("The written reprimand that [the plaintiff] received in February 2011 was neither subjectively nor objectively severe enough to dissuade her from pursuing her discrimination claims.  It did not threaten any further consequences, and, more than five (5) years on, has generated no adverse real-world consequences for [the plaintiff].", *aff'd*, 690 F. App'x 716 (2d Cir. 2017); *Ragin v. E. Ramapo Cent. Sch. Dist.*, No. 05-CV-6496, 2010 WL 1326779, at *19 (S.D.N.Y. Mar. 31, 2010) (finding that reprimands did not constitute an adverse employment

---

[30]  CyberShift appears to be a "time keeping system" in which employees are required to log their hours worked.  (*See* Apr. 2019 Report.)

action because the plaintiff "has not shown that these alleged reprimands carried any consequences"). For the same reason, Plaintiff's retaliation claim under the NYCHRL also fails. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (noting that under NYCHRL, "the plaintiff must show that . . . the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action"); *Pouncy v. Advanced Focus LLC*, No. 15-CV-6260, 2017 WL 4280949, at *6 (S.D.N.Y. Sept. 25, 2017) (explaining that "[t]he elements of a prima facie case of retaliation under the NYCHRL are identical [to Title VII's], except that the plaintiff need not prove any adverse employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity").

Accordingly, the Court dismisses Plaintiff's Title VII retaliation claim based on his receipt of the April 22, 2014 Letter.

> **2. Plaintiff's Title VII and NYSHRL retaliation claims based on his referral for a medical evaluation and temporary reassignment**

Defendant asserts that Plaintiff cannot establish a prima facie retaliation claim based on his referral for a medical examination because this referral does not constitute an adverse employment action and there is no evidence of a causal connection between the referral and any protected activity.[31] (Def.'s Mem. 14–16.) In addition, Defendant argues that it has articulated legitimate, nondiscriminatory reasons for Plaintiff's referral for a medical examination because the request was made "after numerous witnessed instances wherein Plaintiff displayed erratic and

---

[31] The Court notes that, although Defendant asserts in its moving papers that Plaintiff's medical referral did not constitute an adverse action, Defendant does not explain why or make any arguments in support of this assertion. Nor does Defendant argue that Plaintiff's temporary reassignment was not an adverse action.

threatening behavior in the workplace," and Plaintiff "cannot show the proffered reason is pretextual." (*Id.* at 16–17.) In support, Defendant has produced the letter from Plaintiff's supervisor, provided to Plaintiff, requesting a medical examination for six reasons.

Plaintiff argues that the reasons for his medical referral and temporary reassignment were "made . . . up" and were "narratives of incidents in which the facts were twisted to show Plaintiff at fault when in fact he was not." (Pl.'s Opp'n 14.)

Assuming without deciding that Plaintiff has established prima facie claims of retaliation under Title VII and the NYSHRL based on his referral for a medical evaluation and temporary reassignment, these claims fail because Defendant has proffered legitimate, non-discriminatory reasons for these acts and Plaintiff has failed to establish a triable issue as to pretext.

### (1) Defendant's legitimate, nondiscriminatory reasons

The letter produced by Defendants indicates that Plaintiff was referred for a medical examination, and temporarily reassigned pending the results of the examination, for six reasons, including (1) acting "impulsively" and "respond[ing] in anger" when criticized, as demonstrated in a meeting when he "acted out against his union representative"; (2) demonstrating "moments of paranoia and forgetfulness" and "unstable behaviors," including in a meeting where he "accused his supervisor of having him followed and watched" and (3) "became aggressive . . . [,] raised his voice[,] ripped up an email, and . . . would not leave until his supervisor raised his voice"; (4) exhibiting a "tendency to act unexpectedly and without consideration of the consequences," including at a meeting where he "became angry and irate" when told that "he could not audiotape the meeting if all parties did not agree," causing his union representative to "end[] the meeting"; and (5) demonstrating "an inability to control his behavioral explosions," including by "slam[ing] his fist on the desk and yell[ing]/curs[ing] at supervisors" at a meeting.

(Medical Examination Referral 3–4.)  In addition, the letter noted that (6) "[s]everal division vendors have clearly stated their displeasure with working [with Plaintiff] because he can be quite aggressive and unstable," and "[o]ther employees have expressed a fear of being in a meeting with him, and have regularly ensured that they are not alone with him to ensure their own safety," including one instance when he became "aggressive towards another employee, apparently because of the placement of Christmas cards and awards on her desk," and "stood over her while she was on the phone . . . insist[ing] she remove the cards."  (*Id.*)

This letter is sufficient to establish legitimate, nondiscriminatory reasons for Plaintiff's referral for a medical examination and temporary reassignment pending the results of the examination.  *See Sulehria v. City of New York*, 670 F. Supp. 2d 288, 315–16 (S.D.N.Y. 2009) (noting that "the referral for a psychological evaluation was potentially an adverse action" but concluding that "the [Title VII] retaliation claim concerning the psychological evaluation fails" because the defendants "proffer[ed] a neutral reason for the referral, which is recited . . . in great length in the notice to [the] plaintiff" describing "a pattern of behavior . . . involving 'increasingly confrontational and combative actions' . . . and suggesting serious emotional problems"); *Montgomery v. Chertoff*, No. 03-CV-5387, 2007 WL 1233551, at *19–20 (E.D.N.Y. Apr. 25, 2007) (assuming "that [the] plaintiff has made out her prima facie case of retaliation" and finding that "[the] defendant has demonstrated a legitimate reason for the challenged employment action" because "the letter that put [the] plaintiff on restricted duty and requested she submit to the fitness-for-duty exam" raised "[q]uestions concerning [the] plaintiff's capacity to perform her duties" due to her "behavior at [a] meeting").

### (2)  Plaintiff has not shown pretext

Although Plaintiff testified that "[t]hey made up . . . six or seven reasons" and "did the narrative [to] put me at fault," (Pl.'s Dep. 61–62), he has failed to point to any evidence that

Defendant's legitimate, nondiscriminatory reasons were pretext beyond his assertions that they were "made up."  Moreover, Plaintiff testified that "[t]here was a grain of truth of everything" referring to the reasons for his medical referral.  (*Id.*)  Therefore, Plaintiff has failed to establish a triable issue as to pretext.  *See Sulehria*, 670 F. Supp. 2d at 317 ("[The] [p]laintiff contends that these legitimate reasons for concern were not what truly motivated defendants, but he does not point to any evidence to support this contention, relying only on his own bare assertion that this is so.  His bare allegations are insufficient to demonstrate a triable issue of fact on the question of pretext.").

Accordingly, the Court dismisses Plaintiff's Title VII retaliation claims based on his referral for a medical examination and temporary reassignment pending his examination.

### v.   NYCHRL claims

Because the Court grants Defendant's motion as to Plaintiff's Title VII and NYSHRL failure to promote claims, NYSHRL hostile work environment claim, and Title VII and NYSHRL retaliation claims based on Plaintiff's referral for a medical evaluation and temporary reassignment, the Court separately considers Plaintiff's NYCHRL claims based on these actions. *See Chauca v. Abraham*, 841 F.3d 86, 91 (2d Cir. 2016) ("[T]he City Council instructed that '[t]he provisions of [the NYCHRL] shall be construed liberally . . . regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of [the NYCHRL], have been so construed." (alterations in original)); *Mihalik*, 715 F.3d at 109 ("[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" (citations omitted)).

"To state a claim for discrimination under the NYCHRL," including a failure to promote claim, "a plaintiff must only show differential treatment of any degree based on a discriminatory motive; 'the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct.'" *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (quoting *Mihalik*, 715 F.3d at 114); *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 328–29 (S.D.N.Y. 2015) (same); *see also Mihalik*, 715 F.3d at 110 ("[T]he conduct's severity and pervasiveness are relevant only to the issue of damages." (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (App. Div. 2009))).   A plaintiff only needs to allege that he was treated "differently from others in a way that was more than trivial, insubstantial, or petty." *Medcalf*, 84 F. Supp. 3d at 329 n.18 (quoting *Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 379 (S.D.N.Y. 2014)); *see also Bright-Asante v. Saks & Co., Inc.*, 242 F. Supp. 3d 229, 242 (S.D.N.Y. 2017) ("[T]o establish liability under the NYCHRL, 'the plaintiff need only show differential treatment — that [he] is treated 'less well'— because of a discriminatory intent.'" (first alteration in original) (quoting *Makinen v. City of New York*, 167 F. Supp. 3d 472, 483 (S.D.N.Y. 2016))).   "[C]laims under [the] NYCHRL are also subject to the *McDonnell Douglas* burden-shifting [f]ramework." *Konteye v. N.Y.C. Dep't of Educ.*, No. 17-CV-2876, 2019 WL 3229068, at *6 (S.D.N.Y. July 18, 2019) (citing *Doe v. Major Model Mgmt. Inc.*, No. 11-CV-6182, 2012 WL 763556, at *10 (S.D.N.Y. Mar. 9, 2012)).).

Under the NYCHRL, a hostile work environment claim is a form of a discrimination claim, and both claims are analyzed under the same standard. *Konteye*, 2019 WL 3229068, at *7 ("[The] NYCHRL does not differentiate between discrimination and hostile work environment claims, which means that this [c]ourt should perform the same analysis on [the] [p]laintiff's hostile work environment claim as it does on his discrimination claim." (citing *Sotomayor v. City*

*of New York*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013) (per

curiam)); *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 246 (E.D.N.Y. 2015)

("Because claims for hostile work environment and discrimination are governed by the same

provision of the NYCHRL, they are analyzed under the same standard." (citing *Russo v. N.Y.*

*Presbyterian Hosp.*, 972 F. Supp. 2d 429, 449–50 (E.D.N.Y. 2013))).

Unlike Title VII and the NYSHRL, NYCHRL retaliation claims are analyzed under a

different, more lenient standard.  To establish a prima facie case of retaliation under the

NYCHRL, a plaintiff must show "(1) participation in a protected activity, (2) knowledge of the

protected activity by a person to whom the NYCHRL applies, (3) action with respect to the

plaintiff that would be reasonably likely to deter a person from engaging in protected activity,

and (4) a causal connection between the protected activity and the deterrent action."  *Zakrzewska*

*v. New School*, 598 F. Supp. 2d 426, 436 (S.D.N.Y. 2009) (citing *Cesar v. Highland Care Ctr.,*

*Inc.*, 829 N.Y.S.2d 236, 238 (App. Div. 2007))); *see also Mihalik*, 715 F.3d at 112 ("[T]o prevail

on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action

opposing her employer's discrimination, and that, as a result, the employer engaged in conduct

that was reasonably likely to deter a person from engaging in such action." (citations omitted)

(first citing *Albunio v. City of New York*, 16 N.Y.3d 472, 479 (2011); and then citing *Williams*,

872 N.Y.S.2d at 33–34)); *Smith v. City of New York*, 385 F. Supp. 3d 323, 345–46 (S.D.N.Y.

2019) ("The elements of a prima facie case of retaliation under Title VII, the NYSHRL, and the

NYCHRL are 'identical,' except that the NYCHRL employs a broader standard of an 'adverse

employment action' than its federal and state counterparts." (quoting *Nieblas-Love v. N.Y.C.*

*Hous. Auth.*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016))).

Plaintiff's NYCHRL failure to promote, hostile work environment, and retaliation claims fail because Plaintiff is not able to show that discrimination played any part in Defendant's hiring decisions or other actions.  Plaintiff's NYCHRL failure to promote claims fail for the same reasons that his Title VII and NYSHRL claims fail — Defendant has offered legitimate, nondiscriminatory reasons for these actions and Plaintiff is not able to show that discrimination played any part in Defendant's hiring decisions.  Similarly, Plaintiff's hostile work environment claim fails for the same reason his NYSHRL claim fails — namely, there is no evidence that Plaintiff was treated less well than others because of a discriminatory intent.  *Adams*, 2017 WL 4417695, at *5 (finding that the plaintiff's NYCHRL claim "fails for the same reason" as her NYSHRL claim because, "[a]lthough the standard for proving a race-based hostile work environment claim under the NYCHRL is lower, [the plaintiff] still needs to demonstrate that 'the [allegedly harassing] conduct is caused by a *discriminatory* motive'" and the plaintiff "failed to create a triable issue of material fact as to that required nexus" (third alteration in original) (quoting *Mihalik*, 715 F.3d at 110)).  Finally, Plaintiff's NYCHRL retaliation claims based on his referral for a medical examination and temporary reassignment also fail for the same reasons that his Title VII and NYSHRL claims fail — Defendant has offered legitimate, nondiscriminatory reasons for these actions and Plaintiff is not able to show that discrimination played any part in Defendant's actions.  *See Mihalik*, 715 F.3d at 110 n.8 (noting that "the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason," and an employer "is entitled to summary judgment . . . only if the record establishes as a matter of law that 'discrimination play[ed] no role' in its actions"); *Stryker v. HSBC Secs. (USA)*, No. 16-CV-9424, 2020 WL 5127461, at *10 (S.D.N.Y. Aug. 31, 2020) (finding that "[t]he more liberal standard of the NYCHRL does not alter the conclusion that the defendants offered non-

discriminatory legitimate reasons" for their actions and that "[n]o reasonable jury could find that their reasons were pretextual or that discrimination played any role in the actions the defendants took," but nevertheless declining to grant summary judgment because the plaintiff's deposition testimony created an issue of fact as to whether the defendant's reason was "the sole reason, or was a pretext for discrimination"); *Stratton v. Ernst & Young, LLP*, No. 15-CV-1047, 2016 WL 6310772, at *7 (S.D.N.Y. Oct. 27, 2016) ("[E]ven under NYCHRL's more liberal standard, when a plaintiff offers no evidence to rebut a defendant's non-discriminatory explanation, the claim fails." (citing *St. Jean v. United Parcel Serv. Gen. Serv. Co.*, 509 F. App'x 90, 91 (2d Cir. 2013))).

Accordingly, the Court grants Defendant's summary judgment motion with regard to Plaintiff's NYCHRL failure to promote, hostile work environment, and retaliation claims.

### e.   Constitutional claims

Defendant argues that Plaintiff fails to state a claim for constitutional violations because (1) "he failed to allege liability under section 1983" and (2) the record is "devoid of any evidence of any constitutional violations."  (Def.'s Mem. 21–22.)

Plaintiff has not responded to these arguments.  Rather, he asserts that (1) his First Amendment rights were violated when he was admonished in a January 18, 2018 email directing him not to email DOE staff advocating his thoughts on education, not to send non-work-related emails while on the job, and not to ask coworkers to sign petitions, (Pl.'s Sur-Reply 25; Pl.'s Opp'n 59, 69); (2) "Defendant's many actions against Plaintiff are the bases for the violation of Plaintiff's due process rights," (Pl.'s Opp'n 59), because "Defendant ought to recognize Plaintiff's right to . . . pursue life, liberty, and happiness," (Pl.'s Sur-Reply 25); and (3) on the night of the DOE's 2017 holiday party, Defendant searched Plaintiff's briefcase and "reviewed

and took" anything in it that was "useful for this case," constituting "an act of illegal search and seizure," (Pl.'s Opp'n 30–31).

To establish a municipal liability claim,[32] "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. County of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020) ("To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." (quoting *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019))).   A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) an action by a decision-maker who possesses final authority to establish municipal policy; (3) a practice so persistent and

---

[32]   The Court construes Plaintiff's claims for violations of his rights under the Federal Constitution as municipal liability claims under 42 U.S.C. § 1983 because he is seeking to hold the DOE liable for actions of its employees that he argues violated his constitutional rights. *See, e.g.*, *Norgrove v. N.Y.C. Dep't of Educ.*, No. 08-CV-2202, 2011 WL 441678, at *3 (E.D.N.Y. Feb. 8, 2011) ("[The plaintiff] alleges that his constitutional rights were violated by DOE and the individual defendants acting in their official capacities.  '[W]hen the defendant sued for discrimination under . . . § 1983 is a municipality — or an individual sued in his official capacity — the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom.'" (second alteration in original) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004))).  In his opposition, Plaintiff includes a paragraph setting forth the standard for First Amendment retaliation claims under section 1983.  (Pl.'s Opp'n 22.)  Because Plaintiff seeks to hold the DOE liable for actions of its employees with respect to this claim, the Court also understands this claim to be a municipal liability claim. *See Macera v. Vill. Bd. of Ilion*, No. 16-CV-668, 2019 WL 4805354, at *22 (N.D.N.Y. Sept. 30, 2019) ("To establish municipal liability for First Amendment retaliation, Plaintiffs must show that they were retaliated against pursuant to an identified municipal policy or custom. (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978))); *see also Rivera v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, No. 19-CV-11624, 2021 WL 5399437, at *5 (S.D.N.Y. Nov. 18, 2021) ("The DOE is a municipal agency for the purposes of Section 1983." (citing *Hurdle v. Bd. of Educ. of City of N.Y.*, 113 F. App'x 423, 424–25 (2d Cir. 2004))).

widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) ("Where plaintiffs allege that their rights were deprived . . . by a city employee's single tortious decision or course of action, the inquiry focuses on whether the actions of the employee in question may be said to represent the conscious choices of the municipality itself. Such an action constitutes the act of the municipality and therefore provides a basis for municipal liability where it is taken by, or is attributable to, one of the city's authorized policymakers." (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 481–82 (1986))); *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *O'Kane v. Plainedge Union Free Sch. Dist.*, 827 F. App'x 141, 143 (2d Cir. 2020) (failing to "take appropriate action to prevent or sanction violations of constitutional rights" amounting to deliberate indifference (quoting *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012))); *Jones*, 691 F.3d at 81 (policymaking official's "express" or "tacit" ratification of low-level employee's actions).

As Defendant argues, there is no evidence of any municipal policy or custom that caused Plaintiff to be subjected to the denial of any alleged constitutional rights. Nor is there evidence of any constitutional violations under the New York State Constitution or the Federal Constitution. Plaintiff testified that he asserted his First Amendment claim because he was advised to refrain from sending non-work-related emails advocating his philosophies about

education to coworkers.  (Pl.'s Dep. 69–70; Letters, annexed to Brown Decl. as Ex. V, Docket

Entry No. 144-22.)  When asked the basis of his due process claim, Plaintiff testified "I

explained it all in [the complaint]."  (Pl.'s Dep. 70–71.)  When asked the basis for his

unreasonable search and seizure claim, Plaintiff testified that computers owned by Defendant

had been removed from under his work desk and that unspecified "information" — but no

personal property — had been obtained from his briefcase by an unknown person.  (*Id.* at 71–

73.)

Accordingly, the Court dismisses Plaintiff's claims seeking to hold the DOE liable under

the Constitution for violations of his First Amendment and due process rights, as well as for an

unreasonable search and seizure, and under the New York State Constitution for violations of his

right to free speech.

**f.   The Court grants in part Plaintiff's request for leave to amend**

The Proposed FAC adds claims under Title VII, the NYSHRL, and the NYCHRL for

(1) Defendant's alleged failure to promote Plaintiff to additional positions to which he applied

after he filed the TAC and (2) constructive discharge, as well as claims for (3) defamation in

violation of Plaintiff's "US Constitutional & Civil Rights" and "NYS Constitutional & Civil

Rights."[33]  For the reasons stated below, the Court grants in part Plaintiff's requests for leave to

amend.

---

[33]  (*See* Proposed FAC ¶ 336k (Senior Data Administrator, applied May 21, 2018); *id.*
¶ 336m (Senior Network Engineer, applied May 24, 2018); *id.* ¶ 336o (Chief Technology
Officer, applied July 25, 2018); *id.* ¶ 336p (Chief Product Officer, applied October 19, 2018); *id.*
¶ 336t (Chief Information Officer, applied April 3, 2019); *id.* ¶ 336ae (Director of Network
Infrastructure Deployment Services, applied June 14, 2019); *id.* ¶¶ 355–356 (constructive
discharge); *id.* ¶¶ 357–358 (defamation).)

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (citation omitted) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also Kainz v. Bernstein*, 841 F. App'x 249, 253 (2d Cir. 2020) (noting that leave to amend should be freely given).

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *see also Majad ex rel. Nokia Ret. Sav. & Inv. Plan v. Nokia, Inc.*, 528 F. App'x 52, 54 (2d Cir. 2013) ("Because the denial of leave to amend in this case was based on futility, we consider whether the proposed complaint's allegations are sufficient to withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss."), *as amended* (June 25, 2013). However, the Second Circuit has stated that "the rule is different where . . . the cross-motion is made in response to a [Rule 56] motion for summary judgment, and the parties have fully briefed the issue whether the proposed amended complaint could raise a genuine issue of fact and have presented all relevant evidence in support of their positions." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). In such instances, even if the amendment could withstand a 12(b)(6) motion, "a court may deny a cross-motion to amend as futile when the evidence in support of the plaintiff's proposed modification 'creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law.'" *Gonzalez v. Hahl*, 850 F. App'x 127, 129 (2d Cir. 2021) (quoting *Milanese*, 244 F.3d at 110); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d

699, 726 (2d Cir. 2010) (explaining that, where a motion for leave to amend is made in opposition to a motion for summary judgment, "[l]eave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact"); *Merrick Bank Corp. v. Chartis Specialty Ins. Co.*, No. 12-CV-7315, 2015 WL 4126780, at *1 (S.D.N.Y. July 7, 2015) ("Although an assertion of futility is normally assessed under the standard for a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), where the motion to amend is made at a late stage and the [c]ourt 'has the full evidentiary record at its disposal, a summary judgment standard will be applied.'" (quoting *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 404 (S.D.N.Y. 2014))); *see also McNeill v. Jordan*, No. 14-CV-2872, 2017 WL 2955763, at *7 (E.D.N.Y. July 11, 2017) ("[A] district court . . . may grant a pro se litigant leave to amend, after the close of discovery and during the pendency of a summary judgment motion.").

"As a general rule, delay, absent bad faith or prejudice, is not a sufficient basis for denying leave to amend." *Mabry v. N.Y.C. Dep't of Corr.*, No. 05-CV-8133, 2008 WL 619003, at *10 (S.D.N.Y. Mar. 7, 2008) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000)). Therefore, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). "However, 'the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" *Id.* (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)). In evaluating prejudice, courts consider whether the assertion of the new claim or defense would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff

from bringing a timely action in another jurisdiction." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (quoting *Block*, 988 F.2d at 350).  Courts should be "hesitant to allow amendment where doing so unfairly surprises the non-movant and impedes the fair prosecution of the claim." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000).  The Second Circuit has identified prejudice to the opposing party resulting from a proposed amendment as among the "most important" reasons to deny leave to amend.  *AEP Energy Servs.*, 626 F.3d at 725.  "[I]f the plaintiff can show a reason for the delay, 'the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend.'"  *Mabry*, 2008 WL 619003, at *10 (quoting *United States v. Continental Ill. Nat'l Bank & Tr. Co. of Chi.*, 889 F.2d 1248, 1255 (2d Cir. 1989)).

### i.   Failure to promote claims

Plaintiff raises six new failure to promote claims in the Proposed FAC under Title VII, the NYSHRL, and the NYCHRL for positions to which he applied between May 21, 2018, and June 14, 2019.  In its briefing, Defendant addresses only two of these claims — Plaintiff's claims of failure to promote to the positions of Senior Data Administrator and Network Engineer, (Proposed FAC ¶¶ 336k, 336m) — repeating its argument, discussed above, that because these claims are based on events that occurred after Plaintiff filed the 2017 EEOC Charge, they are barred by Plaintiff's failure to exhaust administrative remedies.  (Def.'s Mem. 12 nn. 7–8.)  Although Defendant does not make this argument as to the other failure to promote claims Plaintiff alleged for the first time in the Proposed FAC, which also post-date the April 2017 EEOC Charge, the Court understands the argument to apply to these claims as well.  Defendant also addresses these two claims on their merits, arguing that Plaintiff's application to the Senior Data Administrator position "failed to meet the requisite and preferred experience as listed in the job description and in any case, no candidate has been selected for this position," and that the

Network Engineer position "is in a Civil Service competitive class that is subject to examination, and the position was only open to applicants who were permanent Certified IT Administrators," which Plaintiff was not and which the selected applicant was. (*Id.* at 12–13.)

Plaintiff has not responded to these arguments.

Because Plaintiff attached to his second request for leave to amend a new right-to-sue letter issued by the EEOC on February 12, 2021 — but not the underlying EEOC charge, which may contain Plaintiff's additional failure to promote allegations — and because the Proposed FAC includes an "update" to Plaintiff's notice of claim, filed on December 13, 2019, asserting failure to promote claims for the positions alleged in the Proposed FAC, the Court declines to dismiss these claims on the procedural grounds Defendant argues. However, with respect to Plaintiff's claims of failure to promote to the positions of Senior Data Administrator and Network Engineer, allowing leave to amend would be futile. The evidence shows that Plaintiff lacked the necessary credentials for these jobs, that no candidate was selected for the Senior Data Administrator position, and that the selected applicant for the Network Engineer position possessed the necessary credentials. Therefore, as with the failure to promote claims Plaintiff alleged in the TAC, Defendant has shown legitimate, nondiscriminatory reasons for these failures to promote and Plaintiff has failed to show pretext. Accordingly, the Court denies Plaintiff leave to amend to add these claims.

With respect to Plaintiff's remaining failure to promote claims — namely, failure to promote to the positions of Chief Technology Officer, Chief Product Officer, DOE Chief Information Officer, and Director of Network Infrastructure Development Services, (Proposed FAC ¶¶ 336o, 336p, 336t, 336ae) — Defendant has not made a showing of prejudice or bad faith. While granting Plaintiff leave to amend will require Defendant to expend additional

resources on discovery and will delay resolution of the dispute, it appears that denying Plaintiff

leave to amend would prevent him from timely bringing these claims in another court.

Assuming Plaintiff included his Title VII claims in the EEOC charge underlying his February 12,

2021 right-to-sue letter, Plaintiff would not be able to bring these claims in another court because

such claims "must be filed within [ninety] days of [his] receipt of [the] notice," and more than

ninety days have since passed.  (Feb. 2021 Right-to-Sue Letter, annexed to Pl.'s Letter dated

Mar. 26, 2021, Docket Entry No. 155, at 4.)  With respect to Plaintiff's NYSHRL and NYCHRL

claims, such claims are subject to a one-year statute of limitations under Education Law section

3813(2-b).  N.Y. Educ. Law § 3813(2-b); *see Wade v. N.Y.C. Dep't of Educ.*, 667 F. App'x 311, 312

(2d Cir. 2016).  Although Plaintiff's December 2019 Update to the 2017 Notice of Claim, attached

to the Proposed FAC, was served more than one year after Plaintiff allegedly applied to the

positions of Chief Technology Officer on July 25, 2018, and Chief Product Officer on October

19, 2018, there is no evidence as to when he became aware of these failures to promote, and it

therefore remains possible that these claims accrued within the one-year statute of limitations.

*See Floratos v. Int'l Leadership Charter Sch. Inc.*, No. 09-CV-9136, 2011 WL 291852, at *2–3

(S.D.N.Y. Jan. 20, 2011) (holding that a one-year statute of limitations applies to "[d]iscrimination

and retaliation claims brought against the board of education, charter schools, and its officers under

New York State and New York City Human Rights Laws," which begins to accrue the day the

plaintiff learns of the discriminatory decision); (Dec. 2019 Update).  Further, Plaintiff did not

unduly delay in bringing these claims, as discovery closed on October 8, 2019, (Min. Entry, Docket

Entry No. 121), Plaintiff sought leave to file the Proposed FAC adding these claims on November 26,

2019, (Mot. to Amend/Correct/Supplement the TAC), just two weeks after summary judgment

briefing commenced, (Order dated Nov. 12, 2019 (adopting Defendant's proposed briefing

schedule and directing Defendant to serve its motion on January 13, 2020); Order dated Dec. 2,

2019 (directing Plaintiff to file the Proposed FAC by December 16, 2019, and directing

Defendant to respond in opposition to the Proposed FAC in their summary judgment motion)),

and the Court granted Defendant an extension to file its motion, (Order dated Jan. 8, 2020

(granting consent motion for extension to file summary judgment motion by January 27, 2020)).

Therefore, in light of Plaintiff's pro se status, the fact that Defendant has not made a

showing of prejudice or bad faith, and the fact that Plaintiff has attempted to diligently pursue his

claims, the Court grants leave to amend as to his Title VII, NYSHRL, and NYCHRL claims of

failure to promote to the positions of Chief Technology Officer, Chief Product Officer, DOE

Chief Information Officer, and Director of Network Infrastructure Development Services.  *See*

*Ponce v. Billington*, 652 F. Supp. 2d 71, 73 (D.D.C. 2009) ("[W]hen amendment is sought

shortly after discovery ends but before summary judgment briefing has commenced, the

prejudice to the defendant if any, is minimal and it simply does not override the liberal standard

that this [c]ourt must apply when determining whether to grant leave to amend under [Rule

15].")  Indeed, . . . 'any potential prejudice would be ameliorated by supplemental discovery

related to' the new retaliation claim." (citation omitted) (quoting *Ellis v. Georgetown Univ.*

*Hosp.*, 631 F. Supp. 2d 71, 80 (D.D.C. 2009))).

Accordingly, the Court denies as futile Plaintiff's request for leave to amend to add

claims of failure to promote to the positions of Senior Data Administrator and Network Engineer

and grants leave to amend as to Plaintiff's claims of failure to promote to the positions of Chief

Technology Officer, Chief Product Officer, Chief Information Officer, and Director of Network

Infrastructure Deployment Service.

### ii.  Constructive discharge and defamation claims

Defendant argues that Plaintiff's constructive discharge claims under Title VII, the

NYSHRL, and the NYCHRL, as well as his defamation claims "arising out of the 2019 time

theft, fraud, and larceny[] charges and specification brought against [him] — and his resignation thereafter" — are barred by the "October 2019 Stipulation of Settlement [P]laintiff signed in connection with his resignation." (Def.'s Mem. 7–8; *see also id.* at 19–20.) Defendant also argues that Plaintiff's constructive discharge claims are "further barred by his failure to exhaust administrative remedies . . . and to file an adequate notice of claim . . . , [and because] the record evidence fails to support such a cause of action." (*Id.* at 19–20.)

Plaintiff requests that the Court declare the October 2019 Stipulation of Settlement null and void, arguing that it was "induced by fraud and duress" because the April 2019 Report contained false, defamatory allegations and because, when he asked what effect the October 2019 Stipulation of Settlement would have on his case, "Defendant's counsel as well as Plaintiff's . . . assigned counsel replied, saying: 'None.'" (*See* Pl.'s Opp'n 34–35, 61.) In addition, Plaintiff argues that "all the elements of a constructive discharge [claim] have been met." (*Id.* at 38.)

The October 2019 Stipulation of Settlement concerning the time-theft, fraud, and larceny charges preferred against Plaintiff and substantiated in the Special Commissioner of Investigation's April 2019 Report provides that "[t]he parties to this Stipulation knowingly waive their rights to make any legal or equitable claims or to initiate legal proceedings or administrative hearings of any kind against each other, relating to or arising out of this matter, except to enforce this Stipulation now or in the future." (Oct. 2019 Stipulation of Settlement 2–3.) It further provides that the parties "were represented by counsel, have had all the terms and conditions of this Stipulation . . . thoroughly explained and now freely consent to enter into this Stipulation, such consent not having been induced by fraud, duress or any other influence," (*id.* at 1), and that Plaintiff "agrees that he has entered into this agreement freely, knowingly and

openly, without coercion or duress" and "affirms that he has had access to counsel in reaching this agreement and has consulted with counsel regarding the terms of this agreement and has entered into this agreement with advice and consent of counsel," (*id.* at 3; *see also* Proposed FAC ¶¶ 336v).

### 1.   Constructive discharge claims

In the Proposed FAC, Plaintiff alleges discrimination claims under Title VII, the NYSHRL, and the NYCHRL based on his resignation pursuant to the October 19 Stipulation of Settlement, which he argues constituted constructive discharge.  (Proposed FAC ¶¶ 355–356.)

Because, as above, Plaintiff attached to his second request for leave to amend a new right-to-sue letter issued by the EEOC on February 12, 2021, and because the Proposed FAC includes an "update" to Plaintiff's notice of claim, filed on December 13, 2019, asserting constructive discharge, the Court declines to dismiss these claims for failure to exhaust administrative remedies and failure to file a notice of claim.  (Dec. 2019 Update 67.)  However, as Defendant argues, the October 19 Stipulation of Settlement bars Plaintiff's claims.  (Oct. 2019 Stipulation of Settlement 2–3 (stating that "[t]he parties . . . knowingly waive their rights to make any legal or equitable claims or to initiate legal proceedings or administrative hearings of any kind against each other, relating to or arising out of this matter, except to enforce this Stipulation now or in the future").)  Although Plaintiff argues that the October 2019 Stipulation of Settlement "was induced by fraud and duress," he has not alleged any facts in the Proposed FAC that would support that conclusion.[34]  (Pl'.s Opp'n 34.)  In addition, the agreement contained

---

[34]  Although Plaintiff argues that the April 2019 Report contained false allegations, he could have contested these allegations at the OATH hearing, but he alleges that he resigned after attending the hearing because "Defendant restated its position . . . giving Plaintiff no other choice."  (Proposed FAC ¶¶ 336am–336an.)  Courts in this Circuit have held that plaintiffs who had an avenue through which to seek redress for the allegedly intolerable work atmosphere but

explicit affirmations of Plaintiff's voluntary assent and Plaintiff was represented by counsel.  *See Culmone-Simeti v. N.Y.C. Dep't of Educ.*, No. 17-CV-2313, 2018 WL 3384437, at *6 (S.D.N.Y. July 11, 2018) (rejecting claim that the plaintiff signed a stipulation of settlement under duress because she had "a viable alternative to contest the charges," she did not allege she was physically compelled, threatened, or unduly influenced, and the agreement contained "explicit affirmations of her voluntary assent" and "she was represented by counsel," further undermining her claim of duress).  Further, even if the October 2019 Stipulation of Settlement were invalid, Plaintiff ratified the agreement by continuing to work at the DOE until January 3, 2020, and accepting the agreement's benefits.  (Def.'s 56.1 ¶ 20; Oct. 2019 Stipulation of Settlement 2 (setting forth January 3, 2020, as date of resignation)); *Culmone-Simeti*, 2018 WL 3384437, at *6 ("[E]ven if the agreement were somehow invalid, [the plaintiff] ratified the agreement when she accepted its benefits by continuing to work for two months and then resigning with the charges dismissed from her disciplinary record."); *Williams v. Dep't of Educ.*, No. 16-CV- 980, 2016 U.S. Dist. LEXIS 118203, at *14 (S.D.N.Y. Sept. 1, 2016) ("[T]he DOE had already performed its portion of the bargain, and [the plaintiff] had already accepted the benefits: continuing to work and retiring with a record unblemished by the DOE's charges.  Under such circumstances,

---

failed to take advantage of it failed to state a constructive discharge claim.  *See Culmone-Simeti v. N.Y.C. Dep't of Educ.*, No. 17-CV-2313, 2018 WL 3384437, at *5 (SD.N.Y. July 11, 2018) (finding constructive discharge not plausibly alleged because "[c]ourts regularly refuse to find constructive discharge 'where an employee had an avenue through which he could seek redress for the allegedly "intolerable" work atmosphere . . . but failed to take advantage thereof'" and the plaintiff could have disputed the charges against her at her disciplinary hearing but instead opted to resign in exchange for the charges being dropped (quoting *Silverman v. City of New York*, 216 F. Supp. 2d 108, 115 (E.D.N.Y. 2002), *aff'd*, 64 F. App'x 799 (2d Cir. 2003))); *see also Reiss v. Hernandez*, No. 17-CV-159, 2019 WL 4688639, at *11 (S.D.N.Y. Sept. 26, 2019) (dismissing constructive discharge claim where the plaintiff "could have 'disputed the negative ratings' at any hearing or even settled them before one took place" (quoting *Culmone-Simeti*, 2018 WL 3384437, at *5)), *aff'd*, 852 F. App'x 620 (2d Cir. 2021).

[the plaintiff's] conduct constitutes ratification of the [s]ettlement . . . .")  Accordingly, Plaintiff's constructive discharge claims are barred.

### 2.   Defamation claims

In the Proposed FAC, Plaintiff alleges that the April 2019 Report "defamed" him in violation of his "US Constitutional & Civil Rights" and "NYS Constitutional & Civil Rights." (Proposed FAC ¶¶ 357–358.)

As Defendants argue, Plaintiff's defamation claims arise out of the April 2019 Report substantiating Plaintiff's falsification of payroll hours and recommending that the DOE take appropriate disciplinary action against him.  (*See* Proposed FAC ¶¶ 336u–336ab, 336af–336ap.) Because Plaintiff expressly waived his right to bring claims against Defendant arising out of the facts and circumstances of the disciplinary matter and did so with the advice and consultation of counsel, his defamation claims based on the April 2019 Report are barred.  *See WSP USA Corp. v. Marinello*, No. 13-CV-4591, 2013 WL 6704885, at *1, *7 (S.D.N.Y. Dec. 19, 2013) (finding the plaintiff's defamation claim barred by a separation agreement releasing the defendant from liability for "claims that were in existence at the time of the [a]greement's execution" because "the [c]omplaint does not identify any statements that postdate the [a]greement's execution").

Accordingly, although the Court grants Defendant's motion and dismisses all of Plaintiff's claims in the TAC, in light of Plaintiff's pro se status, the Court grants in part Plaintiff's requests for leave to file a Fourth Amended Complaint within sixty days of the date of this Memorandum and Order to allege his Title VII, NYSHRL, and NYCHRL claims of failure to promote to the positions of Chief Technology Officer, Chief Product Officer, Chief Information Officer, and Director of Network Infrastructure Deployment Service.  The Court denies Plaintiff's requests to add the claims of failure to promote to the positions of Senior Data Administrator and Network Engineer and the claims of constructive discharge and defamation

identified in the Proposed FAC.  The Fourth Amended Complaint will completely replace the prior complaints and therefore should include Plaintiff's failure to promote claims — but not the claims the Court has dismissed — must be captioned "Fourth Amended Complaint," and must bear the same docket number as this Memorandum and Order.

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion for summary judgment and dismisses the TAC in its entirety, including Plaintiff's (1) twelve failure to promote claims under Title VII and four failure to promote claims under the NYSHRL and the NYCHRL; (2) Title VII disparate pay claim; (3) Title VII, NYSHRL, and NYCHRL hostile work environment claims; (4) three retaliation claims under Title VII and two retaliation claims under the NYSHRL and NYCHRL; and (5) claims for violations of the New York State Constitution and Federal Constitution, which the Court construed as *Monell* claims.  In addition, the Court denies Plaintiff's request for leave to amend to allege claims of failure to promote to the positions of Senior Data Administrator and Network Engineer, constructive discharge, and defamation.  In light of Plaintiff's pro se status, the Court grants Plaintiff leave to amend to allege claims of failure to promote to the positions of Chief Technology Officer, Chief Product Officer, Chief Information Officer, and Director of Network Infrastructure Deployment Service.

Plaintiff may contact the Federal Pro Se Legal Assistance Project of the City Bar Justice Center

at 212-382-4729 for limited-scope legal assistance.

Dated:  September 15, 2022
        Brooklyn, New York

                        SO ORDERED:


                            s/ MKB
                        _____

                        MARGO K. BRODIE
                        United States District Judge